Carter E. Greenbaum (SBN 344692)
**GREENBAUM OLBRANTZ, LLP**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
Tel: (332) 222-9119
Email: carter@greenbaumolbrantz.com

**GREENBAUM OLBRANTZ, LLP**
Casey Olbrantz (*pro hac vice forthcoming*)
244 Fifth Avenue, Suite C221
New York, NY 10001
Email: casey@greenbaumolbrantz.com

*Counsel for Plaintiffs Marc Brenman
and Aviva Copaken*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC BRENMAN, and AVIVA COPAKEN individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED AIRLINES, INC, <br><br> Defendant. | **CLASS ACTION COMPLAINT** <br><br> Case No. _____ <br><br> JURY TRIAL DEMANDED |

Plaintiffs MARC BRENNAN and AVIVA COPAKEN ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendant UNITED AIRLINES, INC. ("United") and allege upon personal knowledge and information and belief as to all other matters:

## INTRODUCTION

1.    This class action seeks redress for United's intentional practice of charging passengers premium fees to upgrade to seats that United represents are "window" seats, but which are actually adjacent to a blank wall. Plaintiffs and the proposed class members paid valuable consideration to obtain a window to improve their flying experiences. United specifically represented to the Plaintiffs and class members that the particular seats they chose had a "window," even though United knew full well they did not. Nevertheless, United solicited, accepted, and retained cash, points, or other airline benefits that consumers specifically paid to sit next to a window. By advertising and charging for "window" seats that do not have windows, United unlawfully caused Plaintiffs and the putative class members to expend valuable consideration for no value. They are entitled to compensatory damages and exemplary damages for United's intentional misconduct.

2.    For many years, United has knowingly and routinely sold windowless "window" seats to consumers.  For instance, certain models of United's Boeing 737 and Airbus A321 aircraft are built with at least one seat that would traditionally have a window, but do not include one due to the placement of air conditioning ducts, electrical conduits, or other interior components.  United operates hundreds of these aircrafts, which each make several flights every day. As a result, during the class period, United has likely sold over a million windowless "window" seats.

3.    When consumers choose to book an airplane seat adjacent to the wall, they expect it to have a window. Indeed, during the seat selection process on its mobile app, United affirmatively describes *every* wall-adjacent seat as having a "window"—including the windowless seats.  For example, many United Boeing 737-900 planes do not have a window in seat 11A, yet United specifically informs prospective travelers during the booking process that seat 11A has a "window" as shown in the side-by-side screenshots below.

CLASS ACTION COMPLAINT





4. Everyday travelers pay extra for a window for numerous reasons. For many, it is a special experience to see the world from 30,000 feet, or to watch a descent into LaGuardia, LAX, SFO, or O'Hare. Windows can captivate or distract an antsy child. For many with a fear of flying or motion sickness, windows provide a greater level of comfort in an otherwise stressful environment. Others just want a burst of sunlight to brighten their day. Whatever the motivation, had Plaintiffs and the class members known that the seats they were purchasing was windowless, they would not have selected them—much less have paid extra.

5. United has long been on notice of customer complaints that this practice is misleading and unfair, but United has deliberately continued it for years. In 2017, in response to a customer complaint that the window seat they purchased did not have a window, United tweeted

"[s]orry. We never guaranteed you will get a window." In response to a more recent customer complaint, United admitted that "[w]hile some seats may be labeled as 'window' based on the aircraft layout, there are instances where the actual window placement doesn't fully align."

6.    Several of United's competitors, such as American Airlines and Alaska Airlines, operate similar aircraft with windowless "window" seats. But unlike United, when customers try to purchase such seats, American and Alaska specifically alert the customers that the seat is windowless. By contrast, United misleads its customers by selling "window" seats without windows, only to disappoint them when they arrive at their seats.

7.    United's deceptive conduct is unlawful, and amounts to a breach its contracts with affected passengers. Through this action, Plaintiffs, on behalf of themselves and the class they seek to represent, seek compensatory and exemplary damages for United's serial wrongdoing.

## PARTIES, JURISIDCTION, AND VENUE

8.    Plaintiff Aviva Copaken is a resident of Los Angeles, California.

9.    Plaintiff Marc Brenman is a resident of San Francisco, California.

10.    Defendant United is a major commercial airline headquartered in Chicago, Illinois. United is a wholly owned subsidiary of United Airlines Holdings, Inc., a publicly traded company listed on the Nasdaq Stock Market (ticker symbol: UAL). Defendant United engages in substantial activities in San Francisco, including by maintaining the San Francisco Airport as a "hub" for significant operations and travel.

11.    **Divisional Assignment:** In accordance with Civil L.R. 3-2(c) and 3-5(b), this matter should be assigned to the San Francisco division because Plaintiff Marc Brenman is a resident of San Francisco, United engaged in substantial activities giving rise to the complaint in San Francisco, and Mr. Brenman took the flight at issue in this case from San Francisco's International Airport, SFO, where United engages in substantial operations.

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

13. This Court has personal jurisdiction over United because it conducts substantial business in this District, and engaged in the conduct at issue herein from and within this District, including by advertising and selling airline tickets to Plaintiffs and consumers in this District, and operating aircraft that depart from and arrive in this District.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this District is where a substantial part of the acts, omissions, and events giving rise to Plaintiffs' claims occurred.

## FACTUAL ALLEGATIONS

15. United operates one of the largest airline networks in the world, with more than 800 mainline and regional aircraft serving hundreds of destinations across six continents. United operates approximately 4,500 flights per day and transports many millions of passengers annually.

16. United generates tens of billions of dollars in annual revenue from the sale of air travel services, including the marketing and sale of specific seat types through its website, mobile app, call centers, and third-party travel platforms.

17. United holds itself out as a premium service provider and charges higher fares for particular seat locations—such as "window" seats—based on consumer preferences and expectations tied to those seat types.

18. As one of the "Big Three" legacy U.S. airlines, alongside Delta Air Lines and American Airlines, United exerts substantial influence over the domestic and international air travel markets. It is a common carrier subject to federal and state laws prohibiting deceptive business practices and false advertising.

1
2

**A.  UNITED CHARGES PASSENGERS ADDITIONAL FEES
     TO SELECT WINDOW SEATS**

3
4
5
6

19.     When a typical passenger books a basic fare on a United flight, they do not get the opportunity to select a particular seat without paying additional consideration. By default, a passenger paying basic fare is randomly assigned a seat—and often a less desirable one—after the passenger has concluded his or her check-in on the day of travel.

7
8
9
10
11
12

20.     United enables passengers to select a particular seat, however, if they expend additional cash, rewards program credits, if they utilize program benefits earned from paying annual fees using their credit cards, or if they upgrade to a different class of ticket, including "preferred," "Economy Plus," and similar options. These fees vary based on factors like seat location, route, and demand.

13
14
15
16
17
18

21.     On domestic routes, United's standard fee to select a basic economy "window" seat often exceeds $50. On international routes, these extra fees can exceed $100 per seat. In addition, United charges hundreds—sometimes thousands of dollars—for seats in premium cabins, which provides customers the opportunity to select a window seat in the premium cabin. United also routinely charges a premium for "window" seats as compared to middle seats.

19
20
21
22
23

22.     These additional fees to select a particular seat are charged in addition to the base fare, taxes, and other fees. United collects these upgrade fees as separate line items at the time of booking, and presents them as necessary for passengers to choose their seat locations in advance. These fees are non-refundable so long as the passenger actually obtains that seat on their flight, and is not placed somewhere else on the plane.

24
25
26
27
28

23.     United may also collect other forms of added consideration in exchange for allowing passengers to select a particular seat. For example, United may offer passengers the opportunity to exchange United rewards program credits, or United-branded credit card benefits. In such circumstances, customers incur costs to select a seat in the form of lost opportunity to book free

CLASS ACTION COMPLAINT

travel earned from United, or in annual membership fees and the opportunity cost of benefits they would have obtained from using different credit card reward programs.

24.    When United charged these fees or otherwise benefitted from consideration generated by passenger seat selections, it accrued obligations to provide such passengers with the seat selection of their choice, or else refund the additional fees.

25.    Of its own volition, United undertook to create a seat selection fee for a window seat, set the amount of the fee, and required its passengers to pay the fee. Upon acceptance of the seat selection fee for "window" seats, United incurred an obligation to provide a window seat (*i.e.* a seat with an actual window).

**B.  SOME UNITED "WINDOW" SEATS DO NOT HAVE WINDOWS**

26.    United Airlines operates a fleet of over 1,000 aircraft, including hundreds of Boeing 737-series and Airbus A321-series planes serving domestic and international routes. United is one of the largest operators of Boeing 737s globally, with around 500 737s in its fleet as of mid-2025.

27.    Most of these kinds planes (if not all of them), as well as others in United's fleet, have at least one wall-adjacent seat that does not have a window ("Windowless Seat(s)"). This is typically the result of the positioning of air conditioning ducts, which leaves at least one seat—often 10A, 11A, or 12A—without a window.  The Windowless Seat generally looks like this:



CLASS ACTION COMPLAINT

1

2     28.     As one of United's competitors, Alaska Airlines, explains on its website: "That's the

3   spot where Boeing places the air conditioning riser ducts from the belly…. The vertical ducts are

4   located behind the passenger compartment sidewall panels and they prevent the installation of a

5   window in one row on the left side.  This is standard on all Boeing 737 aircraft, not just ours."

6     29.     As in the example in the following social media post, numerous travelers have

7   reported paying extra for a seat they believed would have a window only to realize it was a

8

9   Windowless  Seat  upon  boarding.  Such  passengers  have  reported  that  United  has  refused  to

10  compensate them for purchasing those seats.

11

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

30.    In addition, United operates at least 38 Airbus A321-family aircraft, including A321-neo and A321-ceo variants, which also have Windowless Seats. As with the Boeing 737 configurations, on certain A321 configurations, United sells seats labeled "window" seat that are adjacent to mid-cabin overwing exit areas or door plugs and thus lack an actual window panel, depriving consumers of the expected benefit for which they remit additional consideration.

**C.  UNITED ADVERTISES THAT ITS WINDOWLESS SEATS HAVE A "WINDOW"**

31.    Travelers can purchase tickets for United flights through the United mobile application ("App"), online via the United website, and through third-party ticketing agents.

32.    The App is available for download on iOS and Android devices. United markets the App as a convenient, user-friendly platform for booking and managing air travel. According to United, it is the most downloaded airline app, and nearly 90 percent of United flyers use the App on the day of travel.

33.    Travelers often use the App to purchase United fares. After selecting a flight itinerary and entering passenger information, the App prompts customers to select seats for each flight segment. The seat map presented within the App visually distinguishes seat types—such as window, middle, and aisle—and assigns prices for seat selection accordingly.

34.    United's App labels seats as "window" or "aisle" through visual placement on the seat map and accompanying textual cues, but it does not provide any disclaimer or indication that certain seats labeled as "window" may not have an actual window.

35.    To the contrary, United's App expressly represents that the Windowless Seats have a "window." For example, a Boeing 737-800, has a Windowless Seat at one of seat 10A or 11A, depending on the configuration.  Nevertheless, as shown in the screenshot below, the United App affirmatively describes both as "Window" seats during the ticket selection process, and charges between $44.99 and $159.99 for the option to select the seat.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

 

21

22     36.    Seat selection fees displayed in the App vary based on the seat's perceived

23 desirability, with "window" and "aisle" seats generally priced higher than middle seats. Consumers

24 are not warned during the selection process that some "window" seats may lack an actual window.

25     37.    The App finalizes the seat selection by charging the customer's chosen payment

26 method for the selected seats, in addition to the base fare. The seat fee is non-refundable if the

27 passenger ultimately obtains that seat, and the fee is added before ticket confirmation.

28     38.    Consumers reasonably rely on the App's seat map and labels when making

selections and paying additional fees, believing that a "window" seat will include a physical window and associated benefits such as outside visibility and reduced claustrophobia. In fact, the description of a Windowless Seat as having a "Window," forms part of the contract of sale between the consumer and United.

39.    At no point during the seat selection process on the App does United provide an option to verify whether the selected "window" seat actually includes a window, nor does it allow consumers to preview or confirm the physical configuration of the aircraft before completing the transaction.  Nor does United disclose that a "window" seat may be a Windowless Seat at any point during the transaction process.

40.    Travelers who purchase airline tickets on United through its website face similar issues. When they purchase seats on the United website, United displays a seating chart that implies that a seat will have a window based on its proximity to the side of the aircraft.  When selecting the same seats on a Boeing 737 without a window, consumers are not made aware that their seat does not include a window.

41.    Upon information and belief, customers who purchase a window seat, including Windowless Seats, on either the App or website, are provided a boarding pass that describes the "windowless" seats as having a "Window."

**D.  UNITED'S COMPETITORS AFFIRMATIVELY DISCLOSE THAT THEIR WINDOWLESS SEATS HAVE NO WINDOW**

42.    While United affirmatively represents that its Windowless Seats have a "window," several of its competitors disclose that their Windowless Seats do not. For example, both American Airlines and Alaska Airlines also operate Boeing 737-800 aircraft that have Windowless Seats. However, when a customer attempts to purchase those windowless "window" seats, both American Airlines and Alaska Airlines discloses that the seat has "no window view," as shown in the screenshots below (with emphasis).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17      43.    American Airlines and Alaska Airlines are not alone. For instance, Ryanair, a large

18   low-cost carrier that primarily operates in Europe, also alerts travelers about the nature of its

19   Windowless Seats. As a result, and in recognition that the Windowless Seats are less desirable,

20   Ryanair charges less for them.

21

22   **E.  UNITED'S CONTRACTS WITH PASSENGERS REQUIRE IT TO PROVIDE THE PROMISED "WINDOW" SEAT**

23      44.    As set forth above, when a customer purchases a window seat on United's website or

24   its App, United expressly and impliedly represents that the seat purchased includes a window. The

25   specific seat selected by the customer, including the representation that it contains a Window, is

26   incorporated into the sale of the ticket by United.

27      45.    Along with such ticketing information, United also requires customers to agree to its

28

standard Contract of Carriage, which United says also become part of the overall contract with a passenger. The Contract of Carriage confirms that Transportation of Passengers and Baggage on flights are "subject to the terms and conditions set forth in United's Contract of Carriage, in addition to any terms and conditions printed on or in any ticket, ticket jacket, or eticket receipt." Because United describes Windowless Seats as "Window" seats during the check-out process that generates the terms of the sale, and does so as well on the ticket itself and/or boarding pass, United expressly undertakes an obligation to provide such passengers with a Window seat.

46.     United's Contract of Carriage also defines Ticket to mean the "record of agreement, including electronic tickets… for Passenger air transportation provided by UA under certain terms and conditions to the Passenger named on the Ticket and in accordance with applicable governing tariffs and regulations." That record included the customer's selection of a window seat that describes the seat as including a "Window."

47.     As a result of these provisions, and others, United has expressly or impliedly assumed an obligation to provide customers with window seats when a customer selects a window seat for purchase. It then breached those obligations by failing to provide those customers with a seat that includes a window.

**F. UNITED'S CONTRACTS WITH PASSENGERS REQUIRE IT TO PROVIDE THE PROMISED "WINDOW" SEAT**

48.     In and around May of 2025, Plaintiff Aviva Copaken purchased three flights on United in which she paid extra to purchase a "window" seat.  Each of the flights departed from LAX.  Copaken prefers a window seat because she experiences claustrophobia on flights and enjoys a view while looking out the window of the airplane. On each of the three occasions, she was disappointed to discover that her "window" seat did not have a window at all. She paid between $45.99 and $169.99 to select the "window" seat on each of those flights.

49.     Copaken provided United with notice of her complaint.  In response, United

refunded the fees she paid for two of her flights, but United has not refunded the fees for the third flight or other damages (including interest) from Copaken's third flight.

50.    Upon information and belief, United made the decision to refund Copaken's purchases only after learning that Copaken may be a plaintiff in this class action lawsuit in a bad faith attempt to moot her claims.  In particular, based on United's prior social media posts, United had previously taken a position to refuse refunds for purchasing "window" seats where customers sat next to a wall.  However, upon information and belief, once news of this lawsuit became public, United has attempted to refund customers who make a pre-litigation demand, as required by the unconscionable requirements of United's Contract of Carriage.  That Contract purports to require pre-litigation demands and then states that if customers do not comply with the provision, United may seek sanctions and attorney's fees.  That provision is unenforceable under California law.

51.    In or around April of 2025, Plaintiff Marc Brenman purchased a flight on United from San Francisco to Washington D.C. in which he used points and benefits conferred from annual fees in to select a "window" seat.  Brenman prefers a window seat so that he can watch the view as he crosses the country. He was disappointed to discover that his "window" seat did not have a window at all.  Brenman provided United with notice of his complaint and they refunded him 7,500 miles, which is insufficient to compensate him for the extra fees and benefits he utilized to choose a window seat.

## CLASS ALLEGATIONS

52.    Plaintiffs incorporate the above allegations as if fully set forth below.

53.    Plaintiffs bring this class action individually and on behalf of all members of the following classes of similarly situated persons pursuant to Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4):

**Nationwide Class**

> All persons and entities in the United States that purchased airfare from United and remitted additional consideration to obtain a window seat, but received a Windowless Seat ("Class Members").

**California Subclass**

> All persons and entities in California that purchased airfare from United and remitted additional consideration to obtain a window seat but received a Windowless Seat ("Subclass Members") (together with the Class Members, "classes").

54.     Excluded from the classes are United and its subsidiaries, affiliates, officers, directors, and any entity in which United has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55.     Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

56.     <u>Numerosity:</u> The members in the classes are so numerous that joinder of all class members in a single proceeding would be impracticable.  While the exact number of members of the classes are unknown at this time and can only be determined by appropriate discovery, Plaintiffs are informed and believe that the classes are likely to include thousands of members. As set forth above, in the last four years alone, United has likely sold more than 1 million Windowless Seats. Therefore, the classes are sufficiently numerous that joinder of all members in a single action is impracticable under Rule 23(a)(a), and the resolution of claims through the procedure of a class action will benefit the parties and the Court.

57.     <u>Commonality and Predominance:</u> Common questions of law and fact exist as to all class members and predominate over any potential questions affecting only individuals. Such common questions of law or fact include, among other things:

> a.   Whether United breached a self-imposed duty to provide class members with a window when they selected a window seat.

b. Whether United breached its agreement(s) with passengers who paid fees to purchase a window seat or otherwise conferred a benefit on United to select those seats when those customers were seated in a seat that does not include a window;

c. Whether United unfairly or deceptively induced class members to remit additional consideration to obtain the Windowless Seats;

d. Whether United is obligated to refund fees charged to class members for their obtainment of Windowless Seats.

58.   United engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of all other class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

59.   <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the class members. Plaintiff, like all proposed members of the classes, selected a window seat on a United flight, but was placed in a Windowless Seat.   Plaintiffs and class members were injured by the same wrongful acts, practices, and omissions committed by United, as described above. Plaintiffs' claims therefore arise from the same practices or course of conduct that give rise to the claims of all class members.

60.   <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs are adequate representatives of the classes and have no interests adverse to, or in conflict with, the classes they seek to represent. Plaintiffs have retained counsel with substantial experience and success in complex civil litigation and class actions.

61.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

62.    Adequate notice can be given to class members directly using information maintained by United.

63.    <u>Predominance</u>. The issues in this action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Defendant has engaged in a common course of conduct toward Plaintiffs and Class members. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

**COUNT I: BREACH OF SELF-IMPOSED UNDERTAKING UNDER *AMERICAN AIRLINES v. WOLENS*, 513 U.S. 219 (1995)**

64.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

65.    Defendant created a self-imposed duty to, in exchange for the fees paid by its customers to select seats, provide customers who selected a "window" seat with a window. Defendant's self-imposed undertaking is independently evidenced by both its words and its conduct.

66.    When purchasing a ticket, customers are told that they can select a "Window" seat for an extra fee.  Customers are not warned that some "Window" seats do not, in reality, include a window.  United then provided a ticket that described the seat as a "Window" seat. Defendant affirmatively took steps, adopted systems and policies, both visible and invisible to the passenger, and otherwise behaved consistent with its undertaking to provide customers with a "Window" seat in exchange for the fee.  Passengers would not have paid the fee but for Defendant's undertaking of the obligation to provide a "Window" seat.

67.    When Defendant undertook the duty to provide a "Window" seat in exchange for

a fee and failed to do so, but retained the fee, Defendant breached its self-imposed undertaking and, as a consequence, is obligated to timely pay damages for its breach.

## COUNT II: BREACH OF CONTRACT

68.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein

69.    Plaintiffs, Class Members, and Defendant entered into express contracts under which Defendant agreed to provide customers who purchased a "Window" seat with a window. And Plaintiffs and Class Members agreed to pay and did pay the fee to Defendant.  Those express contracts include the contract to provide a Window seat, as determined during the seat selection process, and the Contract of Carriage.

70.    Plaintiffs and each member of the Class are parties to contracts, including the seat select fee contract as well as the Contract of Carriage, with Defendant, that are uniform with respect to the provisions applicable to the claims asserted against Defendant.

71.    Plaintiffs and each member of the Class have performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms and conditions of the contract, except to the extent such performance was excused, released, or waived by the actions, conduct, or agreement of Defendant.

72.    Defendant breached its contractual obligations under the seat selection contracts and the Contract of Carriage with Plaintiffs and each member of the Class by failing to provide window seats for customers who selected a window seat.

73.    As a direct and proximate result of Defendant's failure to provide such window seats, Plaintiffs and each member of the Class have been damaged in an amount to be determined at trial.

1

## COUNT III: BREACH OF IMPLIED CONTRACT

2
3

74.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

4
5
6
7
8
9
10
11
12
13

75.    Contracts may be made by a writing, orally, or by the conduct of the parties, or by a combination of any of the aforementioned. Each such contract is equally valid and enforceable, with the chief difference between them the manner of proof of the terms of the contract. Plaintiffs and the Class Members and Defendant entered into a contract that was partly written and partly implied by conduct, under which Defendant agreed to provide Plaintiffs and Class Members with a window seat, including a window; this was a material term of the express contract.  And, Plaintiffs and the Class Members agreed to pay and did pay a fee to select such window seat during the purchasing process.

14
15
16
17
18

76.    The express terms were payment of a specific fee by Plaintiffs and the Class Members in exchange for assignment of a specific seat that was located next to a "window" on a seat map or described as a "window" on a seat map or on a ticket. The implied terms of the contract were that Defendant and Plaintiffs and the Class Members agreed that such seats included a window.

19
20
21
22

77.    Plaintiffs and each member of the Class are parties to contracts, including the seat select fee contract as well as the Contract of Carriage, with Defendant, that are uniform with respect to the provisions applicable to the claims asserted against Defendant.

23
24
25
26

78.    Plaintiffs and each member of the Class have performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms and conditions of the contract, except to the extent such performance was excused, released, or waived by the actions, conduct, or Agreement of Defendant.

27
28

79.    Defendant breached its contractual obligations under the seat selection contracts and the Contract of Carriage with Plaintiffs and each member of the Class by failing to provide

window seats for customers who selected a window seat.

80.    As a direct and proximate result of Defendant's failure to provide such window seats, Plaintiffs and each member of the Class have been damaged in an amount to be determined at trial.

**COUNT IV: UNFAIR COMPETITION AND PUBLIC INJUNCTION**

81.    Plaintiffs and members of the California Subclass reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

82.    Plaintiffs, on behalf of the California Subclass, bring this action on behalf of the general public to enjoin Defendant's unlawful, unfair, and deceptive business practices pursuant to California Business & Professional Code Sections 17200, et seq (the "UCL") and/or the Consumer Legal Remedies Act, Civil Code Section 1750 et seq (the "CLRA").

83.    Defendant markets and sells airline seats designated as "window seats" and charges consumers a premium for those seats.

84.    In numerous instances, seats sold as "window seats" do not in fact provide an actual window. Instead, passengers seated there face a blank wall panel where a window would ordinarily be located.

85.    Plaintiffs and Subclass Members have suffered injury in fact and have lost money as a result of Defendant's conduct, thereby conferring standing under the Business and Professions Code Section 17204 and Civil Code section 1780(a).

86.    Defendant has engaged and continues to engage in business practices that are unlawful, unfair, or fraudulent, including but not limited to selling window seats that do not, in fact, include a window, and charging customers for the privilege.

87.    Pursuant to Business & Professions Code § 17203, Plaintiffs seek restitution of all monies Defendant wrongfully obtained through its deceptive practice of selling "window

seats" without windows.

88.    Plaintiffs also seeks disgorgement of all ill-gotten revenues derived from this unlawful practice to the extent permitted under California law.

89.    Plaintiffs further seek an award of attorney's fees and costs pursuant to Code of Civil Procedure § 1021.5.

90.    Plaintiffs and Subclass Members seek public injunctive relief, defined by California courts as relief that by and large benefits the general public as a whole, and that is not simply incidental to relief obtained by the plaintiff.

91.    Specifically, Plaintiffs seeks an injunction requiring Defendant to cease the unlawful, unfair and fraudulent practices described herein, provide clear and conspicuous disclosures regarding the true nature of the allegedly "windowless" window seats that they sell, and undertake corrective advertising and/or consumer notice as necessary to remedy the misleading and deceptive practice.

92.    Unless enjoined by this Court, Defendant will continue to engage in these unlawful and unfair business practices, which pose a substantial and ongoing risk of harm to the general public.

93.    The injunctive relief is designed to prevent future harm to the public at large and compliance with California law.

94.    Plaintiffs have no adequate remedy at law to protect the public from Defendant's ongoing misconduct.

95.    Issuance of a public injunction is in the public interest to stop Defendant from continuing to gain an unfair competitive advantage from misleading and harming customers.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all other members of the Class, respectfully

requests that the Court enter judgment in their favor and against Defendant as follows:

A.    Certifying the Class as requested herein, designating Plaintiffs as class representatives, and appointing Plaintiffs' counsel as Class Counsel;

B.    Awarding Plaintiffs and the Class appropriate monetary relief, including actual damages, consequential damages, punitive damages, restitution, disgorgement, and attorney's fees;

C.    Awarding Plaintiffs and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiffs, individually and on behalf of the Class, seek appropriate injunctive relief designed to prevent Defendant from charging extra fees for window seats that do not include a window.

D.    Awarding Plaintiffs and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Awarding Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.    Awarding Plaintiffs and the Class such other favorable relief as allowable under law.

G.    An injunction requiring Defendant to cease the unlawful, unfair and fraudulent practices described herein, provide clear and conspicuous disclosures regarding the true nature of the allegedly "windowless" window seats that they sell, and undertake corrective advertising and/or consumer notice as necessary to remedy the misleading and deceptive practice.

**JURY TRIAL DEMANDED**

96. Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: August 19, 2025      Respectfully Submitted,

             /s/ *Carter E. Greenbaum*

             Carter E. Greenbaum (SBN 344692)
             **GREENBAUM OLBRANTZ, LLP**
             160 Newport Center Drive, Suite 110
             Newport Beach, CA 92660
             Tel: (332) 222-9119
             Email: carter@greenbaumolbrantz.com

             Casey Olbrantz (*pro hac vice forthcoming*)
             **GREENBAUM OLBRANTZ, LLP**
             244 Fifth Avenue, Suite C221
             New York, NY 10001
             Tel: (332) 222-9119
             Email: casey@greenbaumolbrantz.com

             *Attorneys for Plaintiffs*