**RILEY SAFER HOLMES & CANCILA LLP**
SONDRA A. HEMERYCK (*pro hac vice*)
shemeryck@rshc-law.com
ELI LITOFF (*pro hac vice*)
elitoff@rshc-law.com
STEVEN E. VOGEL (*pro hac vice*)
svogel@rshc-law.com
70 W. Madison Street, Suite 2900
Chicago, IL 60602
Telephone:     (312) 471-8700
Facsimile:     (312) 471-8701
JEFFREY R. WILLIAMS (CSB No. 084156)
jwilliams@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone:     (415) 275-8550
Facsimile:     (415) 275-8551

*Attorneys for Defendant*
UNITED AIRLINES, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC BRENMAN, and AVIVA COPAKEN individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendants. | ) **Case No. 3:25-cv-06995-JD**<br>)<br>) **DEFENDANT UNITED AIRLINES,**<br>) **INC.'S NOTICE OF MOTION AND**<br>) **MOTION TO DISMISS PLAINTIFFS'**<br>) **CLASS ACTION COMPLAINT, AND**<br>) **SUPPORTING MEMORANDUM OF**<br>) **POINTS AND AUTHORITIES**<br>)<br>) **DATE:  November 6, 2025**<br>) **TIME:  10:00 a.m.**<br>) **COURTROOM: 11**<br>)<br>) Complaint Filed: August 19, 2025 |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 1

I.    PRELIMINARY STATEMENT AND ISSUES TO BE DECIDED ................................. 1

II.   SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ........................................... 2

    A.    Plaintiffs' Alleged Purchases of Viewless Window Seats ..................................... 2

    B.    Plaintiffs' Allegations Regarding United's Booking Process ................................ 2

    C.    United's Contract of Carriage ................................................................................. 3

III.  LEGAL STANDARD ..................................................................................................... 4

IV.   ARGUMENT .................................................................................................................. 5

    A.    The ADA Preempts Plaintiffs' Claims. ................................................................. 5

        1.    Plaintiffs' Claims Relate to United's Prices and Services. ......................... 6

        2.    The ADA Preempts the Claims Asserted in Counts I and II of the
Complaint. ................................................................................................... 7

        3.    The ADA Preempts Plaintiffs' Other Claims (Counts III and IV). ............ 12

        4.    The ADA Preempts Plaintiffs' Requests for Extracontractual Relief. ....... 13

    B.    Plaintiffs' Claims Fail on Their Merits. ................................................................. 14

        1.    Count I Fails Because *Wolens* Does Not Provide an Independent
Cause of Action. .......................................................................................... 14

        2.    Count II Fails Because Plaintiffs Do Not Plausibly Allege That
United Breached Any Contract with Them. ................................................. 14

        3.    Count III Fails Because the CoC Precludes Implied Agreements. ........... 15

        4.    Count IV Fails Because Plaintiffs Do Not Plead Fraud with
Particularity. ................................................................................................ 15

CONCLUSION ......................................................................................................................... 15

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- i -

## TABLE OF AUTHORITIES

**CASES**

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995) ............................................................................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 4

*Bajra v. Delta Air Lines, Inc.*,
No. 1:24-CV-3477-MHC, 2025 WL 1527076 (N.D. Ga. May 6, 2025)................................ 13

*Banga v. Gundumolgula*,
No. 2:13-CV-00667-MCE, 2013 WL 3804046 (E.D. Cal. July 19, 2013) ............................ 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 4

*Brownstein v. Am. Airlines*,
No. C-05-3435 JCS, 2005 WL 2988720 (N.D. Cal. Nov. 7, 2005) ........................................ 13

*Cafasso v. Gen. Dynamics C4, Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)................................................................................ 5, 15

*Doe I v. Google, LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ................................................................ 15

*Fernald v. Sw. Airlines Co.*,
No. 11CV0453 AJB (POR), 2011 WL 13254382 (S.D. Cal. Sept. 28, 2011) ........................ 7

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)................................................................................ 5, 15

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)................................................................................ 5

*Lipeles v. United Airlines, Inc.*,
No. CV 23-7143-KK-MAAX, 2024 WL 891792 (C.D. Cal. Jan. 9, 2024) ........................... 13

*Neft v. United Cont'l Holdings, Inc.*,
299 F.Supp.3d 965 (N.D. Ill. 2018) ........................................................................ 6

*Netbula, LLC v. BindView Dev. Corp.*,
516 F. Supp. 2d 1137 (N.D. Cal. 2007) ................................................................ 10, 14

*Northwest, Inc. v. Ginsberg*,
572 U.S. 273 (2014) ............................................................................................ 5, 8

*Onoh v. Nw. Airlines, Inc.*,
613 F.3d 596 (5th Cir. 2010)................................................................................ 6

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- ii -

*Pica v. Delta Air Lines, Inc.*,
   No. CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) ....................... 13

*Quick Dispense, Inc. v. Vitality Food Serv., Inc.*,
   No. 8:23-cv-02322-FWS-ADS, 2025 WL 576589 (C.D. Cal. Feb. 5, 2025).................... 10, 14

*Scarlett v. Air Methods Corp.*,
   922 F.3d 1053 (10th Cir. 2019)................................................................................ 13

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003)..................................................................................... 5

*Villarroel v. Recology, Inc.*,
   775 F. Supp. 3d 1050 (N.D. Cal. 2025) ............................................................... 14, 15

*Watson v. United Airlines, Inc.*,
   Civil 16-00400 LEK-KJM, 2017 WL 6060173 (D. Haw. 2017), *aff'd* 709 Fed. App'x
   500 (9th Cir. 2018) ................................................................................................ 6

*Weber v. USAirways, Inc.*,
   11 F. App'x 56 (4th Cir. 2001).................................................................................. 7

*Witty v. Delta Air Lines, Inc.*,
   366 F.3d 380 (5th Cir. 2004).................................................................................... 7

**STATUTES**

49 U.S.C. § 40101(a)(6) ............................................................................................... 5

49 U.S.C. § 40101(a)(12) ............................................................................................. 5

49 U.S.C. § 41713(b)(1)............................................................................................... 5

**RULES**

Fed. R. Civ. P. 9(b)......................................................................................... 2, 5, 15

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1, 4, 14

**OTHER AUTHORITIES**

*Black's Law Dictionary* (12th ed. 2024) ........................................................................ 9

PLEASE TAKE NOTICE that on November 6, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant, United Airlines, Inc. ("United"), will move to dismiss Plaintiffs' Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs' Complaint should be dismissed with prejudice because Plaintiffs have not pleaded, and cannot plead, a claim on which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT AND ISSUES TO BE DECIDED

Plaintiffs Aviva Copaken ("Copaken") and Marc Brenman ("Brenman") (collectively, "Plaintiffs") allege that they purchased flights on United and "paid extra" or "used points and benefits" to purchase "a 'window' seat." ECF No. 1 ("Compl.") ¶¶ 48, 51. Plaintiffs further allege they were "disappointed" to discover that their seats on these flights "did not have a window at all." *Id.* Based on this alleged conduct, Plaintiffs purport to bring claims against United for "breach of self-imposed undertaking under *American Airlines v. Wolens*" (Count I); breach of contract (Count II); breach of implied contract (Count III); and violation of California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") (Count IV).

Plaintiffs' Complaint should be dismissed in its entirety and with prejudice because Plaintiffs have not pleaded, and cannot plead, a claim on which relief can be granted. First, despite Plaintiffs' attempt to plead around it, Plaintiffs' claims are all preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 40101, *et seq.* (the "ADA"), because all the claims relate to United's prices and services, and none seeks to enforce a contractual obligation that United undertook. The ADA also preempts any attempt by Plaintiffs to recover consequential damages, punitive damages, or attorneys' fees.

Second, Plaintiffs' claims would fail on their merits even if they were not preempted. Counts I through III fail because Plaintiffs do not plausibly allege a contractual promise by United (either express or implied) that their seats would have an external view. In addition, Count I fails because the *Wolens* decision did not create an independent cause of action for "breach of self-

imposed undertaking" that is separate and distinct from a breach of contract claim, and Count III fails because there was an express agreement between United and the Plaintiffs—United's Contract of Carriage ("CoC")—that constituted "the conditions of carriage" upon which United agreed to provide transportation to Plaintiffs.[1] The CoC also expressly states that "no covenants at law or in equity shall be implied or incorporated." Kelley Decl. Ex. 1, at 1. Finally, Count IV fails because Plaintiffs do not allege fraud with the specificity required by Rule 9(b).

## II.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

### A.    Plaintiffs' Alleged Purchases of Viewless Window Seats

Plaintiffs' allegations regarding their own purchases of "window" seats that they claim did not have an external window are notably scant. Plaintiff Copaken alleges that she purchased three United flights in and around May 2025, paying between $45.99 and $169.99 extra to purchase a window seat on each flight. *Id.* ¶ 48. Copaken does not allege *how* she purchased those flights—for example, through United's mobile application (the "United App"), on United's website, or through an online travel agent such as Expedia or Hopper. Nor does she allege that United promised her that the seats she had purchased would have an external window view, much less *how* United purportedly made any such promise. Plaintiff Brenman similarly alleges that, in or around April of 2025, he purchased a United flight from San Francisco to Washington, D.C., and that he "used points and benefits conferred from annual fees" to select a "window" seat. *Id.* ¶ 51. Like Copaken, Brenman does not allege *how* he purchased that flight, nor does he allege that United promised him the seat he had purchased would have an external window view, much less *how* United purportedly made any such promise.

### B.    Plaintiffs' Allegations Regarding United's Booking Process

Plaintiffs' Complaint largely focuses on the process by which passengers who book flights through the United App can choose to pay an additional fee to select certain seats. *Id.* ¶¶ 31–39. Plaintiffs claim that "United's App labels seats as 'window' or 'aisle' through visual placement on the seat map and accompanying textual cues," *id.* ¶ 34, and that United thereby "expressly

---

[1] Declaration of Noemi Kelley ("Kelley Decl.") Ex. 1, Rule 3.A. The Court may consider the CoC because it is central to Plaintiffs' claims and its authenticity is unquestioned. *See infra* at 5.

represents" that so-called "Windowless Seats" have an external window. *Id.* ¶¶ 35–36. Plaintiffs also allege in wholly conclusory fashion that "[t]ravelers who purchase airline tickets" through United's website "face similar issues" because the website "displays a seating chart" that "implies" an external view. *Id.* ¶ 40. As already noted, the Complaint includes no allegations about how either Copaken or Brenman booked their flights, or what "express representation" (if any) United supposedly made to them about whether their selected seats had an external window.

## C. **United's Contract of Carriage**

The "conditions of carriage" upon which United agreed "to provide … Carriage" to Plaintiffs are the rules contained in United's CoC. Kelley Decl. Ex. 1, Rule 3.A. Plaintiffs' Complaint repeatedly references the CoC (Compl. ¶¶ 45–46, 69–72, 77–79), and Plaintiffs acknowledge they are bound by it (*id.* ¶ 45), but they do not attach it to their Complaint. United therefore provides in support of its Motion a true and correct copy of its CoC that was in effect at the time Plaintiffs' allegedly purchased their United flights. *See* Kelley Decl. ¶ 3 and Ex. 1.

The preamble to the CoC states:

> Transportation of Passengers … provided by United … [is] subject to the following terms and conditions, in addition to any terms and conditions printed on or in any ticket, ticket jacket, or eticket receipt. To the extent there is a conflict between this Contract of Carriage and any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt, ***this Contract governs***. By purchasing a ticket or accepting transportation, the passenger agrees to be bound by … this Contract of Carriage, and ***no covenants at law or in equity shall be implied or incorporated***.

Kelley Decl., Ex. 1, at 1 (emphases added).

The CoC defines "Ticket" as "the record of agreement, including electronic tickets, … for Passenger air transportation provided by" United. *Id.*, Ex. 1 Rule 1 (Definitions). A passenger must present "a valid Ticket" to be entitled to transportation on a United flight. *Id.*, Rule 6.C; *see also, e.g.*, Rules 6.A, B, E, and G (a "Ticket" must be "issued").

The CoC includes a number of provisions relating to seats and seat assignments, including Rule 4.D, which states:

> Seat assignments, regardless of class of service, are not guaranteed and are subject to change without notice. UA reserves the right to reseat a Passenger for any reason, including but not limited to from a United First or Business class seat, United Polaris® seat, United® Premium Plus seat, Economy Plus seat, or from Preferred

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 3 -

> Seating for which the applicable fee, miles, or other compensation has been paid, and if a Passenger is improperly or erroneously upgraded to a different class of service. If a Passenger is removed from a United First or Business class seat, United Polaris® seat, United® Premium Plus seat, Economy Plus seat, or from Preferred Seating for which a fee, miles, or other compensation has been paid, and the Passenger is not re-accommodated in a seat of equal or greater value, or if a Passenger is downgraded from a class of service and is not re-accommodated in a seat in an equal or greater class of service for which a fee, miles, or other compensation has been paid, the Passenger may be eligible for a refund in accordance with Rule 27.

*Id.*, Rule 4.D.

There are no provisions in the CoC by which United promises that every seat in the "window" position—*i.e.*, next to the main body of the aircraft—will have an external window in the adjacent wall. Rule 24.I of the CoC, however, addresses United's liability for any failure to provide any "amenity," for any reason. That Rule states, in relevant part, that United

> shall have no liability for, and shall owe no refund with respect to any failure to provide that amenity …. <u>EXCEPTION</u>: If a Passenger has paid for a specific … amenity … as a separate fee … and that … amenity is not provided, the Passenger is eligible for a refund of the amount paid ***if a refund request is made within 90 days*** of the date the fee was originally paid or the flight date, whichever is later.

*Id.*, Rule 24.I (emphasis added).

Finally, Rule 3.I states that "UA shall not be liable for any consequential, compensatory, indirect, incidental or punitive damages arising out of or in connection with the performance of its obligations." *Id.*, Rule 3.I.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Additionally, claims sounding in fraud—including claims brought under the UCL and the CLRA—must satisfy the heightened pleading requirements of Rule 9(b). *See, e.g.*, *Cafasso v. Gen. Dynamics C4, Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011) ("To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the] statement, and why it is false."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (when fraud or misrepresentation is pleaded, "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").

Finally, the incorporation-by-reference doctrine allows a court ruling on a motion to dismiss to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the pleading. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and citation omitted). Here, the Court may consider the CoC because it is central to Plaintiffs' claims. Plaintiffs reference the CoC extensively, and their claims rely upon it. *See* Compl. ¶¶ 45–46, 69–72, 77–79; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a document is incorporated by reference into a complaint if the plaintiff refers extensively to the document or it forms the basis of his claim).

## IV.    ARGUMENT

### A. The ADA Preempts Plaintiffs' Claims.

Congress enacted the ADA to promote "efficiency, innovation, and low prices" in the airline industry through "maximum reliance on competitive market forces and on actual and potential competition" rather than regulation. 49 U.S.C. § 40101(a)(6), (a)(12). To "prevent the states from undoing what the [ADA] was meant to accomplish," Congress included a broad preemption provision. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283 (2014). Under the ADA's preemption provision, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The ADA thus preempts state laws (including state common-law rules) that are "related to"—*i.e.*, have "a connection with, or reference to"—an airline's prices, routes or services. *Ginsberg*, 572 U.S. at 280–84.

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 5 -

The Supreme Court has recognized only a single, narrow exception to the ADA's broad preemption provision. Claims that relate to an airline's prices, routes or services escape preemption only in "routine" breach of contract actions that seek to enforce the terms of the parties' bargain, but nothing more:

> The ADA's preemption clause ... stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes **confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement**.

*Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232–33 (1995) (emphasis added).

Merely styling a claim as one for breach of contract does not bring it within the *Wolens* exception. To the contrary, courts have repeatedly found so-called breach of contract claims preempted when they seek to impose obligations that exceed the scope of the parties' bargain. *See, e.g.*, *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (ADA preempted breach of contract claim that "d[id] not involve the airline's 'self-imposed' undertaking"); *Neft v. United Cont'l Holdings, Inc.*, 299 F.Supp.3d 965, 975–76 (N.D. Ill. 2018) (ADA preempted plaintiff's demand for a remedy that was outside the terms of plaintiff's contract with United); *Watson v. United Airlines, Inc.*, Civil 16-00400 LEK-KJM, 2017 WL 6060173, at *5–7 (D. Haw. 2017) (finding claim for breach of contract preempted because it sought "to enlarge Plaintiffs' contractual rights" beyond those provided in the CoC), *aff'd* 709 Fed. App'x 500 (9th Cir. 2018).

The claims asserted by Plaintiffs here plainly relate to both United's prices and its services. Consequently, the claims are preempted unless they fit within the narrow *Wolens* exception. They do not, and the Complaint must therefore be dismissed.

### 1. Plaintiffs' Claims Relate to United's Prices and Services.

All of Plaintiffs' asserted claims relate to what they describe as "United's intentional practice of charging passengers premium fees to upgrade to seats that United represents are 'window' seats, but which are actually adjacent to a blank wall." Compl. ¶ 1. Courts repeatedly have held that claims concerning airline fees and surcharges, as well as claims that concern seat selection, seat restrictions, and upgrades, relate to "price" for purposes of ADA preemption. *See*

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 6 -

*Wolens*, 513 U.S. at 226 (mileage credits for upgrades related to price); *Fernald v. Sw. Airlines Co.*, No. 11CV0453 AJB (POR), 2011 WL 13254382, at *2–3 (S.D. Cal. Sept. 28, 2011) (collecting cases nationwide, holding that ADA preemption applies to "claims involving fees, taxes, and other charges," such as mileage credits, upgrades, and various fees); *Weber v. USAirways, Inc.*, 11 F. App'x 56, 56–58 (4th Cir. 2001) (flight voucher's seat restrictions fell under "price"); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 383 (5th Cir. 2004) (increasing seat legroom indirectly acts as a "forbidden significant effect" on prices). *Fernald* is particularly instructive, noting that "Southwest's EBCI program is essentially a ten-dollar fee to select a better seat. Logically, that is tied to Southwest's prices." 2011 WL 13254382, at *3. Thus, Plaintiffs' claims are unquestionably related to United's prices.

Claims relating to seat selection and upgrades also relate to airline "services." *See, e.g.*, *Fernald*, 2011 WL 13254382, at *3 ("[T]he EBCI program is a ***service*** that provides passengers with an opportunity to upgrade their seat selection.") (emphasis added); *see also Wolens*, 513 U.S. at 227 (airline "services" include class-of-service upgrades). Indeed, the Complaint *itself* categorizes seat types as "services." Compl. at ¶ 16–17 (United benefits from "sale of air travel *services*, including the marketing and sale of *specific seat types* … United holds itself out as a premium *service* provider and charges higher fares for particular seat locations—such as 'window' seats.") (emphasis added).

Accordingly, Plaintiffs' claims are related to United's prices and services, and are therefore preempted unless they fit within the *Wolens* exception. As explained below, they do not.

**2. The ADA Preempts the Claims Asserted in Counts I and II of the Complaint.**

As previously noted, the *Wolens* decision recognized an exception to ADA preemption for "state-law-based adjudication of *routine breach of contract claims*." 513 U.S. at 233 (emphasis added). In doing so, the *Wolens* Court reasoned that such claims "seek[] recovery solely for the airline's breach of its own, self-imposed undertakings," and that "[a] remedy *confined to a contract's terms* simply holds parties to their agreements." *Id.* at 228–29 (emphasis added). Despite Plaintiffs' attempt to suggest otherwise by asserting separate counts for "breach of self-imposed undertaking under [*Wolens*]" (Count I) and for breach of contract (Count II), *Wolens* did

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 7 -

not create a cause of action for "breach of self-imposed undertaking" that is somehow distinct from a claim for breach of contract. Regardless of how Plaintiffs have styled their claims, those claims escape preemption only if they seek to do nothing more than enforce a contractual obligation that United undertook. *See Ginsberg*, 572 U.S. at 276 (a claim is preempted "if it seeks to enlarge the *contractual obligations* that the parties voluntarily adopt") (emphasis added).

Plaintiffs have not asserted a single claim that is based on United's contractual obligations under the CoC. In Count I of the Complaint, Plaintiffs allege that United "created a self-imposed duty to, in exchange for the fees paid by its customers to select seats, provide customers who selected a 'window' seat with a window." Compl. ¶ 65. In Count II, Plaintiffs allege that Plaintiffs and United "entered into express contracts"—which Plaintiffs refer to as "the seat selection contracts"—under which United "agreed to provide customers who purchased a 'Window' seat with a window." *Id.* ¶¶ 69–70, 72. Neither of those claims seeks to enforce a contractual obligation that United actually undertook.

Plaintiffs' purchase of their United flights did indeed create a contract: the CoC. As the CoC expressly states: "By purchasing a ticket …, the Passenger agrees to be bound by ***these controlling terms*** of this Contract of Carriage." Kelley Decl. Ex. 1, at 1 (emphasis added). The CoC also provides: "These rules constitute ***the*** conditions of carriage" upon which United "agrees to provide … Carriage." *Id.* Rule 3.A. (emphasis added). There is no provision in the CoC whereby United guaranteed that every seat in the "window" position—*i.e.*, next to the main body of its aircraft—will have an external window in the adjacent wall. Plaintiffs' claims thus attempt to enlarge United's obligations beyond those it undertook in the CoC, and are consequently preempted.

Plaintiffs attempt to avoid this conclusion by alleging that the seat selection screen in the United App "expressly represents" that seats labeled as "window" will have an external window on the wall adjacent to the seat, and that this purported "description" of the seats "forms part of the contract of sale between the consumer and United." *Id.* ¶¶ 35, 38. These allegations do not save Plaintiffs' claims, for several reasons.

To begin, neither Copaken nor Brenman alleges that they purchased their tickets through the App or that they saw the alleged seat selection screens that appear in the Complaint. Consequently, the Complaint's allegations regarding the United App's use of the word "window" in its seat selection process are irrelevant to *these Plaintiffs*' claims.

Moreover, even if Plaintiffs had alleged that they purchased their flights and selected their seats through the App, their claims would still be preempted. Contrary to Plaintiffs' assertions, the CoC does not incorporate the seat selection screens, and the alleged use of the word "window" in reference to a particular seat during the seat selection process within the United App cannot reasonably be interpreted as a contractual promise that the wall adjacent to the seat will have an external view. Finally, even if the existence of an external window could qualify as an "amenity" under CoC Rule 24.I, Plaintiffs do not allege any breach by United of that Rule.

### a. *The CoC Does Not Incorporate the Seat Selection Screens.*

Recognizing (as they must) that the rules set forth in the CoC "constitute **the** conditions of carriage" upon which United agreed to provide carriage to Plaintiffs, Plaintiffs attempt through a convoluted process to incorporate the United App's seat selection screens into the CoC. They allege that the CoC incorporates "terms and conditions printed on or in any ticket," and that the seat selection process comes within either "ticket" itself, or "record of agreement," which is included in the CoC's definition of "Ticket." Compl. ¶¶ 45, 46.

This tenuous connection is not supported by the CoC. The seat selection process is not explicitly or impliedly included as a provision of the CoC. None of the United App screenshots included in Plaintiffs' allegations are housed within the CoC. In fact, the word "window" is not referenced even once in the CoC, and at no point are window views included within the contractual obligations that United undertook in the CoC. The CoC employs "ticket" (or "record of agreement") to describe a *previous* purchase. Kelley Decl. Ex. 1, Rule 1; s*ee also* "record" definition, *Black's Law Dictionary* (12th ed. 2024) ("A documentary account of *past* events, usu. designed to memorialize those events." (emphasis added)); "ticket" definition, *Black's Law Dictionary* (12th ed. 2024) (defining "ticket" as entitling a future right in exchange for past issuance). In fact, the CoC often references the term "ticket" alongside "eticket receipt," indicating

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 9 -

a similar past-facing acknowledgement. But the seat selection screens on which Plaintiffs rely are not a record of a transaction that has already occurred; rather, they show the *seat selection process*, before any seat selection is finalized. Compl. ¶ 35.

Moreover, as used throughout the CoC, the term "Ticket" references a record of agreement *that entitles a passenger to transportation on a United flight. See, e.g.*, Kelley Decl. Ex. 1, Rule 6.C ("No person will be entitled to transportation except upon presentation of a valid Ticket"). "Tickets" are "issued" by United or its authorized agent, and have a "ticket serial number." *See* Rule 1 ("UA Ticket Stock" definition), Rules 6.A, B, E, G and 7.B (referring to "Tickets" being "issued"). The screenshots of the United App seat selection page that appear in the Complaint were not "issued" by United, do not include a "ticket serial number," and certainly could not be presented in order to board a flight. They are plainly not "Tickets" as defined in the CoC, and Plaintiffs' tortured attempt to show that they are should be rejected.

### b. The Word "Window" Is Not a Promise That the Adjacent Wall Will Have an External Window.

Even if Plaintiffs could plausibly allege that the seat selection pages were incorporated into the CoC—which they cannot—their claims would still fail because Plaintiffs' proffered interpretation of those screens is patently *im*plausible. Plaintiffs' claims rest on the premise that the seat selection process on the United App creates an enforceable promise that any seat labeled with the word "window" will have a window on the adjacent wall. To be enforceable, however, "a promise must be definite enough that a court can determine the scope of the duty and the limits of performance." *Quick Dispense, Inc. v. Vitality Food Serv., Inc.*, No. 8:23-cv-02322-FWS-ADS, 2025 WL 576589, at *4 (C.D. Cal. Feb. 5, 2025) (internal quotation marks and citation omitted); *see also Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) (contract formation "requires that the parties reach mutual assent or consent on definite or complete terms. … Terms of a contract must also be sufficiently definite in all particulars essential to its enforcement."). Plaintiffs' Complaint does not plausibly allege that United's seat selection process, as reflected in the screenshots on which Plaintiffs rely, creates an enforceable promise that a seat labelled "window" will have an external window on the adjacent wall.

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 10 -

The seat selection process as depicted in Plaintiffs' screenshots is just that—a way for the passenger to select the location in which the passenger will sit. *See* Compl. ¶ 35. Plaintiffs allege that "United's App labels seats as 'window' or 'aisle' through visual placement on the seat map and accompanying textual cues." *Id.* ¶ 34. As evidenced by Plaintiffs' screenshots, however, there are no windows depicted on the walls next to any of the "window" seats—unlike the exit rows, which *are* depicted. *Id.* ¶ 35. Nothing in the screenshots indicates that the labeling of a seat as "window" signifies anything other than the position of the seat on the aircraft. *Id.* In fact, Plaintiffs *themselves* describe the seat selection process in geospatial terms, referencing the "window" seats on United's website in terms of their "proximity to the side of the aircraft," alleging that this proximity "*implies*" that "the seat will have a window." *Id.* at ¶ 40.

Further, the appearance of the word "window" just above (and in a smaller font than) the words "Preferred Seat"—which offers a "Favorable location in Economy"—or "Economy Plus"—which provides "Extra legroom"—reinforces that the seat selection screens concern seat *location*. *Id.* ¶ 35. This conclusion is confirmed by the CoC, which provides:

> If a Passenger is removed from … [an] ***Economy Plus seat***, or from ***Preferred Seating*** for which a fee, miles, or other compensation has been paid, and the Passenger is not re-accommodated in a seat of equal or greater value, or if a Passenger is downgraded from a class of service and is not re-accommodated in a seat in an equal or greater class of service for which a fee, miles, or other compensation has been paid, the Passenger may be eligible for a refund in accordance with Rule 27.

Kelley Decl., Ex. 1 Rule 4.D (emphasis added). In other words, what the Passenger purchases when she pays "a fee, miles, or other compensation" to select an Economy Plus seat or a Preferred Seat is "extra legroom" or a "favorable location in Economy." Compl. ¶ 35. If *those* benefits are not provided, she may be eligible for a refund. But nothing in Rule 4.D suggests that a customer who purchases an Economy Plus seat or a Preferred Seat in the window location on the aircraft, and who is neither removed from that seat nor downgraded, is eligible for a refund if the seat does not have an external window on the adjacent wall.

### c.   Plaintiffs Have Not Alleged a Breach of Any Provision of the CoC.

There are no provisions in the CoC—and Plaintiffs have identified none—by which United promises that every seat in the "window" position of its aircraft will have an external window in

the adjacent wall. Rule 24.I of the CoC, as noted above, addresses United's liability for failure to provide any "amenity," Kelley Decl., Ex. 1 Rule 24.I, but even assuming that the presence of an external window in the wall adjacent to a "window" seat is an "amenity" (which would itself be a dubious proposition), Plaintiffs have not alleged a claim for breach of the Rule.

Rule 24.I. generally provides that United "shall have no liability" for any failure to provide an amenity. *Id.* There is one exception to that rule, which provides: "If a Passenger has paid for a specific … amenity in advance of the flight as a separate fee specifically designated for such … amenity and that … amenity is not provided, the Passenger is eligible for a refund of the amount paid if a refund request is made within 90 days" of the flight date. *Id.* Plaintiff Copaken alleges that she paid a fee "to select the 'window' seat" on each of her flights; Brenman alleges that he "used point and benefits" to "select a 'window' seat." Compl. ¶¶ 49, 51. As previously discussed, the designation of a particular seat as a "window" seat describes the position of the seat in the aircraft; it is not a promise that the seat will have an external window in the adjacent wall. In addition, while neither Plaintiff provides any specifics about their purchase (for example, whether they purchased an Economy Plus seat or a Preferred Seat), there is no basis to infer that they paid a fee that was "specifically designated for" the amenity of having an external window. But even if they had (or their allegations could be so construed), neither one of them alleges that he or she made a request for a refund "within 90 days" of the flight date, which is a condition precedent that Rule 24.I requires. As a result, neither Plaintiff alleges a claim against United for breach of Rule 24.I (or for any other provision of the CoC).

### 3. The ADA Preempts Plaintiffs' Other Claims (Counts III and IV).

Count III of Plaintiffs' Complaint purports to assert a claim for "breach of implied contract." In particular, Plaintiffs ask the Court to find, based on the location of a seat as shown on a seat map or the use of the word "window" to describe a seat, that the contract created when Plaintiffs' purchased their tickets included the "implied terms … that such seats included a window." Compl. ¶ 76. But the CoC expressly states that, "[b]y purchase[ing] a ticket or accepting transportation, the passenger agrees to be bound *by these controlling terms* of this Contract of Carriage, and *no covenants at law or in equity shall be implied*." Kelley Decl. Ex. 1, at 1

(emphasis added). Plainly, then, Plaintiffs' Count III does *not* seek only to enforce a contractual obligation that United undertook; to the contrary, it asks the Court, based on state law external to the agreement, to *imply* certain terms *despite* the express prohibition in the CoC. Plaintiffs' claim for breach of implied contract is clearly preempted. *See, e.g.*, *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1065 (10th Cir. 2019) (finding implied contract claim preempted); *Bajra v. Delta Air Lines, Inc.*, No. 1:24-CV-3477-MHC, 2025 WL 1527076, at *15 (N.D. Ga. May 6, 2025) (same).

Plaintiffs' Count IV seeks relief—including an injunction that would dictate the information United provides on its website and App—under California's UCL and CLRA statutes. Compl. ¶¶ 82, 87–89. Courts repeatedly have held that the ADA preempts such claims. *See Wolens*, 513 U.S. at 228 (ADA preempted Illinois Consumer Fraud Act claims); *Brownstein v. Am. Airlines*, No. C-05-3435 JCS, 2005 WL 2988720, at *5–7 (N.D. Cal. Nov. 7, 2005) (UCL and CLRA claims preempted); *Lipeles v. United Airlines, Inc.*, No. CV 23-7143-KK-MAAX, 2024 WL 891792, at *2–5 (C.D. Cal. Jan. 9, 2024) (UCL claim preempted); *Banga v. Gundumolgula*, No. 2:13-CV-00667-MCE, 2013 WL 3804046, at *3 (E.D. Cal. July 19, 2013) ("Unfair business practice laws, such as the UCL, have consistently been found preempted by the ADA."), *rep. and recomm. adopted*, No. 213CV0667MCDCKDPS, 2013 WL 11332786, at *3 (E.D. Cal. Sept. 12, 2013); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *8 (C.D. Cal. Sept. 18, 2018) ("Plaintiffs' UCL and CDBA claims … are preempted by the ADA"). The Court here should do the same.

### 4. The ADA Preempts Plaintiffs' Requests for Extracontractual Relief.

In their prayer for relief, Plaintiffs request consequential damages, punitive damages, restitution, disgorgement, attorney's fees, and injunctive relief. Compl. at 22. The CoC expressly states, however, that United "shall not be liable for any consequential, compensatory, indirect, incidental or punitive damages arising out of or in connection with the performance of its obligations" under the CoC. Kelley Decl., Ex. 1, Rule 3.I. Plaintiffs' requests for remedies beyond those provided by the CoC (including attorney's fees pursuant to state law) are precisely the type of "enlargement or enhancement" of the parties' bargain the ADA prohibits, *Wolens,* 513 U.S. at 232–33, and are therefore preempted.

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 13 -

**B. Plaintiffs' Claims Fail on Their Merits.**

The ADA's broad preemption provision warrants dismissal of all the claims asserted by Plaintiffs. Even if the claims were not preempted, however, they should be dismissed pursuant to Rule 12(b)(6) because each of them fails on its merits to state a claim for relief.

**1. Count I Fails Because *Wolens* Does Not Provide an Independent Cause of Action.**

As discussed in Section IV.A.2, *supra*, Plaintiffs' Count I purports to plead a cause of action that does not exist. The Supreme Court's decision in *Wolens* recognized an exception to ADA preemption for "routine breach of contract claims" that seek only to enforce the terms of the parties' bargain. 513 U.S. at 232–33. United is not aware of any case suggesting that *Wolens* created an independent cause of action separate and distinct from a claim for breach of contract. Count I is thus simply duplicative of either Count II (to the extent it purports to assert that United breached an express contractual obligation) or Count III (to the extent it purports to assert that United breached an *implied* contractual obligation). Count I should accordingly be dismissed.

**2. Count II Fails Because Plaintiffs Do Not Plausibly Allege That United Breached Any Contract with Them.**

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) resulting damage to the plaintiff. *Villarroel v. Recology, Inc.*, 775 F. Supp. 3d 1050, 1064 (N.D. Cal. 2025). The formation of a contract "requires that the parties reach mutual assent or consent on definite or complete terms." *Netbula, LLC*, 516 F. Supp. 2d at 1155. Consent is not mutual "unless the parties all agree on the same thing in the same sense." *Quick Dispense, Inc.*, 2025 WL 576589, at *3 (internal quotations and citation omitted). Further, the terms of an alleged contract must be "sufficiently definite in all particulars essential to its enforcement." *Netbula, LLC*, 516 F. Supp. 2d at 1155; *see also Quick Dispense, Inc.*, 2025 WL 576589, at *4 ("[A] promise must be definite enough that a court can determine the scope of the duty and the limits of performance.")

As discussed in Section IV.A.2, *supra*, Plaintiffs' Complaint fails to plausibly allege the existence of any contract between either Plaintiff and United whereby United promised that the seats Plaintiffs selected would have an external window on the adjacent wall. *See supra* at 8. And

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 14 -

while there is no dispute that by purchasing their tickets Plaintiffs "agree[d] to be bound by" the CoC, they also fail to plausibly allege that United breached that contract. *Id.* at 11–12. For these reasons as well, Count II should be dismissed.

### 3. Count III Fails Because the CoC Precludes Implied Agreements.

"An implied breach of contract claim has the same elements as an express breach of contract claim except its existence and terms are manifested by conduct, not words." *Doe I v. Google, LLC*, 741 F. Supp. 3d 828, 848 (N.D. Cal. 2024). In this case, Plaintiffs do not allege any specific conduct by United that purportedly created an implied contract between United and either Plaintiff. *See supra* at 10–11. And the conduct that the Complaint generally alleges (the location of a seat on a seat map or description of a seat as a "window," *see* Compl. ¶ 76) is no more sufficient to allege an implied contract than an express one. *See supra* at 10–11.

In any event, "an implied contract cannot exist when there is an express contract between the parties governing the same subject." *Doe I*, 741 F. Supp. 3d at 848. Here, there is an express contract—the CoC—that "constitute[s] the conditions of carriage" upon which United agreed to provide transportation to Plaintiffs. Kelley Decl. Ex. 1, Rule 3.A. Moreover, that contract expressly *precludes* any implied covenants. *Id.* Ex. 1, at 1. Count III should therefore be dismissed.

### 4. Count IV Fails Because Plaintiffs Do Not Plead Fraud with Particularity.

The gravamen of Plaintiffs' Count IV is United's purportedly "deceptive" conduct. *See, e.g., id.* ¶¶ 6–7 (alleging that United "misleads its customers" and engages in "deceptive conduct"). Rule 9(b)'s heightened pleading standards therefore apply to that claim. *Kearns,* 567 F.3d at 1125; *see also Villarroel*, 775 F. Supp. 3d at 1062. But rather than identifying "the who, what, when, where, and how" of the alleged fraud, *Cafasso*, 637 F.3d at 1054–55, Copaken and Brenman each alleges only that she or he purchased a "window" seat and was "disappointed" when it did not have a window in the adjacent wall. Compl. ¶¶ 49, 51. Plaintiffs provide no specificity about how their purchases were made, what representations were made, or how they were purportedly misled.

For this additional reason, even if it were not preempted, Count IV should be dismissed.

### CONCLUSION

For the foregoing reasons Plaintiffs' Complaint should be dismissed with prejudice.

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 15 -

Dated: October 2, 2025

Respectfully Submitted:

**RILEY SAFER HOLMES & CANCILA LLP**


By: /s/ Sondra A. Hemeryck
    Sondra A. Hemeryck (*pro hac vice*)
    Eli Litoff (*pro hac vice*)
    Steven E. Vogel (*pro hac vice*)
    RILEY SAFER HOLMES & CANCILA LLP
    70 W. Madison Street, Suite 2900
    Chicago, IL 60602
    Telephone: (312) 471-8700
    Facsimile:  (312) 471-8701
    shemeryck@rshc-law.com
    elitoff@rshc-law.com
    svogel@rshc-law.com

    Jeffrey R. Williams (CSB No. 084156)
    RILEY SAFER HOLMES & CANCILA LLP
    jwilliams@rshc-law.com
    456 Montgomery Street, 16th Floor
    San Francisco, CA 94104
    Telephone:(415) 275-8550
    Facsimile: (415) 275-8551

    *Attorneys for Defendant*
    UNITED AIRLINES, INC.

DEFENDANT UNITED AIRLINE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 16 -

## PROOF OF SERVICE

I hereby certify that I caused the above document to be electronically filed with the Clerk of Court using CM/ECF system, which will send notification of such filing to all counsel of record in the above-captioned matter.

Dated: October 2, 2025                    By: /s/ Sondra A. Hemeryck
                                             Sondra A. Hemeryck (*pro hac vice*)