Carter E. Greenbaum (SBN 344692)
**GREENBAUM OLBRANTZ LLP**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
Tel: (332) 222-9119
Email: carter@greenbaumolbrantz.com

**GREENBAUM OLBRANTZ LLP**
Casey Olbrantz (*pro hac vice*)
244 Fifth Avenue, Suite C221
New York, NY 10001
Email: casey@greenbaumolbrantz.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARC BRENMAN, AVIVA COPAKEN, SEAN MINYARD, ROBERT MONROE, and CINDY PAWLOWSKI, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>UNITED AIRLINES, INC,<br><br>　　　　　　　Defendant. | **FIRST AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br>Case No. 3:25-cv-06995-JD<br><br>JURY TRIAL DEMANDED |

Plaintiffs MARC BRENNAN, AVIVA COPAKEN, SEAN MINYARD, ROBERT MONROE, and CINDY PAWLOWSKI ("**Plaintiffs**"), individually and on behalf of all others similarly situated, bring this class action against Defendant UNITED AIRLINES, INC. ("**United**") and allege upon personal knowledge and information and belief as to all other matters:

- 1 -

**<u>INTRODUCTION</u>**

1.      This class action seeks redress for United's unlawful practice of charging passengers upgrade fees to buy seats that United represents have a "window," but that are actually next to a blank wall. Plaintiffs and the proposed class members paid valuable consideration to obtain a window to improve their flying experiences. United specifically represented to Plaintiffs and class members that the particular seats they selected for purchase had a "window," even though United knew full well they did not. United even generated boarding passes and ticket records—which United concedes are enforceable components of its passenger contracts—that expressly confirmed that Plaintiffs purchased, and were entitled to obtain, seats with a "window." Notwithstanding that United knew that Plaintiffs' chosen seats were actually next to a blank wall, it proceeded to enter contracts that promised windows, as memorialized in Plaintiffs' ticket records, and accepted extra consideration for them. By selling "window" seats only to provide windowless ones, United breached its contracts with Plaintiffs and the putative class members, who are entitled to damages for United's misconduct.

2.      The majority of planes in United's fleet have one or more exterior-row seats that are adjacent to a blank wall, or have severely misaligned windows that are not reasonably usable ("**Windowless Window Seat(s)**"). These seats exist for various reasons unique to each plane's design. For instance, certain models of United's Boeing 737 and Airbus A321 aircraft have air conditioning ducts that run through a side panel and prevent the installation of windows in certain rows.

3.      For many years, United has knowingly and routinely sold Windowless Window Seats to passengers while representing that the seats have a window. United operates hundreds of these aircraft, which each make several flights every day. As a result, during the class period, United has likely sold over a million Windowless Window Seats. For example, seat 11A in United Boeing 737-900 planes is a Windowless Window Seat, yet United specifically informed passengers during the booking process that seat 11A has a "window," as shown in the screenshots below.

FIRST AMENDED CLASS ACTION COMPLAINT



4.    When passengers book an airplane seat adjacent to the wall, they expect it to have a window. United gives passengers no reason to doubt that expectation, but has long confirmed the same, and entered contracts with passengers that promise the same. United's website and passenger interfaces exclusively refer to "window," "middle," and "aisle" seats. Until after this litigation was filed, United maintained pre-booking and post-booking electronic seat selection interfaces that described *every* wall-adjacent seat as having a "window"—including for Windowless Window Seats. Moreover, United even issued tickets to every passenger who purchased Windowless Window Seats that prominently displayed the phrase "Window Seat," which confirmed United's contractual obligation, while also inducing passengers to abstain from changing their seats prior to boarding.

FIRST AMENDED CLASS ACTION COMPLAINT

5.      A large proportion of passengers are willing to pay extra for windows. Many passengers have a fear of flying or experience anxiety, claustrophobia, or motion sickness, and windows provide greater comfort in an otherwise distressing environment. Parents purchase them with the hope they will captivate or distract antsy children. For many others, it is a special experience to see the world from 30,000 feet, or to watch a descent into SFO, LGA, or O'Hare. Whatever the motivation for buying a window, had Plaintiffs and the putative class members known that they were buying Windowless Window Seats, they would not have selected them at all, much less paid extra for them.

6.      United's practice is deliberate. It has long been on notice of passenger complaints that this practice is misleading and unfair, but United has deliberately continued it for many years. United has received countless complaints from passengers who experienced disappointment, anxiety, claustrophobia, dizziness, and severe distress due to their unwitting purchase of a Windowless Window Seat "upgrade." In response to such complaints, United's own customer service representatives have referred to the practice as "misleading." In 2017, in response to a tweet by a dissatisfied passenger, United tacitly admitted it sells Windowless Window Seats as providing a window by responding, "Sorry," and misleadingly claiming that "We never guaranteed you will get a window." In response to a more recent complaint, United admitted that "[w]hile some seats may be labeled as 'window' based on the aircraft layout, there are instances where the actual window placement doesn't fully align."

7.      United's booking software has long had the capacity to affirmatively disclose Windowless Window Seats to passengers. Several of United's competitors, such as American Airlines and Alaska Airlines, use the same software features to specifically alert passengers to Windowless Window Seats. By contrast, United misleadingly sells Windowless Window Seats as having a window and accepts substantial premiums for them, only to breach its contractual promises and disappoint

FIRST AMENDED CLASS ACTION COMPLAINT

unwitting passengers when they arrive at their seats. Tellingly, after this lawsuit was filed, United changed its practices, in part, by replacing its seat map's former descriptor "Window" with "No Window" for certain (but not all) of its Windowless Window Seats.

8.      In short, United has routinely and systematically entered contracts to provide passengers with "window" seats in exchange for additional consideration, only to breach its obligations upon providing Windowless Window Seats. Through this action, Plaintiffs, on behalf of themselves and the class they seek to represent, seek compensatory damages for United's serial wrongdoing.

## PARTY BACKGROUND AND EXPERIENCE

9.      Plaintiff Marc Brenman is a resident of San Francisco, California. Brenman is a lifelong civil servant, who served as a Senior Policy Advisor for Civil Rights at the United States Department of Transportation and the Executive Director of the Washington State Human Rights Commission. He is a professor and scholar, who has written numerous books on public participation, the first amendment, and antisemitism. He regularly purchases flights between Washington D.C. and San Francisco. He routinely purchases a window seat so that he can watch the view as he crosses the country. He often uses benefits conferred from annual fees he pays for his United credit card to select such seats. Sometimes, he cannot use such credit card benefits to select the seat of his choice. In those cases, he pays more to select the window seat of his choice. On at least one occasion in the past year, Brenman purchased a window seat, only to discover that his "window" seat did not have a window at all. Brenman paid extra money or utilized United credit card benefits to purchase that window seat because United represented that the seat had a "window." Brenman provided United with notice of his complaint and they refunded him 7,500 miles, which is insufficient to compensate him for the extra consideration he remitted to buy a window.

10.     Plaintiff Robert Monroe is a resident of Honolulu, Hawaii. Monroe is a United States Army veteran who achieved the Chief Warrant Officer 4 rank. He served this country through multiple tours of duty in Afghanistan. On his last tour of duty during Operation Enduring Freedom, he suffered a debilitating injury to his left ulna, resulting in complex regional pain, hypersensitivity, nerve damage, and long-term disabilities. As a result of the injury, he (or his wife on his behalf) books a seat on the left window-side of the plane so that he can rest his arm on the windowsill, where he is most comfortable. In 2025, he purchased a round-trip flight between Honolulu, Hawaii and Hartford, Connecticut. He asked his wife to book him a window seat, which she did through the United website, using a credit card that Monroe jointly holds and pays for. Monroe confirmed that the seat was described as a "window" during the booking process, and the word "window" was printed on Monroe's ticket. He paid extra for that "window" seat. Nevertheless, the seat Monroe purchased was a Windowless Window Seat. As a result, Monroe experienced significant pain and discomfort because he could not position his elbow on the windowsill he believed he purchased. He complained on numerous occasions to a flight attendant, who refused to take any action or move him. The flight attendant told him to "look out someone else's window" if he wanted a window. Monroe provided United with notice of his complaint, but they refused to refund any of the fees he paid to buy a seat with a window. Instead, United gave Monroe 5,000 airline miles.

11.     Plaintiff Sean Minyard is a resident of Marin County, California. In 2025, he purchased a flight from SFO to Kona International Airport in Hawaii. He paid an extra fee to upgrade from Basic Economy to Regular Economy so that he could select his seat. He selected a window seat because he suffers from claustrophobia on flights. He also wanted to see the aerial view of the Big Island of Hawaii as he descended, which his friends described to him as "stunning" from an airplane. Due to aircraft changes, however, Minyard's seat was moved from a window seat to a non-window seat. As a result, he paid an additional $52.99 to move to a preferred section of the plane with a

window. United represented to Minyard that his seat was a "window" seat. It was described as a window seat in the seat selection process. And Minyard's ticket states that the seat was a "window seat" as shown in the below screenshot.



12.    Nevertheless, unbeknownst to Minyard, his seat was a Windowless Window Seat, as shown in the below picture Minyard took of his alleged "Window" seat. As a result, Minyard suffered from claustrophobia throughout his flight and he was unable to watch the once-in-a-lifetime descent alongside the nation's largest volcano.



FIRST AMENDED CLASS ACTION COMPLAINT

13.     Minyard complained to United, and they refunded his $52.99 preferred seat fee, but refused to refund his seat selection upgrade fee from Basic Economy to regular economy, which he also needed to pay to unwittingly select his Windowless Window Seat.

14.     Plaintiff Cindy Pawlowski is a resident of Bluff City, Tennessee. In 2023 and 2024, she purchased and flew on several flights on United between Syracuse, New York, and Phoenix, Arizona, with stops in Chicago, Illinois. She purchased seats 21A and 21B, 31A, and 31B, and 29F, and 29E for herself and her husband on those flights, in part, using benefits from her United credit card. She purchased those seats because the A and F seats were labeled with the word "window" during the seat selection process and she specifically wanted to sit in the window seat and see the Phoenix skyline as she landed and took off. She paid extra to choose those window seats. Upon information and belief, her ticket, which she can no longer access, included the phrase "Window Seat" to describe her or her husband's seat. Nevertheless, on two of those flights, her window seats were actually Windowless Window Seats. She was disappointed and complained to United, while demanding a refund. In response, a United representative told her "I understand how disappointing it can be to not sit in the seat you requested"—even though she did, in fact, obtain the seat she selected—but United did not issue any refund.

15.     Plaintiff Aviva Copaken is a resident of Los Angeles. Over the past year or more, she purchased several United flights for which she paid extra to obtain seats with a "window." Copaken prefers a window seat because she experiences claustrophobia on flights and enjoys a view while looking out the window of the airplane. On multiple flights, she was disappointed to discover that she had been led to purchase Windowless Window Seats, for which she paid United additional upgrade fees between $45.99 and $169.99. Copaken demanded refunds from United for her experiences with Windowless Window Seats, but only obtained partial refunds for certain flights.

16.     Defendant United is a major commercial airline headquartered in Chicago, Illinois. United is a wholly owned subsidiary of United Airlines Holdings, Inc., a publicly traded company listed on the Nasdaq Stock Market (ticker symbol: UAL). United engages in substantial activities in San Francisco, including by maintaining the San Francisco Airport as one of its "hubs" for significant operations and travel. United operates one of the largest airline networks in the world, with more than 800 mainline and regional aircraft serving hundreds of destinations across six continents. United operates at least 4,500 flights per day and transports many millions of passengers annually.

## JURISDICTION AND VENUE

17.     <u>Divisional Assignment</u>: In accordance with Civil L.R. 3-2(c) and 3-5(b), this matter should be assigned to the San Francisco division because Plaintiffs Marc Brenman is a resident of San Francisco, United engaged in substantial activities giving rise to the complaint in San Francisco, and several plaintiffs took flights at issue in this case from San Francisco's International Airport, SFO, where United engages in substantial operations.

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than United, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19.     This Court has personal jurisdiction over United because it conducts substantial business in this District, and engaged in the conduct at issue herein from and within this District, including by advertising and selling airline tickets to certain Plaintiffs and passengers in this District, and operating aircraft that depart from and arrive in this District.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this District is where a substantial part of the acts, omissions, and events giving rise to certain Plaintiffs' claims occurred.

## FACTUAL ALLEGATIONS

**A.    UNITED CHARGES PASSENGERS ADDITIONAL FEES TO ENSURE THEY OBTAIN SEATS WITH A WINDOW**

**21.**    Around 2017, United began charging extra fees for airfare services, such as seat selections, that were traditionally included in the standard cost of a ticket. At that time, United introduced "Basic Economy" fares, which prohibit passengers from selecting a seat assignment in advance unless they pay extra. Basic Economy passengers are randomly assigned a seat—and often a less desirable one—after the passenger has concluded his or her check-in on the day of travel.

**22.**    As a result, United passengers wishing to select *any* seat must first pay an upgrade fee from the Basic Economy fare to the Economy fare. The additional fee is often significant. For example, while the fee to upgrade from Basic Economy to Economy (and thus select any seat) starts at just $15 on small regional flights ($30 for a round trip), it can reach up to $200 for a trip to Europe. Passengers who upgrade to Economy may select from a small selection of seats in the back of the Economy cabin for no additional cost.

**23.**    On top of the fees to upgrade to Economy, United also charges passengers to select "preferred" and "economy plus" seats, which United indicates are more desirable than the "standard" Economy seats. Once again, those fees can be hundreds of dollars depending on the aircraft, route, and demand, on top of the upgrade from Basic Economy. The seat selection fees vary based on the seat's perceived desirability, with "window" and "aisle" seats generally priced higher than middle seats. In addition, United charges hundreds—sometimes thousands of dollars—for seats in premium cabins.

**24.**    These additional fees to select a particular seat are charged in addition to the base fare, taxes, and other fees. United collects these upgrade fees as separate line items at the time of booking, and presents them as necessary for passengers to choose their seat locations in advance. Furthermore,

FIRST AMENDED CLASS ACTION COMPLAINT

after a non-Basic Economy passenger has booked travel, they can enter standalone transactions with United to similarly upgrade or change their seat selection.

25.     United generates significant fees from these seat selection fees. A congressional investigation of "junk fees" charged by airlines, including United, found that airlines, including United "have generated billions of dollars in revenue from ancillary fees" and that such fees "have become vital stream[s] of revenue for the airlines." According to the Senate report, United alone collected $1.3 billion in revenue from seat fees in 2023.

26.     United does not just collect these fees in cash. United also uses its loyalty program, known as the United Mileage Plus Program, to attract repeat passengers by offering rewards and benefits in the form of points or miles. Those points can be redeemed for benefits, including the ability to choose seats or upgrade to a higher class. Some United Mileage Plus members may be able to select seats for free because they have expended significant sums of money in order to fly with United.

27.     United also collects seat selection fees through its co-branded credit cards. In 2009, United launched its first airline branded credit card with JP Morgan Chase. United passengers pay significant annual fees ranging from $150 for the United Explorer card to $695 for the United Club card in order to obtain the benefits from those cards, including the ability to select seats without paying certain of (but not all) of United's seat selection fees. United's co-branded card with JP Morgan is a significant source of revenue for United. United reported that its co-branded card agreement was the main driver behind its "other operating revenue" increasing by $424 million from 2022 to 2023, an increase of 15.4%.

28.     United also routinely charges a premium for "window" seats as compared to middle seats. In short, of its own volition, United undertook to create a seat selection fee for seats with a window, set the amount of the fee, and required its passengers to pay the fee. Upon acceptance of the

seat selection fee for "window" seats, United incurred an obligation to provide a seat with an actual window.

### B.    A LARGE PROPORTION OF UNITED PASSENGERS ROUTINELY PAY EXTRA FOR WINDOW SEATS

29.    Both during and after the flight booking process, United represents to passengers that its planes have three horizontal seat types, irrespective of the class: window, middle, and aisle seats.

30.    Passengers often have strong preferences against middle seats, and strong preferences between windows and aisles. For example, a 2013 *Harris Interactive* study found that the obtainment of a window or aisle seat is far and away the most important airline amenity for American flyers.

31.    Of the large proportion of airline passengers who pay to select seats, a strong majority prefer window seats. For instance, per a recent study conducted by the popular travel website *Upgraded Points*, two-thirds of passengers prefer window seats, and eight of the top ten seats that passengers most desire on a standard plane configuration have a window.

32.    Windows entail obvious benefits for airline passengers. Simply, it is a stunning experience to watch the world go by from 30,000 feet. For even the most jaded frequent flyer, watching a descent into a treasured place or exotic new destination can trigger visceral emotions, or build core memories of a trip that are well worth the upgrade fee.

33.    Windows also provide benefits that are less obvious, but important, for several subsets of passengers. For instance:

- Numerous passengers have conditions like generalized anxiety disorder or PTSD, and many others experience claustrophobia in confined spaces. Windows are often extremely important to such passengers, as they feel that the ability to look outside alleviates the often serious distress that may be triggered by confined environments, and mitigates against the prospect that they will experience panic attacks or other adverse effects.

- Passengers who experience motion sickness buy seats with windows because they find that looking outside at fixed positions mitigates their symptoms.

- Many passengers who have a fear of flying purchase seats with windows because the ability to see outside gives them a greater sense of knowledge about, or "control" over, their flights.

- Windows can captivate, distract, or calm antsy children. Indeed, United publishes marketing materials that advise parents to buy children window seats.

- Passengers with seasonal affective disorder or depressive conditions buy seats with windows to get a burst of sunlight that is otherwise unavailable or unpleasant during certain seasons.

34.    Whatever the motivation, wide swaths of airline passengers intentionally purchase seats for the purpose of obtaining a window.

**C.    THE MAJORITY OF UNITED'S PLANES HAVE WINDOWLESS WINDOW SEATS**

35.    United Airlines operates a fleet of over 1,000 aircraft, including hundreds of Boeing 737-series and Airbus A321-series planes serving domestic and international routes. United is one of the largest operators of Boeing 737s globally, with around 500 737s in its fleet as of mid-2025.

36.    Most of these planes, as well as others in United's fleet, have at least one Windowless Window Seat. Some of them have four such seats. One of United's competitors, Alaska Airlines, explains on its website that some Windowless Window Seats occur at "the spot where Boeing places the air conditioning riser ducts from the belly" and the "vertical ducts [] located behind the passenger compartment sidewall panels … prevent the installation of a window…."

37.    Until this lawsuit, United did not disclose where any of its Windowless Window Seats were located on its flights, and made it impossible for passengers to determine that information, including because the Windowless Window Seats on a particular aircraft vary. For example, on some

Boeing 737-900s, the Windowless Window Seat is 11A, while on others, it is 10A or 12A. On other United aircraft, the Windowless Window Seat, like Minyard's, is 29A. On others, it is 11F, 29F, 8A, or others.

38.    The Windowless Seat generally looks like this:



39.    Upon information and belief, the following models of planes in United's fleet have Windowless Window Seats: Airbus A319, Airbus A320, Airbus A321, Airbus A330-300, Boeing 717-200, Boeing 737-700, Boeing 737-800, Boeing 737-900, Boeing 757-200, Boeing 757-300, Boeing 767-300ER, Boeing 767-300ER, Boeing 767-400ER, Boeing 777-200ER/LR, Boeing 787-10, Boeing 787-8, Boeing 787-9, Bombardier CRJ-700, Bombardier CRJ-900, Embraer EMB-120, Embraer EMB 170, and Embraer EMB-175.

40.    Windowless Window Seats are often found in United's Economy Plus Seats, in the preferred seats in the economy cabin, and in the back of the economy cabin. On certain models of United's planes, Windowless Window Seats are also found in United's premium class cabins.

**D.    UNITED SELLS WINDOWLESS WINDOW SEATS TO PASSENGERS WHILE PROMISING TO PROVIDE A WINDOW**

41.    Passengers can purchase tickets for United flights through the United mobile application ("**App**"), online via the United website, by calling United or visiting an airport ticketing counter, or through third-party ticketing agents.

42.     Regardless of the medium, all passengers who purchase Windowless Window Seats are expressly told, whether through the pre-booking reservation process or the pre-flight ticketing process, that their seat includes a "window."

43.     During the booking process on the App, for instance, the App explicitly identifies every Windowless Window Seat as having a "window." After selecting a flight itinerary and entering passenger information, the App prompts passengers to select seats for each flight segment. The seat map presented within the App visually distinguishes seat types—such as window, middle, and aisle—and assigns prices for seat selection accordingly.

44.     United's App labels seats as "window" or "aisle" through visual placement on the seat map and accompanying textual labels, but (until this litigation was filed) it did not provide any disclaimer or indication that certain seats labeled as "window" may not have a window. For example, a Boeing 737-800 has a Windowless Window Seat at seat 10A or 11A, depending on the configuration. Nevertheless, as shown in the screenshots below, the App affirmatively describes both as "Window" seats during the booking process, and charges between $44.99 and $159.99 for them.

 

FIRST AMENDED CLASS ACTION COMPLAINT

45.    On information and belief, United makes the same representations when passengers book flights through other mediums, such as through airport ticket windows, customer service telephone lines, and through third-party booking sites.

46.    Passengers who purchase airline tickets on United's website face similar issues. The website's booking interface includes a seating chart that indicates that a seat will have a window based on its proximity to the side of the aircraft. Passengers are led to believe by United, and by their previous experiences with Untied, that they are booking seats with a window, and are not made aware that they may be selecting Windowless Window Seats.

47.    Indeed, United's website leaves no room for doubt that Windowless Window Seat passengers have in fact purchased seats with an actual window. United posts detailed configurations of every aircraft model in its fleet on its website, but those webpages do not disclose Windowless Window Seats, and United otherwise does not publish information about aircraft configurations. Passengers looking for more detail on the website about United's "seat options" will find a webpage that suggests they use the App to make their seat selections, which states: "Go to the seat map in our app to tell us your seat preference at any time between booking and check-in. If your preferred seat is available, we'll assign it to you." United's marketing materials and other webpages similarly refer only to "window," "middle," and "aisle" seats, without disclosing the potential for Windowless Window Seats. Its "boarding process" webpage explains that "Group 3" is for "Economy Plus® or United Economy® travelers in window seats or exit row seats." Other pages on its website recommend, for example, that "Children in car seats should sit in a window seat," or suggest that "no matter how many miles you've logged," passengers should "paus[e] to look out the window and watch the world go by from high above."

48.    Whatever the medium, until this litigation was filed, at no point during the seat selection process did United provide an option to verify whether the selected "window" seat actually

includes a window, nor did it allow passengers to preview or confirm the physical configuration of the aircraft before completing the transaction. Instead, United simply sold Windowless Window Seats as if they were typical "window seats" with actual windows, and accepted premiums for them.

49.    Ultimately, in selecting a seat with a window and choosing to pay additional fees for it, passengers reasonably rely on United's representations during the booking process that when they purchase a "window" seat, the seat will include a physical window and its associated benefits. United necessarily leads passengers to conclude that the "window" seats they are buying will include a usable window. And after passengers unwittingly purchase Windowless Window Seats, they can review their tickets on United's booking interfaces or on their boarding passes and receive express confirmation that they did purchase a seat with a "window." Or they can receive the same "confirmation" when they call United's customer service agents, who, on information and belief, provide the same faulty information.

E.    **UNITED'S SALES PRACTICE FOR WINDOWLESS WINDOW SEATS IS INTENTIONAL**

50.    United deliberately sells Windowless Window Seats to passengers while promising that the seats have actual windows, as evidenced by the facts that United has long been on notice of passenger complaints about this practice, offers compensation to certain passengers who complain, and chose (until this litigation was filed) not to update its booking system to disclose the presence of Windowless Window Seats.

51.    For many years, travel bloggers and dissatisfied passengers have publicly posted their complaints about United's Windowless Window Seats. For example, on the popular social media website Reddit, the United page is chock full of complaints from passengers who felt duped into buying Windowless Window Seats. A few examples are reflected in the below screenshots.

r/unitedairlines · 2 yr. ago
marcilla3882
View from my windowless window seat

Video



r/unitedairlines · 2 mo. ago
Content-Teaching-835
Great view from the "window" seat

Image



Wife's window seat on the Mesa United Express 6062 flight from IND. Anyone else think this should be specifically mentioned on the app/website?

r/unitedairlines · 1 yr. ago
spidermonkey2947

## 11A on 737 Max is not a window seat

Discussion

There is no window on this seat, just a wall. Super squeezed in my opinion the worst non middle seat on the plane. Rows 12A and 12F are close contenders.

r/unitedairlines · 2 yr. ago
darkeraqua    MileagePlus Silver

## Row 11 on the MAX... messed up twice!

Discussion

There should be a warning there's no window for 11A. Two flights in a row I booked the windowless seat as someone who loves looking out the window. 🥲



cant tell you
@trashmoneyyy · Follow

Thanks @united! I paid for upgrade for a window seat, and THERE. IS. NO. WINDOW! #10F #wheresmywindow

9:35 AM · Mar 21, 2017

FIRST AMENDED CLASS ACTION COMPLAINT

52.     United representatives, moreover, acknowledge in communications with dissatisfied passengers that its practice of selling Windowless Window Seats is a "misrepresentation." For example, in response to one putative class member's complaint to United and demand for a refund, on August 25, 2022, United stated:

> [W]e sincerely apologize for the inconvenience caused by the misrepresentation of seat 11A as a window seat. We understand how important seating preferences are, especially when traveling with family. As requested, we have processed a full refund of the $159.99 upgrade fee as a goodwill gesture…We recognize the importance of transparency in our booking system. Your feedback regarding windowless seats has been noted, and we are actively evaluating enhancements to our seat selection interface to better inform passengers during booking.

53.     Moreover, United's provision of refunds or compensation to Windowless Window Seat passengers also tacitly confirms United has contractual obligations to provide a window, as detailed below. United, however, also regularly and inconsistently denies refund requests, and frequently does so on the irrelevant basis that United does not guarantee seat selections in its terms and conditions.

54.     While United has affirmatively represented to prospective passengers that its Windowless Window Seats have a "window," several of its competitors disclose that their Windowless Window Seats do not. For example, both American Airlines and Alaska Airlines also operate Boeing 737-800 aircraft that have Windowless Window Seats. However, when a passenger attempts to purchase those seats, both American Airlines and Alaska Airlines disclose that the seat has "no window view," as shown in the screenshots below (with emphasis).



55.    American Airlines and Alaska Airlines are not alone. For instance, Ryanair, a large low-cost carrier that primarily operates in Europe, also alerts passengers about the nature of its Windowless Seats. As a result, and in recognition that the Windowless Seats are less desirable, Ryanair charges less for them.

### F. UNITED ENTERS EXPRESS CONTRACTS THAT REQUIRE IT TO PROVIDE THE PROMISED "WINDOW" SEAT

56. United's practice is not merely "misleading," but results in United's systemic breach of its express contracts with passengers who purchase Windowless Window Seats.

57. The express contracts between United and its passengers are formed when United provides confirmation that passengers successfully completed the booking process. The terms that become part of those contracts appear on the "checkout" pages of United's electronic booking interfaces, which itemize the prices for the selected itinerary, identify any purchased add-ons, and list passenger seat assignments along with a seat map popup link. Passengers who select an exterior-row seat during checkout reasonably understand they are purchasing a seat with a "window" based on, among other things, United's pre-booking representations and passengers' prior experiences with United. Indeed, at the checkout stage, United's App explicitly confirms that passengers who have selected a Windowless Window Seat are buying a seat with a "window."

58. United uses that same checkout information to generate post-purchase electronic ticket records, which United concedes are enforceable components of its passenger contracts, as detailed below. Those electronic ticket records contain terms memorializing United's promise to provide a "window." That is confirmed by the facts that: (i) the portions of United's electronic ticket records that it makes accessible to passengers post-purchase include express confirmation that Windowless Window Seat passengers purchased seats with a "window," and (ii) United uses its electronic ticket records to generate boarding passes that also expressly confirm Windowless Window Seat passengers obtained a "window" or "window seat," as shown in the below pictures:

1





**59.**    United's own terms and conditions for its passenger contracts confirm that United undertakes contractual obligations to provide seats with a "window." When passengers purchase travel, United claims that the resulting contracts include "all terms and conditions associated with any additional offer/product purchases made, United's dangerous good policy, and the terms and

conditions of United's Contract of Carriage."[1] The Contract of Carriage states that it is not a complete contract, but provides that the parties' overall contract also includes "any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt."

60.    The Contract of Carriage defines "Ticket" as "the record of agreement, including electronic tickets, e.g., 'United Electronic Tickets' or 'eTickets." It does not define "ticket jacket," but based on the plain meaning of that term, the phrase "on or in" the "ticket jacket" is necessarily inclusive of, at least, the terms listed on United's boarding passes. The Contract of Carriage also defines "eTicket" as:

> [T]he record of the ticket agreement maintained and processed within the carrier's electronic reservation system. A receipt is provided to the purchaser of the ticket that contains a reference for retrieving the record within the carrier's reservation system and summary of the ticket information."

61.    Even using United's unspecific representations of what its "ticket, ticket jacket or eticket receipt" are and what they encompass, those items confirm that United undertook contractual obligations to provide a "window" to Windowless Window Seat passengers. This is so in multiple ways.

62.    First, the "ticket" necessarily contains terms confirming the purchase of a "window." As provided in the Contract of Carriage, passengers can review the terms of the "electronic ticket" by retrieving the ticket number listed in the "receipt" United sends upon flight confirmation, and by entering that number into United's reservation system on the App. Upon doing so, the "Ticket" page to which passengers are directed is a dynamic page substantially similar to United's booking "checkout" page. That page provides Windowless Window Seat passengers with express confirmation

---

[1]    United's language and attempts to incorporate these extraneous documents are, at best, confusing, and do not readily provide passengers with all terms of the resultant agreement. United does not provide links to the "additional offer/product" terms, and leaves passengers without means to ascertain the "terms and conditions associated with any additional offer/product" or the "dangerous good policy." United also does not provide a link to the Contract of Carriage, but instead links passengers to a page that purports to summarize the Contract of Carriage and includes only a few terms.

that their assigned seats have a "window." Similarly, United issues boarding passes to all Windowless Window Seat passengers that expressly confirm they purchased a seat with a "window." Consistent with United's unspecific definitions of "ticket" in the Contract of Carriage, the terms found in United's post-booking electronic reservation system and boarding passes must either: (i) constitute components of the contractual "ticket, ticket jacket, or eticket,"[2] or (ii) be generated from, and reflect, the terms found in United's internal record of the "ticket, ticket jacket or eticket."

63.    Second, per the Contract of Carriage, the ticket contains the "record of agreement" maintained with United's "electronic reservation system," which also contains terms confirming the purchase of, and entitlement to, seats with a "window." The record of agreement must reflect and incorporate the representations United made at the time of booking, including the representations made through its "electronic reservation system" that the Windowless Window Seats have a "window." Those representations reflect United's "offer," which Windowless Window Seat passengers accepted by purchasing the seats and itineraries United described. There is no other information that the "record of agreement" could refer to. Passengers would not have accepted United's "offer" and paid consideration for Windowless Window Seats but for United's undertaking. And the contents of the "record of agreement" are confirmed by the fact that United's boarding passes for Windowless Window Seat passengers state that seats with a "window" were purchased.

64.    Consequently, United's passenger contracts contain terms reflecting that passengers who booked Windowless Window Seats did book, and were entitled to, seats with a "window." The Contract of Carriage recognizes that those terms are enforceable by passengers. And no provision in

---

[2] The "window" term on United's boarding passes is an enforceable component of passenger contracts for the additional reasons that: (i) the Contract of Carriage indicates that the boarding passes are the "tickets," or are part of the tickets, including because it provides that: "No person will be entitled to transportation except upon presentation of a valid Ticket"; and (ii) the boarding passes are encompassed by the Contract of Carriage's reference to terms appearing "in" the "ticket jacket."

the Contract of Carriage covers circumstances where a passenger uses her assigned seat, but is not provided with the window that United promised was associated with that seat.

65.    United thus contracted to provide windows to purchasers of Windowless Window Seats in exchange for valuable consideration. United breached those contractual promises when it failed to provide a window, and Plaintiffs and the putative class members are entitled to damages in amounts to be determined at trial.

### G.    UNITED CHANGES ITS PRACTICE IN RESPONSE TO THIS LITIGATION

66.    This lawsuit ignited a firestorm of media and criticism surrounding United's practices in selling Windowless Window Seats. Virtually every mainstream news outlet that covers the United States published critical coverage of United's practice, including the New York Times, Washington Post, NBC, CBS, ABC, Reuters, the Associated Press, the New York Post, CNN, the BBC, and the Guardian. George Stephanopoulos criticized United's practice on Good Morning America. Public message boards, TikTok, and Instagram were inundated with tens of thousands of critical comments. Several travel sites and bloggers published similar critiques. As *Frommers' Travel Guide* stated, for example:

> As longtime flyers ourselves, we think it should be reasonable to expect a window if you pay for a window. If we weren't being charged extra fees by the airlines for window seating—and for many decades we weren't—we might be more flexible on that expectation. But now that [] corporations have chosen to extract funds from us for the privilege of sitting in so-named window seats, airlines have created an expectation of the delivery of a specific type of seating.

67.    Following this suit and the public backlash, United apparently changed its practices and now alerts prospective passengers to the location of certain (but not all) Windowless Window Seats. For example, as shown in the below screenshot from the App taken after this litigation was filed, United alerts customers that there is "No window" at many Windowless Window Seats.



68.     After United made this change to its electronic reservation system, a United spokesperson stated to a reporter, dubiously, that the change was supposedly "part of our regular review of united.com and the United App to enhance the customer experience."

## CLASS ALLEGATIONS

69.     Plaintiffs incorporate the above allegations as if fully set forth below.

70.     Plaintiffs bring this class action individually and on behalf of all members of the following classes of similarly situated persons pursuant to Federal Rule of Civil Procedure 23(b)(3), and 23(c)(4):

### Nationwide Class

All persons and entities in the United States that purchased airfare from United and remitted additional consideration to obtain a window seat, but received a Windowless Window Seat ("**Nationwide Class Members**").

### California Subclass

All persons and entities in California or who traveled to or through

California that purchased airfare from United and remitted additional consideration to obtain a window seat but received a Windowless Window Seat ("**California Subclass Members**") (together with the Nationwide Class Members, "**Class Members**").

71. Excluded from the classes are United and its subsidiaries, affiliates, officers, directors, and any entity in which United has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

72. Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

73. <u>Numerosity:</u> The Class Members are so numerous that joinder of all Class Members in a single proceeding would be impracticable. While the exact number of Class Members is unknown at this time and can only be determined by appropriate discovery, Plaintiffs are informed and believe that the classes are likely to include thousands of members. As set forth above, United has likely sold more than 1 million Windowless Seats during the class period. Therefore, the classes are sufficiently numerous that joinder of all members in a single action is impracticable under Rule 23(a)(a), and the resolution of claims through the procedure of a class action will benefit the parties and the Court. Adequate notice can be given to Class Members directly using information maintained by United.

74. <u>Commonality and Predominance:</u> Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individuals. Such common questions of law or fact include, among other things, whether United breached a self-imposed contractual obligation or enforceable promise to provide Class Members with a seat with a "window" when it provided them with Windowless Window Seats. United engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

75.    Typicality: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs, like all proposed Class Members, selected window seats on United flights, but were placed in Windowless Window Seats. Plaintiffs and Class Members were injured by the same wrongful acts, practices, and omissions committed by United, as described above. Plaintiffs' claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

76.    Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs are adequate representatives of the classes and have no interests adverse to, or in conflict with, the classes they seek to represent. Plaintiffs have retained counsel with substantial experience and success in complex civil litigation and class actions.

77.    Furthermore, Plaintiffs have not waived the ability to seek relief against United on a class basis. United's Contract of Carriage includes a provision that states: "By purchasing a ticket or accepting transportation under this Contract of Carriage, Passenger agrees that any lawsuit brought by Passenger against UA and Carriers doing business as United Express will be brought only in Passenger's individual capacity, and may not be brought in or asserted as part of a class action proceeding." Contract of Carriage Rule 3(P) ("**COC Class Waiver**"). The COC Class Waiver, however, is unenforceable. Initially, the provision appears in a contract of adhesion presented to passengers on a take-it-or-leave-it basis, with no opportunity for negotiation, meaningful consent, or ability to opt out. United does not require passengers to confirm that they have read the COC Class Waiver; instead, United does not even fairly alert passengers to that provision. It is buried deep in United's contract of adhesion under sub-part "P" of Rule 3, which is inappositely titled "Application of Contract." Moreover, when passengers purchase travel from United, they are not even presented with the Contract of Carriage, but are given a hyperlink to a "summary" of the Contract of Carriage that never references nor even alludes to the COC Class Waiver. The provision is also not included nor referenced in any materials United sends to passengers upon or after their purchases. In substance, the

FIRST AMENDED CLASS ACTION COMPLAINT

waiver is one-sided and oppressive. It prevents individual passengers from pursuing claims that are economically impractical to litigate alone, and it effectively insulates United from meaningful liability for its flagrant and systemic misconduct. Such a provision defeats the remedial purpose of Rule 23 and lacks legitimate commercial justification.

78.    Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

## COUNT I: BREACH OF CONTRACT ("TICKET BREACH")

79.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

80.    Plaintiffs and Class Members entered contracts with United that required United to provide seats that had a "window," and required Plaintiffs and Class Members to remit consideration to obtain those seats.

81.    When Plaintiffs and Class Members purchased travel from United, they entered contracts that include and reflect the details selected on United's flight booking interface. United claims that these contracts also include "all terms and conditions associated with any additional offer/product purchases made, United's dangerous good policy, and the terms and conditions of United's Contract of Carriage." The Contract of Carriage confirms the parties' contracts also include "any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt." It defines "Ticket" as "the record of agreement, including electronic tickets, e.g., 'United Electronic Tickets' or 'eTickets,'" and defines "eTicket," in turn, as "the record of the ticket agreement maintained and processed within the carrier's electronic reservation system."

82.    The "ticket, ticket jacket or eticket" necessarily contain terms confirming that Plaintiffs and Class Members purchased, and were entitled to, seats with a "window." This is shown

by the fact that, post-purchase and pre-flight, United's electronic reservation system and boarding passes expressly confirm that Windowless Window Seat passengers have purchased a seat with a "window." The terms found in United's post-booking electronic reservation system and boarding passes must either: (i) constitute components of the contractual "ticket, ticket jacket, or eticket," or (ii) be generated from, and reflect, the terms found in United's internal record of the "ticket, ticket jacket or eticket." Plaintiffs and Class Members performed all relevant obligations owed to United under their contracts, including by paying United the additional consideration it solicited and retained in exchange for the selected seats.

83.    United breached its contractual obligations to Plaintiffs and Class Members by providing them with Windowless Window Seats.

84.    As a direct and proximate result of United's breaches, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## COUNT II: BREACH OF CONTRACT ("RECORD OF AGREEMENT BREACH")

85.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

86.    Plaintiffs and Class Members entered contracts with United that required United to provide seats that had a "window," and required Plaintiffs and Class Members to remit consideration to obtain those seats.

87.    When Plaintiffs and Class Members purchased travel from United, they entered contracts that include and reflect the details selected on United's flight booking interface. United claims that these contracts also include "all terms and conditions associated with any additional offer/product purchases made, United's dangerous good policy, and the terms and conditions of United's Contract of Carriage." The Contract of Carriage confirms the parties' contracts also include "any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt." It defines

"Ticket" as "the record of agreement, including electronic tickets, e.g., 'United Electronic Tickets' or 'eTickets," and defines "eTicket," in turn, as "the record of the ticket agreement maintained and processed within the carrier's electronic reservation system."

88.    The "record of agreement" necessarily contains terms confirming that Plaintiffs and Class Members purchased, and were entitled to, seats with a "window." Simply, the record of agreement must reflect and incorporate the representations United made at the time of booking through its "electronic reservation system," including that the Windowless Window Seats have a "window." Those representations reflect United's "offer," which Plaintiffs and Class Members accepted by purchasing the seats and itinerary that United described. There is no other information that the "record of agreement" could refer to. The contents of the record of agreement are further confirmed by the fact that United's post-booking and pre-flight reservation information and boarding passes for all Plaintiffs and Class Members expressly state that seats with a "window" were purchased.

89.    Plaintiffs and Class Members performed all relevant obligations owed to United under their contracts, including by paying United the additional consideration it solicited and retained in exchange for the selected seats.

90.    United breached its contractual obligations to Plaintiffs and Class Members by providing them with Windowless Window Seats.

91.    As a direct and proximate result of United's breaches, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## COUNT III: BREACH OF IMPLIED CONTRACT

### (ALTERNATIVE CLAIM)

92.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

93.     In the event the Court finds that United did not undertake express contractual commitments to provide Plaintiffs with actual windows at the seats they purchased, United is alternatively liable for undertaking an implied-in-fact contractual obligation, which was otherwise extraneous or subsequent to the underlying express contracts, to provide seats with a "window."

94.     When Plaintiffs and Class Members booked their flights, United purported to bind them to "all terms and conditions associated with any additional offer/product purchases made, United's dangerous good policy, and the terms and conditions of United's Contract of Carriage." None of those terms or conditions cover whether the seats Plaintiffs purchased included a window.

95.     As detailed above, during both the pre-purchase booking process and the post-purchase pre-flight ticketing process, United represented and confirmed that the particular seats Plaintiffs and Class Members purchased would have a "window." In so doing, United undertook an implied-in-fact contractual obligation to provide Plaintiffs and Class Members with a window at their respective seats.

96.     Plaintiffs and Class Members performed all relevant obligations owed to United, including by paying United the additional consideration it solicited and retained in exchange for the selected seats.

97.     United breached its contractual obligations to Plaintiffs and Class Members by providing them with Windowless Window Seats.

98.     As a direct and proximate result of United's breaches, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## **COUNT IV: PROMISSORY ESTOPPEL**

### **(ALTERNATIVE CLAIM)**

99.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

**100.** In the event the Court finds that United did not undertake contractual commitments to provide Plaintiffs with actual windows at their seats, United is alternatively liable for making promises, which were otherwise extraneous or subsequent to the underlying contracts, to provide seats with a "window."

**101.** United made unambiguous promises, both during the pre-purchase booking process and the post-purchase pre-flight ticketing process—including through United's issuance of changeable boarding passes within the day before flight—that the particular seats Plaintiffs and Class Members purchased would have a "window." United expected that Plaintiffs and Class Members would rely on those promises. And Plaintiffs and Class Members reasonably relied on United's promises to their detriment, including by: (1) expending additional consideration to obtain seats that they would not have originally purchased, and/or (2) abstaining from changing their seats post-purchase and before their flights. Plaintiffs and Class Members would not have undertaken either set of detrimental actions in the absence of United's false promises.

**102.** As a direct and proximate result of United's misconduct, Plaintiffs have suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all other Class Members, respectfully request that the Court enter judgment in their favor and against United as follows:

A. Certifying the classes as requested herein, designating Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel;

B. Awarding Plaintiffs and the Class Members all appropriate monetary relief, including compensatory damages in amounts to be determined at trial, or such other monetary remedies the Court deems are available and appropriate;

C.   Awarding Plaintiffs and the Class Members pre-judgment and post-judgment interest to the maximum extent allowable;

D.   Awarding Plaintiffs and the Class Members reasonable attorneys' fees, costs, and expenses, as allowable under Rule 23; and

E.   Awarding Plaintiffs and the Class Members such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

103.   Plaintiffs demand a trial by jury of all claims so triable.


Dated: October 15, 2025                    Respectfully Submitted,

                                           /s/ *Carter E. Greenbaum*

                                           Carter E. Greenbaum (SBN 344692)
                                           **GREENBAUM OLBRANTZ LLP**
                                           160 Newport Center Drive, Suite 110
                                           Newport Beach, CA 92660
                                           Tel: (332) 222-9119
                                           Email: carter@greenbaumolbrantz.com

                                           Casey Olbrantz (*pro hac vice*)
                                           **GREENBAUM OLBRANTZ LLP**
                                           244 Fifth Avenue, Suite C221
                                           New York, NY 10001
                                           Tel: (332) 222-9119
                                           Email: casey@greenbaumolbrantz.com

                                           *Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT