**RILEY SAFER HOLMES & CANCILA LLP**
SONDRA A. HEMERYCK (*pro hac vice*)
shemeryck@rshc-law.com
ELI LITOFF (*pro hac vice*)
elitoff@rshc-law.com
STEVEN E. VOGEL (*pro hac vice*)
svogel@rshc-law.com
1 S. Dearborn Street, Suite 2200
Chicago, IL 60603
Telephone:     (312) 471-8700
Facsimile:      (312) 471-8701
JEFFREY R. WILLIAMS (CSB No. 084156)
jwilliams@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone:     (415) 275-8550
Facsimile:      (415) 275-8551

*Attorneys for Defendant*
UNITED AIRLINES, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC BRENMAN, AVIVA COPAKEN, SEAN MINYARD, ROBERT MONROE, and CINDY PAWLOWSKI, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED AIRLINES, INC.,<br><br>        Defendant. | **Case No. 3:25-cv-06995-JD**<br><br>**DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE:  January 22, 2026**<br>**TIME:  10:00 a.m.**<br>**COURTROOM: 11**<br><br>Complaint Filed: August 19, 2025 |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.   PRELIMINARY STATEMENT AND ISSUES TO BE DECIDED ................................. 1

II.  SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ........................................... 2

    A.   Plaintiffs' Alleged Purchases ............................................................................... 2

    B.   Plaintiffs' Allegations Regarding United's Supposed "Promise" ......................... 2

    C.   United's Contract of Carriage ............................................................................... 3

III. LEGAL STANDARD ................................................................................................... 4

IV.  ARGUMENT ................................................................................................................ 5

    A.   The ADA Preempts Plaintiffs' Claims. ................................................................ 5

        1.   Plaintiffs' Claims Relate to United's Prices and Services. ......................... 6

        2.   The ADA Preempts the Claims Asserted in Counts I and II of the Complaint. ................................................................................................. 7

        3.   The ADA Preempts Plaintiffs' Other Claims (Counts III and IV). ........... 13

        4.   The ADA Preempts Plaintiffs' Request for Attorneys' Fees and Expenses. .................................................................................................. 13

    B.   Plaintiffs' Claims Fail on Their Merits. .............................................................. 14

        1.   Counts I and II Fail Because Plaintiffs Do Not Plausibly Allege That United Breached Any Contract with Them. ............................................... 14

        2.   Count III Fails Because the CoC Precludes Implied Agreements. ........... 14

        3.   Count IV Fails Because Plaintiffs Do Not Plausibly Allege the Elements of a Promissory Estoppel Claim and There Is a Valid Contract Between the Parties. ................................................................... 15

CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

C ASES

*Am. Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995) ................................................................................ 6, 7, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 5

*Bajra v. Delta Air Lines, Inc.*,
   No. 1:24-CV-3477-MHC, 2025 WL 1527076 (N.D. Ga. May 6, 2025) ................................ 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 4, 5

*Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*,
   688 F. Supp. 2d 940 (N.D. Cal. 2010) .................................................................. 15

*Doe I v. Google, LLC*,
   741 F. Supp. 3d 828 (N.D. Cal. 2024) ................................................................. 14

*Fernald v. Sw. Airlines Co.*,
   No. 11CV0453 AJB (POR), 2011 WL 13254382 (S.D. Cal. Sept. 28, 2011) ...................... 6, 7

*Horne v. Harley-Davidson, Inc.*,
   660 F. Supp. 2d 1152 (N.D. Cal. 2009) ................................................................ 15

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .......................................................................... 5

*Mend Health, Inc. v. Carbon Health Techs., Inc.*,
   588 F. Supp. 3d 1049 (C.D. Cal. 2022) ................................................................ 15

*MGIC Indem. Corp. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986) ........................................................................... 5

*Neft v. United Cont'l Holdings, Inc.*,
   299 F.Supp.3d 965 (N.D. Ill. 2018) .................................................................... 6

*Netbula, LLC v. BindView Dev. Corp.*,
   516 F. Supp. 2d 1137 (N.D. Cal. 2007) ............................................................ 10, 14

*Northwest, Inc. v. Ginsberg*,
   572 U.S. 273 (2014) ................................................................................ 5, 7, 13

*Onoh v. Nw. Airlines, Inc.*,
   613 F.3d 596 (5th Cir. 2010) ........................................................................... 6

*Quick Dispense, Inc. v. Vitality Food Serv., Inc.*,
   No. 8:23-cv-02322-FWS-ADS, 2025 WL 576589 (C.D. Cal. Feb. 5, 2025) ..................... 10, 14

*Scarlett v. Air Methods Corp.*,
    922 F.3d 1053 (10th Cir. 2019)................................................................................................ 13

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003).................................................................................................... 5

*Villarroel v. Recology, Inc.*,
    775 F. Supp. 3d 1050 (N.D. Cal. 2025) .................................................................................. 14

*Watson v. United Airlines, Inc.*,
    Civil 16-00400 LEK-KJM, 2017 WL 6060173 (D. Haw. 2017) ............................................ 6

*Weber v. USAirways, Inc.*,
    11 F. App'x 56 (4th Cir. 2001).................................................................................................. 7

*Witty v. Delta Air Lines, Inc.*,
    366 F.3d 380 (5th Cir. 2004)..................................................................................................... 7

**STATUTES**

49 U.S.C. § 40101(a)(6) ................................................................................................................ 5

49 U.S.C. § 40101(a)(12) .............................................................................................................. 5

49 U.S.C. § 41713(b)(1) ................................................................................................................ 5

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 4

Fed. R. Civ. P. 23 ........................................................................................................................ 13

Fed. R. Civ. P. 23(h) ................................................................................................................... 13

**OTHER AUTHORITIES**

*Black's Law Dictionary* (12th ed. 2024) .................................................................................. 9, 10

PLEASE TAKE NOTICE that on January 8, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant United Airlines, Inc. ("United"), will move to dismiss Plaintiffs' First Amended Class Action Complaint (ECF No. 24, hereafter "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs' Complaint should be dismissed with prejudice because Plaintiffs have not pleaded, and cannot plead, a claim on which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT AND ISSUES TO BE DECIDED

Plaintiffs Marc Brenman ("Brenman"), Aviva Copaken ("Copaken"), Sean Minyard ("Minyard"), Robert Monroe ("Monroe") and Cindy Pawlowski ("Pawlowski") (collectively, "Plaintiffs") allege that they purchased flights on United and "paid extra" or used "United credit card benefits" to purchase window seats. Compl. ¶¶ 9–11, 14–15. Plaintiffs further allege they were "disappointed" (*id.* ¶¶ 14–15) to discover that their seats on these flights "did not have a window at all" (*id.* ¶ 9). *See also id.* ¶¶ 10, 12 (similar). Based on these allegations, Plaintiffs purport to bring claims against United for Breach of Contract ("Ticket Breach") (Count I) and Breach of Contract ("Record of Agreement Breach") (Count II), as well as "alternative" claims for Breach of Implied Contract (Count III) and Promissory Estoppel (Count IV).

Plaintiffs' Complaint should be dismissed in its entirety and with prejudice because Plaintiffs have not pleaded, and cannot plead, a claim on which relief can be granted. Plaintiffs' claims are preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 40101, *et seq.* (the "ADA"), because they relate to United's prices and services, and do not seek merely to enforce a contractual obligation that United undertook. In addition, Plaintiffs' claims would fail on their merits even if they were not preempted. Counts I through III fail because Plaintiffs do not plausibly allege a contractual promise by United (either express or implied) that their seats would have an exterior window view. Count III also fails because there was an express agreement between United and the Plaintiffs—United's Contract of Carriage ("CoC")—that constituted "the conditions of

carriage" upon which United agreed to provide transportation to Plaintiffs.[1] The CoC also expressly states that "no covenants at law or in equity shall be implied or incorporated." Kelley Decl. Ex. 1, at 1. Finally, Count IV fails because Plaintiffs do not plausibly allege the elements of a promissory estoppel claim, and there is a valid contract (the CoC) that governs the subject matter.

## II.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

### A.    Plaintiffs' Alleged Purchases

Plaintiffs provide relatively few details regarding their own purchases of window seats that they claim did not have an exterior window view. Plaintiff Brenman alleges that, at some point in the past year, he "paid extra money or utilized United credit card benefits" to purchase a window seat "because United represented that the seat had a 'window.'" Compl. ¶ 9. Brenman does not allege *how* United purportedly represented that the seat had a "window," or whether he made the purchase through United's website or its mobile application ("App"). Plaintiff Monroe alleges that his wife "book[ed] him a window seat" through the United website, that the seat "was described as a 'window' during the booking process, and the word 'window' was printed on Monroe's ticket," and that he "paid extra" for that seat. *Id.* ¶ 10. Plaintiff Minyard alleges that, due to aircraft changes after his original booking, he paid $52.99 "to move to a preferred section of the plane with a window" and that his seat "was described as a window seat in the seat selection process." *Id.* ¶ 11. The Complaint also includes an image of a boarding pass for Minyard—mistakenly described as a "ticket"—that includes the words "window seat." *Id.* Plaintiff Pawlowski alleges that, in 2023 and 2024, she "paid extra" to purchase seats "on several flights" that "were labeled with the word 'window' during the seat selection process." *Id.* ¶ 14. Pawlowski also alleges upon information and belief that her ticket "included the phrase 'Window Seat' to describe her or her husband's seat." *Id.* Finally, Plaintiff Copaken alleges that she purchased "several" United flights for which she paid extra "to obtain seats with a 'window.'" *Id.* ¶ 15.

### B.    Plaintiffs' Allegations Regarding United's Supposed "Promise"

Plaintiffs allege that "all passengers who purchase Windowless Window Seats are

---

[1] Declaration of Noemi Kelley ("Kelley Decl.") Ex. 1, Rule 3.A. The Court may consider the CoC because it is central to Plaintiffs' claims and its authenticity is unquestioned. *See infra* at 5 and United's Request for Judicial Notice and Incorporation by Reference (ECF No. 32-1).

expressly told, whether through the pre-booking reservation process or the pre-flight ticketing process, that their seat includes" an exterior window view. *Id.* ¶ 42; *see also id.* ¶ 49 (alleging that passengers rely on "United's representations during the booking process that when they purchase a 'window' seat, the seat will include a physical window"). This supposed promise is allegedly communicated to passengers who book through United's App by a seat map that "visually distinguishes seat types—such as window, middle, and aisle—and assigns prices for seat selection accordingly." *Id.* ¶ 43. Plaintiffs further allege that the App "labels seats as 'window' or 'aisle' through visual placement on the seat map and accompanying textual cues." *Id.* ¶ 44. Plaintiffs similarly allege that the booking interface on United's website "includes a seating chart that indicates that a seat will have a window based on its proximity to the side of the aircraft." *Id.* ¶ 46. And Plaintiffs allege that the "promise to provide a 'window'" is memorialized by the electronic ticket record that United provides to passengers after purchase, and boarding passes that label the passenger's assigned seat as "window" or "window seat." *Id.* ¶¶ 57–58.

## C. United's Contract of Carriage

When Plaintiffs purchased their tickets, they agreed to be bound by the CoC. Kelley Decl. Ex. 1, at 1. The CoC states that "[t]hese rules constitute the conditions of carriage" upon which United agreed "to provide … Carriage" to Plaintiffs. *Id.*, Rule 3.A. Although Plaintiffs' Complaint repeatedly references the CoC (*see, e.g.*, Compl. ¶¶ 59–65, 77, 79–83, 86–90), they do not attach it to their Complaint. United therefore provides in support of its Motion a true and correct copy of the CoC that has been in effect since January 22, 2025. *See* Kelley Decl. ¶ 3 and Ex. 1.[2]

The CoC provides:

> Transportation of Passengers … provided by United … [is] subject to the following terms and conditions, in addition to any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt. To the extent there is a conflict between this Contract of Carriage and any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt, this Contract governs.

---

[2] The CoC states that "transportation is subject to the Contract of Carriage … in effect on the date on which the Ticket is issued." *Id.*, Ex. 1, Rule 3.E. The Complaint does not allege the specific dates of purchase by any Plaintiff, but the January 22, 2025 CoC likely applied to the purchases of Monroe and Minyard "[i]n 2025," and possibly to Brenman's purchase "in the past year." Compl. ¶¶ 9–11. United cannot determine the relevant CoC for Pawlowski's alleged purchases "in 2023 and 2024" or Copaken's alleged purchases "over the past year or more." *Id.* ¶¶ 14–15.

*Id.*, Ex. 1, at 1. The CoC also expressly states that "no covenants at law or in equity shall be implied or incorporated." *Id.*

The CoC does not contain any promise that seats in the window position of any aircraft will have exterior window vies. Rule 4.D of the CoC, which concerns seat assignments, states:

> Seat assignments, regardless of class of service, are not guaranteed and are subject to change without notice. UA reserves the right to reseat a Passenger for any reason, including but not limited to from a United First or Business class seat, United Polaris® seat, United® Premium Plus seat, Economy Plus seat, or from Preferred Seating for which the applicable fee, miles, or other compensation has been paid, and if a Passenger is improperly or erroneously upgraded to a different class of service. If a Passenger is removed from a United First or Business class seat, United Polaris® seat, United® Premium Plus seat, Economy Plus seat, or from Preferred Seating for which a fee, miles, or other compensation has been paid, and the Passenger is not re-accommodated in a seat of equal or greater value, or if a Passenger is downgraded from a class of service and is not re-accommodated in a seat in an equal or greater class of service for which a fee, miles, or other compensation has been paid, the Passenger may be eligible for a refund in accordance with Rule 27.

*Id.*, Rule 4.D. The relevant provision of Rule 27 states:

> If a Passenger is removed from a United® Premium Plus seat, Economy Plus seat, or from Preferred Seating for which a fee has been paid, and the Passenger is not re-accommodated in a seat of equal or greater value, or if a Passenger is downgraded from a class of service and is not re-accommodated in a seat in an equal or greater class of service for which a fee has been paid, the Passenger is eligible for a refund of this fee upon request.

*Id.*, Rule 27.C.5.

Lastly, Rule 24.I of the CoC addresses United's liability for any failure to provide any "amenity," for any reason. That Rule states, in relevant part, that United

> shall have no liability for, and shall owe no refund with respect to any failure to provide that amenity …. <u>EXCEPTION</u>: If a Passenger has paid for a specific … amenity … as a separate fee … and that … amenity is not provided, the Passenger is eligible for a refund of the amount paid if a refund request is made within 90 days of the date the fee was originally paid or the flight date, whichever is later.

*Id.*, Rule 24.I.

## III.    **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard

requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss, courts may consider not only the allegations in the complaint and documents attached thereto, but any matter subject to judicial notice. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). In addition, the incorporation-by-reference doctrine allows a court ruling on a motion to dismiss to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the pleading. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and citation omitted); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a document is incorporated by reference into a complaint if the plaintiff refers extensively to the document or it forms the basis of his claim). Here, United has asked the Court to take judicial notice of an official publication of the Federal Aviation Administration, and to consider under the incorporation-by-reference doctrine both United's CoC and its "boarding procedures" webpage. *See* ECF No. 32-1.

## IV.    ARGUMENT

### A.    The ADA Preempts Plaintiffs' Claims.

Congress enacted the ADA to promote "efficiency, innovation, and low prices" in the airline industry through "maximum reliance on competitive market forces and on actual and potential competition" rather than regulation. 49 U.S.C. § 40101(a)(6), (a)(12). To "prevent the states from undoing what the [ADA] was meant to accomplish," Congress included a broad preemption provision. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283 (2014). Under the ADA's preemption provision, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The ADA thus preempts state laws that are "related to"—*i.e.*, have "a connection with, or reference to"—an airline's prices, routes or services. *Ginsberg*, 572 U.S. at 280–84.

The Supreme Court has recognized only a single, narrow exception to the ADA's broad

preemption provision. Claims that relate to an airline's prices, routes or services escape preemption only in "routine" breach of contract actions that seek to enforce the terms of the parties' bargain, but nothing more:

> The ADA's preemption clause ... stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes ***confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement***.

*Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232–33 (1995) (emphasis added).

Merely styling a claim as one for breach-of-contract does not bring it within the *Wolens* exception. To the contrary, courts have repeatedly found so-called breach-of-contract claims preempted when they seek to impose obligations that exceed the scope of the parties' bargain. *See, e.g.*, *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (ADA preempted breach-of-contract claim that "d[id] not involve the airline's 'self-imposed' undertaking"); *Neft v. United Cont'l Holdings, Inc.*, 299 F.Supp.3d 965, 975–76 (N.D. Ill. 2018) (ADA preempted plaintiff's demand for a remedy that was outside the terms of plaintiff's contract with United); *Watson v. United Airlines, Inc.*, Civil 16-00400 LEK-KJM, 2017 WL 6060173, at *5–7 (D. Haw. 2017) (finding claim for breach-of-contract preempted because it sought "to enlarge Plaintiffs' contractual rights" beyond those provided in the CoC), *aff'd* 709 Fed. App'x 500 (9th Cir. 2018).

The claims asserted by Plaintiffs here plainly relate to both United's prices and its services. Consequently, the claims are preempted unless they fit within the narrow *Wolens* exception. They do not, and the Complaint must therefore be dismissed.

**1. Plaintiffs' Claims Relate to United's Prices and Services.**

All of Plaintiffs' asserted claims relate to what they describe as United's alleged "unlawful practice of charging passengers upgrade fees to buy seats that United represents have a 'window,' but that are actually next to a blank wall." Compl. ¶ 1. Courts repeatedly have held that claims concerning airline fees and surcharges, as well as claims that concern seat selection, seat restrictions, and upgrades, relate to "price" for purposes of ADA preemption. *See Wolens*, 513 U.S. at 226 (mileage credits for upgrades related to price); *Fernald v. Sw. Airlines Co.*, No.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 6 -

11CV0453 AJB (POR), 2011 WL 13254382, at *2–3 (S.D. Cal. Sept. 28, 2011) (collecting cases and holding that ADA preemption applies to "claims involving fees, taxes, and other charges," including mileage credits and upgrades); *Weber v. USAirways, Inc.*, 11 F. App'x 56, 56–58 (4th Cir. 2001) (flight voucher's seat restrictions fell under "price"); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 383 (5th Cir. 2004) (increasing seat legroom indirectly acts as a "forbidden significant effect" on prices). Plaintiffs' claims are unquestionably related to United's prices.

Claims relating to seat selection and upgrades also relate to airline "services." *See, e.g.*, *Fernald*, 2011 WL 13254382, at *3 ("[T]he EBCI program is a ***service*** that provides passengers with an opportunity to upgrade their seat selection.") (emphasis added); *see also Wolens*, 513 U.S. at 227 (airline "services" include class-of-service upgrades). Indeed, the Complaint *itself* categorizes seat selection as a "service[]." Compl. ¶ 21.

### 2. The ADA Preempts the Claims Asserted in Counts I and II of the Complaint.

The Supreme Court's *Wolens* decision recognized an exception to ADA preemption for "state-law-based adjudication of *routine breach of contract claims*." 513 U.S. at 233 (emphasis added). In doing so, the *Wolens* Court reasoned that such claims "seek[] recovery solely for the airline's breach of its own, self-imposed undertakings," and that "[a] remedy *confined to a contract's terms* simply holds parties to their agreements." *Id.* at 228–29 (emphasis added). Regardless of how Plaintiffs have styled their claims, those claims escape preemption only if they seek to enforce a contractual obligation that United undertook. *See Ginsberg*, 572 U.S. at 276 (a claim is preempted "if it seeks to enlarge the *contractual obligations* that the parties voluntarily adopt") (emphasis added).

The only valid and enforceable contract between United and Plaintiffs is the CoC. As the CoC expressly provides: "By purchasing a ticket …, the Passenger agrees to be bound by ***these controlling terms*** of this Contract of Carriage." Kelley Decl. Ex. 1, at 1 (emphasis added). The CoC also states: "These rules constitute ***the*** conditions of carriage" upon which United "agrees to provide … Carriage." *Id.* Rule 3.A. (emphasis added). The CoC incorporates "any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt," but only if they do not

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 7 -

conflict with the terms of the CoC. *Id.* at 1. "To the extent there is a conflict between" the CoC any such terms and conditions, the CoC governs. *Id.*

The CoC does not contain any promise that seats in the "window" position of any aircraft will have exterior window views. Plaintiffs' claims thus attempt to enlarge United's obligations beyond those it undertook in the CoC, and are consequently preempted.

Plaintiffs attempt to avoid this conclusion by alleging that the "terms and conditions printed on or in any ticket, ticket jacket or eticket receipt" include both "the terms listed on United's boarding passes" and "the representations United made at the time of booking." Compl. ¶¶ 57–63. Plaintiffs' theory is belied by the plain language of the CoC, which makes clear that a boarding pass is *not* a "ticket, ticket jacket or eticket receipt" and that a "ticket" does not incorporate the seat selection screens that are displayed during the booking process. Moreover, even if that were not the case, the use of the word "window" in reference to a particular seat cannot reasonably be interpreted as a promise that the seat will have an exterior window view. Rather, the word "window" identifies the *position* of the seat—*i.e.*, next to the wall of the main body of the aircraft. Finally, the CoC expressly provides that United has no liability for failure to provide any amenity, regardless of the circumstance that results in the amenity being unavailable, subject to a limited exception that does not apply here.

### a. Boarding Passes and Seat Selection Screens Are Not Tickets, Ticket Jackets or ETicket Receipts.

The CoC defines "ticket" as "the record of agreement, including electronic tickets, … for Passenger air transportation provided by [United] under certain terms and conditions to the Passenger named on the Ticket." Kelly Decl., Ex. 1, Rule 1. The CoC defines "eTicket" as "the record of the ticket agreement maintained and processed within the carrier's electronic reservation system." *Id.*[3] The CoC makes clear that a "ticket" must be "issued" to a passenger, and that it has specific attributes, including a ticket number and a "fare construction box." *See, e.g.*, *id.*, Rule 1 (definitions of "Other Charges" and "Related Charges" that must be shown in "the fare

---

[3] The CoC does not define "ticket jacket," but it is common knowledge that the term refers to folders that historically were used to hold paper tickets and boarding passes. *See, e.g.*, https://www.ebay.com/itm/275972648896.

construction box of the ticket"; definition of "UA Ticket Stock" referencing the "ticket serial number"); Rule 3.E. (transportation is subject to the CoC in effect "on the date the Ticket is issued"); Rule 6.A (referencing tickets being "issued" and "Ticket numbers"). The boarding pass images that Plaintiffs include in their Complaint (Compl. ¶¶ 11, 58) do not have ticket numbers—indeed, the image of a paper boarding pass (*id.* ¶ 58) has an empty space where the ticket number could be referenced, further confirming that the "ticket" is distinct from the boarding pass. In addition, neither boarding pass shows what the passenger paid for the airfare, how the passenger paid, the date of purchase, the fare class, or the taxes and fees the passenger paid, all of which would be included in a ticket. *Id.* ¶¶ 11, 58. The seat selection screens that Plaintiffs include in their Complaint (*id.* ¶ 44) likewise do not include a ticket number, fare information or purchase information, and they are plainly not "issued" by United.

Numerous other provisions of the CoC further refute Plaintiffs' interpretation of "ticket." For example, Rule 5.D.1.a states that for domestic flights, "Passenger must complete the purchase of the ticket(s), check-in, check baggage, *and obtain a boarding pass* at least 60 minutes prior to scheduled departure." Kelly Decl., Ex. 1, Rule 5.D.1.a (emphasis added). Rule 6.L states that United "will assess a 50.00 USD fee for issuance of a paper *ticket*," but there is no fee for a passenger to print a paper *boarding pass* (which passengers can do on their home computers or at an airport kiosk). *Id.*, Rule 6.L (emphasis added). Various other Rules would simply make no sense if "ticket" meant what Plaintiffs contend. *See, e.g.*, Rule 1 (defining "Flight Coupon" as "a portion of the Ticket that indicates travel points between which the coupon is good for carriage"); Rule 7.E (providing that, for purposes of determining the ticket validity period, a "ticket" is "issued" on the date when payment is made); Rule 24.A.1 and 2 (recognizing that "a Ticket" and "a confirmed reservation" are different); Rule 27.B.3 (referencing the "expiration date" of a "Ticket").

In addition, the seat selection screens shown during the booking process are plainly not a "record of agreement." A "record of agreement" describes a *completed* purchase. Kelley Decl. Ex. 1, Rule 1; s*ee also* "record" definition, *Black's Law Dictionary* (12th ed. 2024) ("A documentary account of *past* events, usu. designed to memorialize those events." (emphasis added)). The term "eticket *receipt*" likewise indicates a past-facing acknowledgement. *See* "receipt" definition,

*Black's Law Dictionary* (12th ed. 2024) ("A written acknowledgment that something *has been received*; esp., a piece of paper or an electronic notification that one *has paid* for something."). But the seat selection screens on which Plaintiffs rely are not a record of a transaction that has already occurred; rather, they show the *seat selection process*, before any seat selection is finalized. Compl. ¶ 44.

In short, the boarding passes and seat selection screens on which Plaintiffs rely are not "ticket[s], ticket jacket[s] or eticket receipt[s]." They are not incorporated into the CoC, and Plaintiffs' tortured attempt to show that they are should be rejected.

### b. The Word "Window" Is Not a Promise That a Seat Will Have an Exterior Window View.

Plaintiffs' claims rest on the premise that the mere labeling of a seat with the word "window" on a boarding pass or seat selection screen constitutes an affirmative promise that the seat will have an exterior window view. To be enforceable, however, "a promise must be definite enough that a court can determine the scope of the duty and the limits of performance." *Quick Dispense, Inc. v. Vitality Food Serv., Inc.*, No. 8:23-cv-02322-FWS-ADS, 2025 WL 576589, at *4 (C.D. Cal. Feb. 5, 2025) (internal quotation marks and citation omitted); *see also Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) (contract formation "requires that the parties reach mutual assent or consent on definite or complete terms. … Terms of a contract must also be sufficiently definite in all particulars essential to its enforcement."). Plaintiffs' Complaint does not plausibly allege that United's seat selection process, as reflected in the screenshots on which Plaintiffs rely, promises that any seat labelled "window" will have an exterior window view. As a result, Plaintiffs' claims would fail even if the seat selection process were incorporated into the CoC.[4]

The seat selection process as depicted in Plaintiffs' screenshots is just that—a way for the passenger to select the *location* in which the passenger will sit. *See* Compl. ¶¶ 44–46. Plaintiffs allege that "United's App labels seats as 'window' or 'aisle' through visual placement on the seat

---

[4] Boarding passes, as the Court undoubtedly knows, are not issued until shortly before a flight, well after the formation of the contract between United and the passenger, so nothing contained in the boarding pass could constitute the purported "promise" of an exterior window.

map and accompanying textual label." *Id.* ¶ 44. As evidenced by Plaintiffs' screenshots, however, there are no exterior windows depicted next to any of the "window" seats—unlike the exit rows, which *are* depicted. *Id.* Nothing in the screenshots indicates that the labeling of a seat as "window" signifies anything other than the position of the seat on the aircraft. *Id.* In fact, Plaintiffs *themselves* describe the seat selection process in geospatial terms, referencing the "window" seats on United's website in terms of their "proximity to the side of the aircraft." *Id.* ¶ 46.

Further, the appearance of the word "window" just above (and in a smaller font than) the words "Preferred Seat"—which offers a "Favorable location in Economy"—or "Economy Plus"—which provides "Extra legroom"—reinforces that the seat selection screens concern seat *location*. *Id.* ¶ 44. This conclusion is confirmed by the CoC, which provides:

> If a Passenger is removed from … [an] ***Economy Plus seat***, or from ***Preferred Seating*** for which a fee, miles, or other compensation has been paid, and the Passenger is not re-accommodated in a seat of equal or greater value, or if a Passenger is downgraded from a class of service and is not re-accommodated in a seat in an equal or greater class of service for which a fee, miles, or other compensation has been paid, the Passenger may be eligible for a refund in accordance with Rule 27.

Kelley Decl., Ex. 1 Rule 4.D (emphasis added). In other words, what the Passenger purchases when she pays "a fee, miles, or other compensation" to select an Economy Plus seat or a Preferred Seat is "extra legroom" or a "favorable location in Economy." Compl. ¶ 44. If *those* benefits are not provided, she may be eligible for a refund upon request. But nothing in Rule 4.D states that a customer who purchases and sits in an Economy Plus seat or a Preferred Seat in the window location on the aircraft is eligible for a refund if the seat does not have an exterior window view.

Plaintiffs' attempt to buttress their theory by referencing statements found elsewhere on United's website (Compl. ¶ 47) undermines their position. Boarding Groups 3, 4 and 5 on United's "boarding process" webpage clearly relate to the *position* of the passenger's seat, such that passengers with "window seats"—*i.e.*, the seats in closest proximity to the external wall of the aircraft—board before passengers with middle or aisle seats, to minimize passengers in the same row having to squeeze past each other to get to their seats.[5] The *position* of a seat is relevant to the boarding of the aircraft; whether the seat has an exterior window view is not. Likewise, United

---

[5] *See* https://www.united.com/en/us/fly/travel/airport/boarding-process.html

advises that "Children in car seats should sit in a window seat" (Compl. ¶ 47) to avoid "block[ing] the egress of any passenger … to the aisle used to evacuate the aircraft," per Federal Aviation Administration guidance.[6] Again, "window seat" is used to identify the *position* of the seat, not to indicate that the seat has an exterior window view.

### c. *Rule 24.I of the CoC Provides the Exclusive Remedy for Failure to Provide an Amenity.*

There are no provisions in the CoC—and Plaintiffs have identified none—by which United promises that every seat in the "window" position of an aircraft will have an exterior window view. But there is a Rule that expressly addresses—and provides the exclusive remedy for—any failure by United to provide any "amenity." *See* Kelley Decl., Ex. 1, Rule 24.I. Rule 24.I. states that United "shall have *no liability*" for any failure to provide any amenity, regardless of the circumstance that results in the amenity not being available on a flight. *Id.* (emphasis). There is one exception, which provides: "If a Passenger has paid for a specific … amenity in advance of the flight as a separate fee specifically designated for such … amenity and that … amenity is not provided, the Passenger is eligible for a refund of the amount paid if a refund request is made within 90 days" of the flight date. *Id.*

Plaintiffs' Complaint does not reference Rule 24.I, and there is no suggestion that Plaintiffs intend to allege a breach of that Rule by United. Nor could they do so. Although Plaintiffs claim that they "paid extra" for window seats, *see supra* at 2, the Complaint alleges no facts plausibly suggesting any of them paid a fee that was "specifically designated for" the amenity of having an exterior window view, rather than for a seat in a particular location on the aircraft or a seat with additional legroom. There also are no allegations that any Plaintiff made a request for a refund of any such fee "within 90 days" of their flight date, which is a condition precedent that Rule 24.I requires.

In sum, while Counts I and II of Plaintiffs' Complaint are styled as claims for "breach of contract," they do not ask the Court to enforce a contractual obligation that United actually undertook (because no such contractual obligation arises), but instead seek to "enlarge the

---

[6] https://www.faa.gov/documentLibrary/media/Advisory_Circular/AC_120-87C.pdf; ECF 32-1, Ex. 1.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 12 -

contractual obligations" that United voluntarily adopted. *See Ginsberg*, 572 U.S. at 276. They are therefore preempted and must be dismissed.

### 3. The ADA Preempts Plaintiffs' Other Claims (Counts III and IV).

Count III of the Complaint purports to assert a claim for "breach of implied contract." Plaintiffs allege that, if the Court finds United "did not undertake express contractual commitments to provide Plaintiffs with actual windows at the seats they purchased," then United "is alternatively liable for undertaking an implied-in-fact contractual obligation." Compl. ¶ 93. But the CoC expressly states that, "[b]y purchas[ing] a ticket or accepting transportation, the passenger agrees to be bound **by these controlling terms** of this Contract of Carriage, and **no covenants at law or in equity shall be implied**." Kelley Decl. Ex. 1, at 1 (emphasis added). Plainly, then, Plaintiffs' Count III does *not* seek only to enforce a contractual obligation that United undertook; it instead asks the Court, based on state law external to the agreement, to *imply* certain terms *despite* the express prohibition in the CoC. Plaintiffs' claim for breach of implied contract is therefore preempted. *See, e.g.*, *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1065 (10th Cir. 2019) (finding implied contract claim preempted); *Bajra v. Delta Air Lines, Inc.*, No. 1:24-CV-3477-MHC, 2025 WL 1527076, at *15 (N.D. Ga. May 6, 2025) (same). Finally, Plaintiffs' alternative claim for promissory estoppel (Count IV) is preempted for reasons similar to those discussed with respect to Counts I and II—*i.e.*, because Plaintiffs do not plausibly allege any promise by United that every window seat will have an exterior window view, the claim does not seek to enforce any obligation that United actually undertook. *See Wolens*, 513 U.S. at 232–33.

### 4. The ADA Preempts Plaintiffs' Request for Attorneys' Fees and Expenses.

Plaintiffs' prayer for relief requests attorney's fees and expenses "as allowable under Rule 23." Compl. at 34. But Rule 23 does not provide any independent basis for such an award. *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are *authorized by law or by the parties' agreement*.") (emphasis added). The CoC does not authorize any such award, so even if there were a basis for one under state law (and United is aware of none), it would constitute precisely the type of "enlargement or enhancement" of the parties' bargain that the ADA prohibits. *See Wolens,* 513 U.S. at 232–33.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 13 -

Plaintiffs' request for attorney's fees and expenses is therefore preempted.

**B. Plaintiffs' Claims Fail on Their Merits.**

**1. Counts I and II Fail Because Plaintiffs Do Not Plausibly Allege That United Breached Any Contract with Them.**

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) resulting damage to the plaintiff. *Villarroel v. Recology, Inc.*, 775 F. Supp. 3d 1050, 1064 (N.D. Cal. 2025). The formation of a contract "requires that the parties reach mutual assent or consent on definite or complete terms." *Netbula, LLC*, 516 F. Supp. 2d at 1155. Consent is not mutual "unless the parties all agree on the same thing in the same sense." *Quick Dispense, Inc.*, 2025 WL 576589, at *3 (internal quotations and citation omitted). Further, the terms of an alleged contract must be "sufficiently definite in all particulars essential to its enforcement." *Netbula, LLC*, 516 F. Supp. 2d at 1155; *see also Quick Dispense, Inc.*, 2025 WL 576589, at *4 ("[A] promise must be definite enough that a court can determine the scope of the duty and the limits of performance.")

As discussed in Section IV.A.2, *supra*, Plaintiffs' Complaint fails plausibly to allege the existence of any contract between any Plaintiff and United whereby United promised that the seats Plaintiffs selected would have an exterior window view. And while there is no dispute that by purchasing their tickets Plaintiffs "agree[d] to be bound by" the CoC, they also fail plausibly to allege that United breached that contract. Counts I and II should therefore be dismissed.

**2. Count III Fails Because the CoC Precludes Implied Agreements.**

"An implied breach of contract claim has the same elements as an express breach of contract claim except its existence and terms are manifested by conduct, not words." *Doe I v. Google, LLC*, 741 F. Supp. 3d 828, 848 (N.D. Cal. 2024). In this case, Plaintiffs do not allege any specific conduct by United that purportedly created an implied contract between United and any Plaintiff, and the conduct that the Complaint generally alleges (the location of a seat on a seat map or labeling of a seat as "window") is no more sufficient to allege an implied contract than an express one.

In any event, "an implied contract cannot exist when there is an express contract between the parties governing the same subject." *Id*. Here, not only is there an express contract—the CoC—

that "constitute[s] the conditions of carriage" upon which United agreed to provide transportation to Plaintiffs, but that contract expressly *precludes* any implied covenants. Kelley Decl. Ex. 1, at 1 and Rule 3.A. Count III should therefore be dismissed.

### 3. Count IV Fails Because Plaintiffs Do Not Plausibly Allege the Elements of a Promissory Estoppel Claim and There Is a Valid Contract Between the Parties.

In California, the elements of promissory estoppel are: "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance." *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010). Plaintiffs here have not alleged a "clear and unambiguous" promise by United that the seats they selected would have exterior window views, *see supra* Section IV.A.2, nor have they sufficiently alleged that their supposed reliance on the word "window" as a promise that their seats would have exterior window views was either reasonable or foreseeable. In addition, their allegations that they relied to their detriment "by (1) expending additional *consideration* to obtain seats that they would not have originally purchased, and/or (2) abstaining from changing their seats post-purchase" (Compl. ¶ 101, emphasis added) are insufficient to satisfy that element of the claim. *See, e.g.*, *Boon Rawd Trading*, 688 F. Supp. 2d at 953–54 ("The doctrine of promissory estoppel is only applicable when an alleged promise lacks adequate consideration."); *Mend Health, Inc. v. Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1057 (C.D. Cal. 2022) (finding plaintiff's allegations "that it forwent alternative options to expand its business" insufficient to support promissory estoppel claim).

Even if Plaintiffs had adequately pleaded those elements, however, their promissory estoppel claim would still fail because a valid contract—the CoC—"governs the same subject matter"—transportation of Plaintiffs by United—as the alleged promise. *See Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (N.D. Cal. 2009) (dismissing promissory estoppel claim without leave to amend). Count IV should accordingly be dismissed.

### CONCLUSION

For the foregoing reasons Plaintiffs' Complaint should be dismissed with prejudice.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, AND SUPPORTING MEM. OF AUTHORITIES – 3:25-cv-06995-JD

- 15 -

Dated: November 10, 2025

Respectfully Submitted:

**RILEY SAFER HOLMES & CANCILA LLP**

By: /s/ Sondra A. Hemeryck

Sondra A. Hemeryck (*pro hac vice*)
Eli Litoff (*pro hac vice*)
Steven E. Vogel (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn Street, Suite 2200
Chicago, IL 60603
Telephone: (312) 471-8700
Facsimile:  (312) 471-8701
shemeryck@rshc-law.com
elitoff@rshc-law.com
svogel@rshc-law.com

Jeffrey R. Williams (CSB No. 084156)
RILEY SAFER HOLMES & CANCILA LLP
jwilliams@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone:(415) 275-8550
Facsimile: (415) 275-8551

*Attorneys for Defendant*
UNITED AIRLINES, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I hereby certify that I caused the above document to be electronically filed with the Clerk of Court using CM/ECF system, which will send notification of such filing to all counsel of record in the above-captioned matter.

Dated: November 10, 2025                     By: /s/ Sondra A. Hemeryck
                                                  Sondra A. Hemeryck (*pro hac vice*)