Carter E. Greenbaum (SBN 344692)
**GREENBAUM OLBRANTZ LLP**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
Tel: (332) 222-9119
Email: carter@greenbaumolbrantz.com

Casey J. Olbrantz (*pro hac vice)*
Giorgio Traini (*pro hac vice forthcoming*)
**GREENBAUM OLBRANTZ LLP**
244 Fifth Avenue, Suite C221
New York, NY 10001
Email: casey@greenbaumolbrantz.com
Email: giorgio@greenbaumolbrantz.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC BRENMAN, AVIVA COPAKEN, SEAN MINYARD, ROBERT MONROE, and CINDY PAWLOWSKI, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED AIRLINES, INC,<br><br>Defendant. | Case No. 3:25-cv-06995-JD<br><br>**PLAINTIFFS' OPPOSITION TO UNITED'S MOTION TO DISMISS**<br><br>Date: January 22, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11<br>Before: Honorable James Donato |

**Table of Contents**

Table of Authorities ......................................................................................................................... iii

Preliminary Statement ....................................................................................................................... 1

Factual Background .......................................................................................................................... 3

Argument ........................................................................................................................................... 5

    I.    The ADA Does Not Preempt Any of Plaintiffs' Claims or Remedies .................................... 5

    II.    Plaintiffs Adequately Allege Breach of Express Contract (Counts 1 and 2) ......................... 7

        A.    Plaintiffs' Tickets Include a Term Requiring a Window Seat (Count 1) ....................... 8

        B.    Plaintiffs' Seat Selections Merge Into the Record of Agreement (Count 2) ................ 10

        C.    The Term "Window" Means An Actual Window—Not A "Location" ......................... 11

        D.    COC Rule 24 Has No Application to Counts 1 and 2 .................................................. 12

    III.    Plaintiffs Adequately Allege Breach of Implied-In-Fact Contract (Alternative Count 3) . 14

    IV.    Plaintiffs Adequately Allege Promissory Estoppel (Alternative Count 4) ......................... 15

Conclusion ...................................................................................................................................... 15

## Table of Authorities

*Am. Airlines v. Wolens,*
    513 U.S. 219 (1995) .......... 5

*Am. Express Travel Related Servs. Co. v. Marco,*
    611 F. Supp. 938 (S.D.N.Y. 1985) .......... 13

*AmeriPOD, LLC v. davisREED Constr., Inc.,*
    2017 U.S. Dist. LEXIS 107269 (S.D. Cal. July 11, 2017) .......... 15

*Asmus v. Pac. Bell,,*
    23 Cal. 4th 1 (2000) .......... 10

*ATA Airlines, Inc. v. Fed. Express Corp.,*
    665 F.3d 882 (7th Cir. 2011) .......... 6

*AWray v. PHI Air Med. LLC,*
    2018 U.S. Dist. LEXIS 239009 (D. Ariz. July 9, 2018) .......... 6

*Cal. Trucking Ass'n v. Su,*
    903 F.3d 953 (9th Cir. 2018) .......... 5

*Castanares v. Deutsche Lufthansa AG,*
    2020 U.S. Dist. LEXIS 189426 (C.D. Cal. Oct. 9, 2020) .......... 5

*Choi v. 8th Bridge Capital, Inc.,*
    2018 U.S. Dist. LEXIS 118421 (C.D. Cal. July 16, 2018) .......... 12

*Cox v. Spirit Airlines, Inc.,*
    786 F. App'x 283 (2d Cir. 2019) .......... passim

*Cox v. Spirit Airlines,*
    2023 U.S. Dist. LEXIS 24904 (E.D.N.Y. Feb. 14, 2023) .......... 12

*Cox v. Spirit Airlines, Inc.,*
    341 F.R.D. 349 (E.D.N.Y. 2022). .......... 14

*Dobest Semiconductor Tech. Suzhou Co., Ltd. v. Capital Asset Exch. & Trading, LLC,*
    2025 U.S. Dist. LEXIS 230069 (N.D. Cal. Apr. 25, 2025) .......... 15

*Dover v. British Airways, PLC (UK),*
    2013 U.S. Dist. LEXIS 160127 (E.D.N.Y. Nov. 7, 2013) .......... 6

*Dover v. British Airways, PLC (UK),*
    2018 U.S. Dist. LEXIS 174513 (E.D.N.Y. Oct. 9, 2018) .......... 6

*Enloe Med. Ctr. v. Principal Life Ins. Co.,*
    2011 U.S. Dist. LEXIS 146194 (E.D. Cal. Dec. 19, 2011) .......... 6

*Hickcox-Huffman v. US Airways, Inc.*,
   855 F.3d 1057 (9th Cir. 2017). ............................................................................................. 5

*Hickcox-Huffman v. US Airways, Inc.*,
   2017 U.S. Dist. LEXIS 177995 (N.D. Cal. Oct. 26, 2017) ................................................ 6

*Hickcox-Huffman v. US Airways, Inc.*,
   2019 U.S. Dist. LEXIS 62911 (N.D. Cal. Apr. 11, 2019) .................................................. 7

*Hung Cavalieri v. Avior Airlines C.A.*,
   25 F.4th 843 (11th Cir. 2022) ........................................................................................ passim

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................. 8

*Kettler v. Reach Air Med. Servs.*,
   2021 U.S. Dist. LEXIS 203461 (N.D. Cal. Feb. 8, 2021) .................................................. 6

*Neft v. United Cont'l Holdings, Inc.*,
   299 F.Supp.3d 965 (N.D. Ill. 2018) .................................................................................... 6

*Netbula, LLC v. Bindview Dev. Corp.*,
   516 F. Supp. 2d 1137 (N.D. Cal. 2007) ............................................................................ 12

*Nw., Inc. v. Ginsberg*,
   572 U.S. 273 (2014) ............................................................................................................ 5

*Onoh v. Nw. Airlines, Inc.*,
   613 F.3d 596 (5th Cir. 2010) .............................................................................................. 6

*O'Callaghan v. Arm Corp.*,
   2005 U.S. Dist. LEXIS 12889 (N.D. Ill. June 8, 2005) ................................................ 7, 10

*Quick Dispense, Inc. v. Vitality Foodservice, Inc.*,
   2025 U.S. Dist. LEXIS 33012 (C.D. Cal. Feb. 5, 2025) .................................................. 12

*Schoene v. Spirit Airlines, Inc.*,
   726 F. Supp. 3d 1248 (D. Or. 2024) ................................................................................... 6

*Watson v. United Airlines, Inc.*,
   2017 WL 6060173 (D. Haw. 2017) .................................................................................... 6

*Williams v. Warner Music Grp.*,
   2019 U.S. Dist. LEXIS 170393 (C.D. Cal. Mar. 13, 2019) .............................................. 14

Plaintiffs respectfully submit this Opposition to United's Rule 12(b)(6) Motion to Dismiss (ECF 32) ("**MTD**") the First Amended Class Action Complaint (ECF 24) ("**FAC**").

**Preliminary Statement**

United charged Plaintiffs and millions of putative class members extra fees to select a window seat. These passengers reasonably understood they were buying a seat with an actual window. United consistently confirmed that simple expectation and industry norm, including by using the term "window" on seat maps, reservation systems, boarding passes, and marketing materials. But Plaintiffs and class members did not get what they paid for—United sat them next to a solid wall.



This case is exceedingly simple, and the core facts are indisputable. As detailed in the FAC, United requires passengers to pay extra fees for the ability to select a seat. As pictured above and in the FAC, a majority of United's planes have at least one exterior-row seat with no usable window ("**Windowless Window Seats**"). But, for many years, United did not disclose that these seats were windowless. Instead, it affirmatively led passengers to conclude—consistent with their reasonable expectations and past flying experiences—that they were paying additional seat selection fees to obtain seats with a "window." Revealingly, shortly after this lawsuit was filed, United abruptly changed its sales practices, and now labels Windowless Window Seats as having "No Window."

By charging Plaintiffs and class members extra consideration to select "window" seats, United undertook binding obligations to provide windows. The FAC extensively details how those contractual obligations arose and were memorialized in the tickets and records of agreement between United and

its passengers. And it alternatively establishes United's implied-in-fact and estoppel-based obligations to provide a window. United breached its duties, and passengers are entitled to get their money back.

To avoid accountability, United's motion asks this Court to accept propositions that defy common sense: that a "window seat" need not have a window (but is a "location"), that passenger selections made during the booking process somehow do not bind United, and that United is free to charge extra for a feature it was never going to provide. Each of United's arguments fails.

United's core merits defense is that the "use of the word 'window' in reference to a particular seat cannot reasonably be interpreted as a promise that the seat will have an exterior window view." This heavily lawyered argument flouts the plain meaning of the word "window." No consumer—and no dictionary editor—would accept it. And while numerous courts have held airlines to account for practices similar to United's, its motion attempts to escape liability through misdirection. Understanding that its Contract of Carriage ("**COC**") expressly incorporates the terms of passengers' tickets—which allegedly promised Plaintiffs a window—United advances specious arguments that its boarding passes and electronic reservation systems are not "tickets," and purportedly do not reflect the tickets. But, fatally, United never identifies what else the "tickets" could be, nor explains what they contain. United's "say-so" about documents that are not before the Court cannot overcome Plaintiffs' allegations.

United's legal arguments fare even worse. While United spends most of its brief arguing that Plaintiffs' claims are preempted by the Airline Deregulation Act, its contentions are a red herring. The ADA only preempts claims that seek to enforce normative state laws and policies that purport to dictate airline prices and services. United fails to cite the Ninth Circuit's leading case interpreting the ADA, which held that "[i]f [plaintiffs] adequately pleaded breach of contract, then [their] claim is not preempted." All that matters is whether Plaintiffs have stated claims under state contract law. They have.

Finally, United argues that Rule 24 of its Contract of Carriage limits its liability for failing to provide an "amenity." But Rule 24.A states that "the provisions of this Rule apply to a Passenger who has a Ticket and a confirmed reservation on a flight that incurs a Schedule Change, Force Majeure Event or Irregular Operations." United does not claim those events occurred (they did not), and United argued in its previous motion to dismiss, *twice*, that a window is not an "amenity" under the COC.

For these reasons, and those that follow, United's motion should be denied in full.

**Factual Background**

Around 2017, United began charging extra fees to select an airplane seat, which was previously included in the standard cost of a ticket. *Id.* ¶ 21. Today, a large proportion of passengers are willing to pay extra to select their seats, and a majority of those passengers prefer window seats. *Id.* ¶¶ 29-33. For example, many travelers have a fear of flying or experience anxiety, claustrophobia, or motion sickness, and windows provide greater comfort in an otherwise distressing environment. *Id.*

The majority of planes in United's fleet have one or more Windowless Window Seats. *Id.* ¶ 2. These seats exist for various reasons unique to each plane's design, such as air conditioning ducts that run through a side panel and prevent the installation of windows. *Id.* Most major airlines, including three of United's biggest competitors (American, Southwest, and Alaska), affirmatively disclose the location of Windowless Window Seats to passengers, or do not charge extra for those seats. *See id.* ¶ 54.

Nevertheless, for many years, United has sold Windowless Window Seats to passengers while representing that the seats have a window. *Id.* ¶¶ 41-49. United charges customers seat selection fees for these seats. *Id.* ¶¶ 21-28. Initially, United passengers wishing to select *any* seat must first pay an upgrade fee from the Basic Economy fare to the Economy fare. *Id.* Thus, passengers who wish to secure a window seat must pay that initial fee, which can range from $15 to hundreds of dollars. *Id.* ¶ 22. On top of that initial fee, United also charges passengers for certain preferred or economy plus seats, which is often where Windowless Window Seats are located. *Id.* ¶ 28.

When airline passengers book a window seat, they expect it to have a window. FAC ¶ 4. United gives passengers no reason to doubt that expectation and industry norm, but has long confirmed it. *Id.* ¶ 42. United's website and passenger interfaces exclusively refer to "window," "middle," and "aisle" seats. *Id.* ¶ 29. Until after this litigation was filed, United maintained electronic seat selection interfaces that described every wall-adjacent seat as having a "window"—including for Windowless Window Seats. *Id.* ¶ 42-49. Portions of United's internal reservation system that are made available to passengers also identify Windowless Window Seats as "window seats." *Id.* ¶¶ 56-65. Moreover, United issued boarding passes to every passenger who purchased Windowless Window Seats that prominently displayed the phrase "Window Seat," which not only confirmed United's contractual obligations, but also induced passengers to abstain from exercising their option to change seats prior to boarding. *Id.*

But despite selecting a window seat and paying extra for the privilege, United sat Plaintiffs and millions of class members next to a blank wall. *Id.* ¶¶ 3, 9-15. Affected passengers have long complained about United's practice on social media, and directly to United. *Id.* ¶¶ 50-55. One viral Reddit post, for example, sarcastically stated: "Thanks @united! I paid for upgrade [sic] for a window seat, and THERE. IS. NO. WINDOW! 10F #whereismywindow." *Id.* ¶ 51. United's own customer service representatives have referred to its practice as a "misrepresentation." *Id.* ¶ 52. But, for many years, United refused to change its practice to comply with industry norms and consumers' reasonable expectations. *Id.* ¶ 6. Tellingly, after Plaintiffs' original complaint was filed in August 2025, United purported to change its contract formation process, and now discloses during the flight booking process that certain Windowless Window Seats have "No Window." *Id.* ¶ 67.

United's Contract of Carriage confirms that United was contractually obligated to provide windows. *Id.* ¶¶ 56-65. When Plaintiffs purchased their tickets, United purported to also bind them to "the terms and conditions of United's Contract of Carriage." *Id.* ¶ 59. The COC states that transportation is: "subject to the following terms and conditions, ***in addition to any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt.***" *Id.* ¶ 60 (emphasis added). The COC then defines ticket as the "record of agreement, including electronic tickets, e.g. 'United Electronic Tickets' or 'eTickets'… An 'eTicket' is the record of the ticket agreement maintained and processed within the carrier's electronic reservation system." *Id.* As detailed in the FAC and in Section II below, Plaintiffs' tickets, as defined in the COC, included the term "Window Seat," United's electronic reservation system reflected Plaintiffs' seats as "window" seats, and the record of agreement necessarily incorporated Plaintiffs' selection of window seats. *Id.* ¶¶ 56-65.

The FAC asserts four causes of action, which each allege that United breached its contractual obligations by providing Windowless Window Seats. Count 1 (the **"Ticket Breach"**) asserts that United's promise to provide a window is incorporated into Plaintiffs' "ticket, ticket jacket or eticket," and thereby bound United under the COC. *Id.* ¶¶ 79-84. Count 2 (the "**Record of Agreement Breach**") asserts that the window term is included in the contract that was formed upon completion of the booking "checkout" process. *Id.* ¶¶ 85-91. Counts 3 and 4 assert alternative claims that United is liable for breach of an implied-in-fact contract and promissory estoppel. *Id.* ¶¶ 92-102.

**Argument**

**I.     The ADA Does Not Preempt Any of Plaintiffs' Claims or Remedies**

United spends most of its motion arguing that the FAC is preempted by the Airline Deregulation Act ("**ADA**"), which preempts claims "related to a price, route, or service of an air carrier." *Am. Airlines v. Wolens*, 513 U.S. 219, 223 n.1 (1995). But most of United's arguments are irrelevant to ADA preemption, and are garden-variety 12(b)(6) arguments that United casts as preemption issues to try to seek a more favorable standard. Under binding precedent that United ignores, its arguments readily fail.

In *Wolens*, the Supreme Court held that the ADA does not "shelter airlines from suits" seeking "recovery solely for the airline's alleged breach of its own, self-imposed undertakings." 513 U.S. at 228. And in *Ginsberg*, the Court elaborated that *Wolens* was not limited to breach of contract claims, but permits a "subcategory" of "voluntary undertaking" claims. *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 284-85 (2014). Claims that enforce "community standards of decency, fairness, or reasonableness" are preempted, and claims seeking "to effectuate the intentions of parties, or to protect their reasonable expectations," are not. *Id.* at 286. Here, each of Plaintiffs' claims seek merely to enforce United's voluntary undertakings. No claim is preempted because "[n]o state law made [United] promise" to provide seats with a window. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1066 (9th Cir. 2017).

**Breach of Contract (Counts 1 & 2)**. Curiously, United failed to cite the Ninth Circuit's leading case on ADA preemption, *Hickcox-Huffman*, which adopted a bright-line rule for breach of contract claims: where a plaintiff "adequately plead[s] breach of contract," the "claim is not preempted." *Id.* at 1062; *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019) (same). Thus, United's repetitious contentions that Plaintiffs' claims are preempted because they supposedly seek to "enlarge" contractual obligations are a distraction. ADA preemption exclusively prohibits "enlargement" by "external" "state laws or policies." *Ginsberg*, 572 U.S. at 276; *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 962 (9th Cir. 2018) (ADA bars claims if they result "in a State's normative policies dictating what prices and services an airline had to offer"). Here, Plaintiffs "have not invoked a state law or regulation that seeks to alter the voluntary agreement." *Hung Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 851 (11th Cir. 2022).

*Wolens* allows Plaintiffs to employ "general principles of contract law" to allege the scope of United's contracts. *Castanares v. Deutsche Lufthansa AG*, 2020 U.S. Dist. LEXIS 189426, at *10-13

(C.D. Cal. Oct. 9, 2020) (plaintiff stated non-preempted claim; using contract treatise to determine scope of obligation); *Hickcox-Huffman*, 855 F.3d at 1065 n.39 (same); *Cox*, 786 F. App'x at 285 (same; using "tools of contractual interpretation" to find ambiguity); *Dover v. British Airways, PLC (UK)*, 2013 U.S. Dist. LEXIS 160127, at *17 (E.D.N.Y. Nov. 7, 2013) (same; construing contract by analyzing what "typical consumer would consider").[1] Under *Hickcox-Huffman*, the only question is whether Plaintiffs have stated a claim using state law tools of contract interpretation. As detailed in Section II, they have.

**Breach of Implied-In-Fact Contract (Count 3)**. The analysis is no different for breach of implied-in-fact contracts, which have no difference in legal effect from express contracts, and arise where "parties' actions evince an intention." *Enloe Med. Ctr. v. Principal Life Ins. Co.*, 2011 U.S. Dist. LEXIS 146194, at *13 (E.D. Cal. Dec. 19, 2011). In *Hickcox-Huffman*, the Ninth Circuit noted that plaintiff's implied-in-fact breach claim "amount[ed] to the same thing" as the express breach claim, 855 F.3d at 1063, and this Court declined to dismiss that claim on remand. *Hickcox-Huffman v. US Airways, Inc.*, 2017 U.S. Dist. LEXIS 177995, at *18 (N.D. Cal. Oct. 26, 2017). Other courts in this Circuit have found that such claims are not preempted. *Schoene v. Spirit Airlines, Inc.*, 726 F. Supp. 3d 1248, 1262 (D. Or. 2024); *AWray v. PHI Air Med. LLC*, 2018 U.S. Dist. LEXIS 239009, at *12 (D. Ariz. July 9, 2018). United cites two out-of-circuit cases (*Scarlett* and *Bajra*), and cites the COC's language that "no covenants at law or in equity shall be implied." But those concern *implied-in-law* contract claims, which the ADA treats differently, *Kettler v. Reach Air Med. Servs.*, 2021 U.S. Dist. LEXIS 203461, at *17 (N.D. Cal. Feb. 8, 2021), and which Plaintiffs do not allege here. FAC ¶¶ 93-98.

**Promissory Estoppel (Count 4)**. The ADA does not preempt promissory estoppel because no state law forced United to make promises. As Judge Posner explained: "Promissory estoppel, as the word 'promissory' implies, furnishes a ground for enforcing a promise made by a private party, rather than for implementing a state's regulatory policies." *ATA Airlines, Inc. v. Fed. Express Corp.*, 665 F.3d

---

[1] United's few cites cases are inapposite. *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (ADA preempted claim based on international treaty); *Neft v. United Cont'l Holdings, Inc.*, 299 F.Supp.3d 965, 975–76 (N.D. Ill. 2018) (ADA preempted state law restitution remedy that contravened express contract term; noting contract damages were not preempted); *Watson v. United Airlines*, Inc., 2017 WL 6060173, at *5–7 (D. Haw. 2017) (*pro se* claim that United breached contract by "by unnecessarily and needlessly exposing [plaintiff] to a great magnitude of potential harm" preempted), *aff'd* 709 Fed. App'x 500 (9th Cir. 2018).

882, 884 (7th Cir. 2011). Because it "differs from a conventional breach of contract claim only in basing the enforceability of the defendant's promise on reliance," claims are "not preempted" by the ADA. *Id*.

**Rule 23(h) Relief**. Last, United's conclusory, citationless argument that the ADA negates the Court's ability to award fees and costs under Rule 23(h) is wrong. *E.g.*, *Hickcox-Huffman v. US Airways, Inc.*, 2019 U.S. Dist. LEXIS 62911, at *7 (N.D. Cal. Apr. 11, 2019) (approving common fund fee award under Rule 23); *Dover v. British Airways, PLC (UK)*, 2018 U.S. Dist. LEXIS 174513, at *25 (E.D.N.Y. Oct. 9, 2018) (same; simultaneously analyzing ADA preemption in addressing other settlement issues).

## II.    Plaintiffs Adequately Allege Breach of Express Contract (Counts 1 and 2)

Having cleared the underbrush of United's meritless preemption theories, its failure to state a claim arguments fare no better. Counts 1 and 2 allege United breached express contract terms by providing Windowless Window Seats. FAC ¶¶ 71-91. United does not contest that the FAC sufficiently alleges the performance, breach, and damages elements of a breach claim, but asserts that Plaintiffs fail to allege the existence of a contractual obligation to provide a window.[2] United is wrong.

The Ticket Breach (Count 1) asserts that the window term was memorialized in Plaintiffs' "ticket, ticket jacket or eticket," which Page 1 of the COC states are binding on United. FAC ¶¶ 60-61 & 81-82; COC at 1 ("Transportation … [is] subject to the following terms and conditions, in addition to any terms and conditions printed on or in any ticket, ticket jacket, or eticket receipt"). The Record of Agreement Breach (Count 2) asserts that the window term is included in the agreement that was formed upon completion of the booking "checkout" process. FAC ¶¶ 87-88. As set forth below, and as established by copious authority, Plaintiffs amply state a claim. *Cox*, 786 F. App'x at 285 (alleging airline breached "price term" listed on checkout webpage by charging for carry-ons); *Hung*, 25 F.4th at 853 (alleging airline breached representation made during ticketing process that fare included all fees); *Hickcox-Huffman*, 855 F.3d at 1063 (alleging airline failed to "timely" deliver luggage); *O'Callaghan v. Arm Corp.*, 2005 U.S. Dist. LEXIS 12889, at *6 (N.D. Ill. June 8, 2005) (alleging airline breached obligation to provide legroom "stated in [an] advertisement").

---

[2] United argues that California law governs the FAC. Plaintiffs reserve the right to argue that Illinois law governs some or all claims, but that question is academic at present because the issues raised in United's motion do not appear to implicate conflicts between California and Illinois law.

### A.     Plaintiffs' Tickets Include a Term Requiring a Window Seat (Count 1)

Count 1 asserts that United's promise to provide a window is incorporated into Plaintiffs' "ticket, ticket jacket or eticket," and thereby bound United under the COC, in at least two ways.

*First*, Plaintiffs allege their tickets or "etickets" included a term requiring a window. FAC ¶ 62. Pursuant to the definition of "ticket" in COC Rule 1, passengers can review the terms of the ticket by retrieving the "reference" number listed in the receipt United sends passengers, and by entering that number into United's "reservation system" on the App. *Id*. Upon doing so, the "ticket" page to which passengers are directed is a dynamic page similar to United's booking "checkout" page, and it provides explicit confirmation that the assigned seat has a "window." *Id*. United's motion does not dispute these allegations, which must be taken as true. Plaintiffs thus state a claim.

*Second*, Plaintiffs allege their boarding passes are "tickets," or that the boarding passes at least confirm the contents of the "tickets." FAC ¶ 62. Post-purchase and pre-flight, United issues boarding passes to Windowless Window Seat passengers that explicitly identify their seats as "Window Seat[s]." *Id*. ¶ 58 (pictures). United contends that its boarding passes are not "tickets," as defined in the COC, and supposedly do not reflect the content of the tickets (even though United does not present those "tickets" to the Court). It is wrong on both counts, and its construction of "ticket" is contrary to: (i) the COC's definition of ticket, (ii) the plain meaning of "ticket," and (iii) United's prior motion to dismiss:

- The COC's definition of "ticket" includes United's boarding passes. The COC defines "ticket," in part, as the "record of agreement" and "electronic tickets." A boarding pass qualifies as both. Rule 6 of the COC (titled "Tickets") states that "No person will be entitled to transportation except upon presentation of a valid Ticket." And Rule 21.E states that United requires identification of a passenger "who presents a Ticket to board…." The COC also repeatedly refers to Tickets being *issued* to passengers. Rule 6.B & 6.I. Thus, boarding passes qualify as "tickets" because United undisputedly "issues" them to passengers, who must "present" them to fly. FAC ¶¶ 62, 101; MTD 10 n.4; *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1076 (N.D. Cal. 2012) ("If reasonably practicable, a contract must be interpreted as a whole, so as to give effect to every part,… each clause helping to interpret the other.").

- The ordinary usage of "ticket" is synonymous with "boarding pass." *E.g.*, *Ticket*, Oxford English Dictionary ("a printed piece of paper or card certifying that the holding is entitled to a certain right or service… esp. one allowing the holder to enter or have access to a place or event, to travel on a bus, train, or other form of public transport; (now also) an electronic or digital version of this"); *Boarding Pass*, Merriam-Webster Dictionary ("a special piece of paper that one must have in order to be allowed to get onto an airplane"). A boarding pass is a document that "gives the holder" the "right" to travel. United's motion admits that a "***ticket*** jacket" is used to hold "***boarding passes***." MTD. 8 n.3. (citing ebay listing for ticket jacket). And United itself invokes "common knowledge" to interpret the COC. *Id.* at 8,10 n.3 & n.4.

- Tellingly, United's previous motion to dismiss argued that the ticket is a document "presented in order to board a flight." ECF 23 at 10. In defining ticket, United previously referenced Rule 6.C (requiring "presentation of a valid Ticket" to fly) and other rules mandating the *issuance* of tickets. Its renewed motion excises those references and posits that a ticket must include a "ticket number." But, again, United does not identify any documents it *issued* that supposedly do qualify as a "ticket."

At the very most, United's boarding pass arguments raise ambiguities with its COC, which precludes dismissal on this basis. *In re iPhone*, 844 F. Supp. 2d at 1076 (contract is ambiguous if "capable of two different reasonable interpretations," and ambiguity precludes dismissal). The boarding passes undisputedly state that passengers were entitled to a "window seat." Even if boarding passes are technically not "tickets" under the COC (they are), the fact that they promise a "window" creates a strong inference that United's other records memorializing the terms of the parties' agreements have the same information. FAC ¶¶ 62 & 82. The contrary inference—that United superfluously adds terms to boarding passes that are not part of the underlying ticket record—is implausible.

Revealingly, United never takes a position on what the "tickets" actually say. United did not, for example, present the Court with a copy of any tickets. Instead, they simply make claims about what a ticket is not. But Plaintiffs' allegations about the contents of their tickets must be taken as true under *Twombly*. United has not properly controverted those allegations, so its repeated and bare contentions about what tickets say (or do not say) are irrelevant.

### B. Plaintiffs' Seat Selections Merge Into the Record of Agreement (Count 2)

Count 2 asserts that the window term is included in the contract that was formed upon completion of the booking "checkout" process. FAC ¶¶ 63 & 87-88. Simply, Plaintiffs allege that their selections during the booking process—including their selection of a window seat for additional consideration—created obligations for United to provide what was purchased. *E.g.*, *Hung*, 25 F.4th at 853; *Cox*, 786 F. App'x at 285; *O'Callaghan*, 2005 U.S. Dist. LEXIS 12889, at *6 (each finding plaintiff stated claim concerning representations made during the airline ticketing process).

This claim is supported by the COC itself. Rule 1 defines the "ticket" as the "record of agreement," which necessarily reflects the passenger's selections at the time of booking, and the related representations United made. Those selections and representations were United's "offer," which Plaintiffs accepted by purchasing the selected itinerary. Restatement (Second) of Contracts § 24 ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). And the contents of this contract are confirmed by representations United makes on its electronic reservation system and boarding passes, which expressly state that seats with a "window" were purchased. FAC ¶ 63.

United contends that "the seat selection screens shown during the booking process" are "plainly not a 'record of agreement.'" This is so, per United, because *Black's Law Dictionary*'s definition of "record" refers only to a "completed purchase." The COC suggests nothing to that effect. The COC does not even have a merger clause. United offers no authority for its apparent position that it can pick and choose which parts of its "offer" should merge into the contract when, moments later, a customer presses the "complete purchase" button. *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000) ("an unqualified right to modify … the contract is not enforceable").

United's strained wordplay is unpersuasive and ignores Plaintiffs' allegations. As detailed above, they specifically allege that United's booking "checkout" page dynamically includes the seat maps where passengers unwittingly selected Windowless Window Seats, and that such page specifically itemizes their seat selections and offers them for purchase. FAC ¶¶ 56-65. United's representations and passengers' corresponding selections constitute United's contractual "offer of a contract." *Hickcox-Huffman*, 855 F.3d at 1064. The "record of agreement" is formed upon acceptance of that offer, using

the terms of that offer, and passengers' seat selections necessarily merge into the resultant contract. *Hung*, 25 F.4th at 853; *Cox*, 786 F. App'x at 285; *O'Callaghan*, 2005 U.S. Dist. LEXIS 12889, at *6.

### C. The Term "Window" Means An Actual Window—Not A "Location"

United argues that, even if it undertook obligations to provide a "window," Counts 1 and 2 fail to allege a "sufficiently definite" promise that "any seat labelled 'window' will have an exterior window view." MTD 8. In support, United urges the Court to adopt a tortured construction of the term "window," which United says must refer to a "position" or "location." *Id.* Its argument fails for many reasons.

*First,* United's construction of "window" betrays the term's plain meaning. A window means just that: an actual window. *E.g.*, *Window*, Merriam-Webster Dictionary ("an opening … in the wall … for admission of light … closed by … transparent material"); *Window*, Cambridge Dictionary ("a space usually filled with glass in the wall … to allow light and air in and … see out"); *Window*, Dictionary.com ("an opening in the wall … fitted with … panes of glass"). Furthermore, as alleged in FAC:

- United responded to a customer complaint by saying: "we sincerely apologize for the inconvenience caused by the misrepresentation of seat 11A as a window seat…. [W]e are actively evaluating enhancements to our seat selection interface to better inform passengers during booking." FAC ¶ 52.
- Several of United's competitors' seat selection screens affirmatively label Windowless Window Seats with disclaimers of "no window view" or "has no window." *Id.* ¶¶ 54-55.
- Countless consumers have posted complaints on social media about Windowless Window Seats, *id.* ¶¶ 50-51, and "[v]irtually every mainstream news outlet that covers the United States published critical coverage of United's practice." *Id.* ¶ 66. This very motion received wide press coverage (about this very issue). For example, CBS Mornings ran a segment lambasting United's interpretation of "window" to millions of viewers, with anchors commenting: "booo"; "I mean, come on"; "absolutely not"; and "it'd be a wall seat." CBS Mornings, *What is a Window?* https://www.facebook.com/CBSMornings/videos/what-is-a-window-seat/1462337641496135/.

Even though United's own brief selectively invokes dictionary definitions, "common knowledge," and an eBay listing, its argument on this point flouts common usage—and common sense.

*Second,* United's position is fatally undercut by the FAC's allegations that United recently changed its practices and now labels Windowless Window Seats as "No Window" seats. FAC ¶¶ 66-68.

Before this case, United's seat maps, boarding passes, and marketing materials described *all* exterior-row seats as "window" seats. *Id.* ¶¶ 41-55. But after this action was filed (and after United received a firestorm of unfavorable media), United began labeling Windowless Window Seats as "No Window." *Id.* ¶¶ 66-68. These allegations refute the idea that "window seat" is "used to identify the *position* of the seat." MTD 8. United ignores this problem, and does not explain: (i) why United made any change if, in common parlance, "window" means "position," or (ii) what the "positional" difference is between a "window" seat and a "no window" seat. The reason is clear: United's post-hoc argument is highly lawyered and antithetical to the common usage (and United's own alleged usage) of the term "window."

*Finally*, even if United's construction of "window" had credibility, it is no basis for dismissal. Competing plausible interpretations of a contract are fact issues. And Plaintiffs' allegations of what a "window" means, and what consumers reasonably expect to obtain from a "window" seat, are sufficiently definite to withstand Rule 12(b)(6). *E.g.*, *Choi v. 8th Bridge Capital, Inc.*, 2018 U.S. Dist. LEXIS 118421, at *37 (C.D. Cal. July 16, 2018) (rejecting argument that term in oral contract was too indefinite; noting "the California Supreme Court has cautioned that voiding contracts based on indefiniteness is disfavored and therefore courts should 'construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained'"); *Hickcox-Huffman*, 855 F.3d at 1063 (passenger stated claim based on her proposed construction of the word "timely"); *Cox v. Spirit Airlines*, 2023 U.S. Dist. LEXIS 24904, at *14 (E.D.N.Y. Feb. 14, 2023) (finding "a jury should decide" "whether the price term" listed on air travel "booking webpage" "must be read to include carry-ons").[3]

### D.   COC Rule 24 Has No Application to Counts 1 and 2

Last, United says that Counts 1 and 2 are barred by COC Rule 24.I, which supposedly "provides the exclusive remedy for any failure by United to provide any 'amenity.'" MTD 12. On its face, Rule 24 has no application to Plaintiffs' allegations.

---

[3] Plaintiffs' allegations stand in stark contrast to United's cited caselaw on "indefinite contracts." *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1144 (N.D. Cal. 2007) (statement that "we want to reach a reasonable solution" too indefinite); *Quick Dispense, Inc. v. Vitality Foodservice, Inc.*, 2025 U.S. Dist. LEXIS 33012, at *13 (C.D. Cal. Feb. 5, 2025) (statement disclaiming liability for products too indefinite to enforce defendant to supply products).

*First*, Rule 24 applies only in specific and inapposite circumstances. The Rule is titled "Flight Delays/Cancellations/Aircraft Changes." The very first sentence of Rule 24 broadly caveats that: "the provisions of this Rule apply to a Passenger who has a Ticket and a confirmed reservation on a flight that incurs a Schedule Change, Force Majeure Event or Irregular Operations." Rule 24.A.1. United never argues that a "Schedule Change, Force Majeure Event or Irregular Operations" occurred for any Plaintiff, and no allegations in the FAC support that notion. Thus, United's theory fails out of the gate.

*Second*, United misleadingly quotes the provision it invokes, Rule 24.I (which defines "class of service"), to omit additional limiting language. The sentence United relies on states, in full: "***Regardless of whether there is a Schedule Change, Irregular Operations, Force Majeure Event, or other change or circumstance that results in an ancillary service or amenity not being available on any flight,*** UA shall have no liability for, and shall owe no refund with respect to any failure to provide that amenity or ancillary service." Rule 24.I (emphasis added). This omitted language further establishes that this Rule applies only upon some kind of "change," which United does not (and cannot) claim occurred.

*Third*, even if Rule 24.I were relevant to Plaintiffs, windows are obviously not a "service," and United conceded that windows are not an "amenity" under the COC. Rule 24.I defines "amenity or ancillary service" as including "live television, wi-fi services, priority boarding, advance seat assignments, and meal service." United argued in its previous motion to dismiss—twice—that a window is not an amenity. ECF 23 at 12 (calling it a "dubious proposition"); *id.* at 9. In addition, United allegedly markets windows as a seat "type," not an amenity. *E.g.*, FAC ¶¶ 29, 43 & 66.

United's attempt to stretch Rule 24 fails. Courts routinely reject similar arguments made by other airlines, and this Court should do the same. *Am. Express Travel Related Servs. Co. v. Marco*, 611 F. Supp. 938, 941 (S.D.N.Y. 1985) (claim that boarding pass promised 'no-smoking' section' not barred by term that 'carrier does not guarantee allocation of any particular space in the aircraft"); *O'Callaghan*, 2005 U.S. Dist. LEXIS 12889, at *7 (claim that airline failed to provide leg room not barred by term that "Carrier does not guarantee allocation of any particular space in the aircraft"); *Hickcox-Huffman*, 855 F.3d at 1064-65 (rejecting arguments that various contract of carriage provisions clearly barred claim for relief). At most, Rule 24's applicability is ambiguous, which is no basis for dismissal.

Finally, even if United were correct that Rule 24 provides an "exclusive remedy" for failing to provide a "window amenity," then Rule 24 is void and unenforceable. Federal regulations require United to automatically provide a "refund" where a "seat upgrade" that the "consumer paid for" is "not available." 14 CFR §§ 260.2 & 260.4. Rule 3 of the COC also states that it is "subject to applicable laws, regulations, rules and security directives" and in the event of a conflict, those laws "shall prevail." COC Rule 3.B. If United's construction of Rule 24 were correct, then Rule 24 violates Federal regulations, and it would be void under basic rules of contract interpretation. United, moreover, cannot properly bind passengers to Rules that flout such regulations. 14 CFR § 260.11; *Cox v. Spirit Airlines, Inc.*, 341 F.R.D. 349, 364 (E.D.N.Y. 2022).

### III.    Plaintiffs Adequately Allege Breach of Implied-In-Fact Contract (Alternative Count 3)

Count 3 alleges breach of United's implied-in-fact obligation to provide a window. FAC ¶¶ 92-98. It is an alternative claim that applies if the Court finds United did not undertake express contractual commitments to provide usable windows. *Id.* ¶ 93. United's three arguments for dismissal fail.

- As detailed above, the FAC is replete with allegations specifying United's pre- and post-contract conduct establishing its window obligation. United charged extra to select a seat. Plaintiffs paid extra to pick seats that they were led to believe had windows. Upon purchase, United's App offered confirmation that a "window" was bought. And before travel, United's boarding passes confirmed the "window." If there is no express contractual "window" term, Plaintiffs have amply pled an implied one. *Enloe*, 2011 U.S. Dist. LEXIS 146194, at *18 (issue for trial whether, based on "totality of circumstances," parties had implied-in-fact contract to "supplement or clarify" written contract).
- United is wrong that express contracts prohibit *all* implied contracts. That is true of *implied-in-law* contracts, but "implied in fact contracts allow implied terms to address the general subject matter of an express agreement so long as it does not contradict an express written term." *Id. at* *15. United repeatedly argues that the COC is silent about windows; thus, the alleged implied term is consistent.
- It is irrelevant that the COC states "no covenants at law or in equity" are implied. That provision is not even a "standard" merger clause; it says nothing about the factual circumstances that may give rise to implied-in-fact contracts. It does not bar Count 3. *Williams v. Warner Music Grp.*, 2019 U.S. Dist. LEXIS 170393, at *10 (C.D. Cal. Mar. 13, 2019) (merger clause did not bar implied claim).

### IV. Plaintiffs Adequately Allege Promissory Estoppel (Alternative Count 4)

Count 4 alleges United is alternatively liable for promising a "window"—before and after booking—which caused Plaintiffs to: (i) expend extra consideration to buy seats that they would not have otherwise purchased, or (ii) abstain from changing to an actual "window seat" before their flights. FAC ¶¶ 99-102. With scant explanation, United offers four boilerplate dismissal arguments. Each fails.

- United's pre- and post-purchase "window" promises could hardly be clearer. FAC ¶¶ 3, 11, 44, 58 (pictures). It promises a window the same way it promises a flight is taking you to Hawaii. *Id.* ¶ 11.

- United summarily says, without caselaw, that Plaintiffs' reliance was unreasonable. Dismissal would require ignoring countless allegations. FAC ¶ 52 (United apologized for "misrepresentation" about windows); *id.* ¶ 67 (United *now* labels windowless seats "No Window"); *id.* ¶ 66 (by "charging extra fees," airlines "created an expectation of the delivery of a specific type of seating").

- Without explanation, United says its promises entailed "adequate consideration." Its argument is unclear, but the law and the FAC are not. Promissory estoppel "is intended to make a promise that lacks consideration (in the usual sense of something bargained for and given in exchange) binding." *Dobest Semiconductor Tech. Suzhou Co., Ltd. v. Capital Asset Exch. & Trading, LLC*, 2025 U.S. Dist. LEXIS 230069, at *19 (N.D. Cal. Apr. 25, 2025). Plaintiffs allege they relied on United's promises by paying more, or by abstaining from switching to an actual "window" seat. *E.g.*, FAC ¶¶ 11-13. They adequately allege they did not get reciprocal consideration.

- United's argument that the COC "governs the same subject matter" fails, as United repeatedly argues the COC is silent about windows. *AmeriPOD, LLC v. davisREED Constr., Inc.*, 2017 U.S. Dist. LEXIS 107269, at *7 (S.D. Cal. July 11, 2017) ("difficult to determine" on motion to dismiss whether "promissory estoppel and breach of contract concern the same particular subject matter").

### Conclusion

For the foregoing reasons, United's motion to dismiss should be denied. Alternatively, to the extent the Court dismisses any claims, Plaintiffs respectfully request an opportunity to amend the FAC.

1   Dated: December 5, 2025

2   Respectfully Submitted,

3 /s/ *Carter E. Greenbaum*

4 Carter E. Greenbaum (SBN 344692)
**GREENBAUM OLBRANTZ LLP**
5 160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
6 Tel: (332) 222-9119
carter@greenbaumolbrantz.com

8 Casey Olbrantz (*pro hac vice*)
Giorgio Traini (*pro hac vice forthcoming*)
**GREENBAUM OLBRANTZ LLP**
244 Fifth Avenue, Suite C221
New York, NY 10001
Tel: (332) 222-9119
casey@greenbaumolbrantz.com
giorgio@greenbaumolbrantz.com

*Counsel for Plaintiffs*