# GREENBAUM OLBRANTZ LLP

**Carter Greenbaum**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
carter@greenbaumolbrantz.com
(212) 732-6837 (Direct)

April 9, 2026

**Via ECF**

Hon. James Donato
United States District Court
Northern District of California
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:     *Brenman et al. v. United Airlines, Inc.*, Case No. 3:25-cv-06995 (N.D. Cal.)**

Dear Judge Donato,

I write on behalf of Plaintiffs in the above-captioned matter to raise a discovery dispute with Defendant United Airlines, Inc. Pursuant to this Court's Standing Order Regarding Civil Discovery Rule 18 and Local Civil Rule 37-1(a), the parties have met and conferred via videoconference in good faith, but have been unable to resolve their differences concerning three sets of discovery items detailed below. The underlying disputed discovery requests are excerpted in full in Exhibit A.

As detailed in the First Amended Complaint (ECF 24) ("FAC") and in the briefing on United's pending motion to dismiss (*e.g.*, ECF 40), this is a putative class action concerning United's practice of charging millions of passengers extra fees to select "window" seats that were actually next to a blank wall. This letter concerns three items on which Plaintiffs seek discovery: (1) documents concerning class members who sat in seats that United now describes to its passengers as "partial window" seats (RFPs 1-3); (2) documents concerning the fees United charges to select window seats (*e.g.*, RFP 18); and (3) United's marketing materials concerning window seats (RFP 10). As detailed below, United refuses to produce responsive documents, but its objections are meritless and should be overruled.

## I.     Plaintiffs' Are Entitled to Discovery Concerning So-Called "Partial Window" Seats

*First*, United refuses to produce documents sufficient to identify what United now calls "partial window" seats (RFP 1), pictures of those seats' windows (RFP 2), and data related to class members who sat in those seats, including the amounts paid to select the seats (RFP 3). Importantly, the concept of a "partial window" seat was precipitated by this action. After the initial complaint was filed, United apparently conducted an inventory of all window seats in its fleet, and updated its booking seat maps to designate windowless seats as either "no window" or "partial window" seats. FAC ¶¶ 66-68. United refuses to produce any discovery concerning the seats it has now labeled "partial window," and even refuses to produce information about how United made its post-litigation determinations of whether a given seat should be designated as "no window" or "partial window." In essence, United has purported to unilaterally decide that such seats—and the class members who previously purchased them—are simply not part of this case. That position is untenable, and ignores Plaintiffs' allegations.

Information concerning "partial window" seats is squarely relevant and necessary to Plaintiffs' claims. Passengers who purchased "partial window" seats (which were previously undisclosed to passengers) are included in the class definition, which encompasses all seats with "severely misaligned windows that are not reasonably usable." FAC ¶¶ 2, 70. Not only have certain Plaintiffs likely experienced a "partial window" seat, but Plaintiffs have seen substantial post-litigation evidence that several so-called "partial window" seats have no usable window. Plaintiffs cannot be expected to take United at its word that: (i) it has now fairly and accurately classified its seats, and (ii) no passengers who previously sat in them are entitled to relief. And, because United has already identified these seats and is currently designating them as "partial window" seats on its new booking process, its claim of undue burden lacks merit. Requiring production of responsive information is straightforward and proportional to the needs of the case, and permitting United to withhold all such evidence would significantly prejudice Plaintiffs and prevent them from testing a core component of United's defenses.

## II.      Documents Relating to United's Seat Selection Fees Are Necessary and Relevant to Plaintiffs' Potential Damages Models

*Second*, United refuses to produce discovery related to the seat fees it charges for passengers who purchased Windowless Window Seats, to the extent that those fees were bundled with other upgrades (*i.e.*, an upgrade from Basic Economy to Economy, or an upgrade to a premium class). In doing so, United arbitrarily attempts to constrain discovery only to the subset of class members who paid a non-bundled, standalone seat selection fee to select a windowless seat. Exhibit A (RFP 18, 25).

As explained in the FAC, a typical United passenger who wishes to attain the ability to select a window seat on a flight generally pays a fee to upgrade from Basic Economy to Economy, which entitles them to select a seat, and provides other bundled benefits such as earlier boarding. FAC ¶ 22. After purchasing that upgrade, a passenger may then buy a comparatively more expensive fee to select a seat in the "preferred" or "Economy Plus" section of the plane. *Id.* ¶¶ 23-27. Across several RFPs (*e.g.*, RFP 18 & 25), United objects to discovery associated with the former fee—the upgrades from Basic Economy to Economy seats—ostensibly because passengers in Basic Economy can instead pay a separate and specific line-item fee to select a seat. That is no basis to refuse productions. Although the putative class includes passengers who paid the standalone seat-selection fee, a substantial portion of the class (including certain Plaintiffs) instead purchased the bundled upgrade from Basic Economy to Economy that allowed them to select a window seat. Discovery into how United prices and values its seat selection fees across varying types of bundled and unbundled upgrades is therefore relevant and material to several basic elements of the case and in formulating Plaintiffs' damages model.

Relatedly, in response to RFPs 18 and 25, United objects to the production of documents related to its seat fees to the extent that it "includes amounts paid by passengers for business or first class seats," ostensibly because those passengers do not pay *extra* to select a seat. Ex. A. United even refuses to identify Windowless Window Seats in the first class cabin (RFP 1). United claims that passengers in business or first class "pay for myriad benefits associated with those fare classes." (Ex. A at 1). But United markets "seat selection" as one of the included benefits associated with a business class fare.[1] And as alleged in the FAC, windowless seats appear in premium cabins, and passengers' seat selection fees are necessarily bundled into their premium upgrade fees. Indeed, United recently began selling

---

[1] *See, e.g.*, United Polaris, https://www.united.com/en/us/fly/travel/inflight/united-polaris.html.

new lower-priced premium class tickets that do not have free seat selection, which shows that United can (and does) disaggregate the value of seat selection for premium class fares.[2]

### III.    United's Marketing Materials Relating to Window Seats Are Relevant to United's Defenses, Certain Elements of Plaintiffs' Claims, and to Plaintiffs' Damages Models

*Finally*, United refuses to produce marketing, sales, and promotional materials that reference a "window" or "window seat" based on its contention that responsive documents are irrelevant. Exhibit A (RFP 10). Responsive materials are squarely relevant in several independent ways.

Initially, the crux of United's defense to date in this litigation is its contention that it did not undertake commitments to provide windows. ECF 32. For instance, one of its core dismissal arguments is that United's labeling of "window seats" supposedly "cannot reasonably be interpreted [by passengers] to guarantee a window view." *Id.* at 8. Consequently, United's marketing, sales, and promotional materials concerning window seats are highly probative of the merits of United's defense. In short, United cannot simultaneously argue that Plaintiffs and class members cannot interpret "window seat" to mean they are entitled to a "window view," but that it need not produce discovery concerning the very materials that United uses and disseminates to shape consumer understandings.

More broadly, United's marketing, sales, and promotional materials are probative of Plaintiffs' and class members' reasonable understandings of what they were purchasing when they selected a window seat, and the documents are thus salient to issues of contract formation and interpretation. Reasonable consumer understandings and expectations are fundamental to Plaintiffs' implied-in-fact contract claim (Count 3), which considers the "totality of circumstances" surrounding the parties' intentions. *E.g.*, *Enloe Med. Ctr. v. Principal Life Ins. Co.*, 2011 U.S. Dist. LEXIS 146194, at *13-18 (E.D. Cal. Dec. 19, 2011). And on top of the interpretative issues United's defenses have put at issue, responsive materials are probative of Plaintiffs' express contract claims (Counts 1 & 2)—especially if, for example, the Court were to find contractual ambiguity. *E.g.*, *Cox v. Spirit Airlines*, 341 F.R.D. 349, 357-371 (E.D.N.Y. 2022) (denying summary judgment and granting class certification for breach claim against airline; construing extent of contractual obligation by relying on evidence of reasonable consumer expectations, how airline presented baggage fees, and how airline used the term "baggage" in various contexts); *O'Callaghan v. Arm Corp.*, 2005 U.S. Dist. LEXIS 12889, at *6 (N.D. Ill. June 8, 2005) (breach claim premised on airline's duty to provide legroom as "stated in [an] advertisement").

Finally, these materials are also relevant to determining expectation damages. As outlined in the FAC and explained above, the ability to select a window seat on a United flight is generally a "bundled" benefit that is purchased alongside other flight upgrades. Thus, marketing materials may indicate which benefits drove the purchase decision, support allocation of value across components of the purchase, and demonstrate whether and to what extent the seat selection feature was a core selling point of the bundled upgrade. Thus, United's relevance objection should be overruled.

Respectfully Submitted,

*Carter E. Greenbaum*

Carter E. Greenbaum
*Counsel for Plaintiffs*

---

[2] United, *United to Introduce Tiered Fare Categories, Giving Customers More Options Across Every Type of Ticket* (April 3, 2026), https://www.united.com/en/us/newsroom/announcements/cision-125454.