RILEY SAFER HOLMES & CANCILA LLP

Sondra A. Hemeryck
312-471-8700
shemeryck@rshc-law.com

June 22, 2026

**Via ECF and Hand Delivery**
Hon. James Donato
United States District Court for the Northern District of California
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: *Brenman et al v. United Airlines, Inc.*, No. 3:25-cv-06995 (N.D. Cal.)**

Dear Judge Donato:

Pursuant to this Court's Order (ECF 63), Defendant United Airlines, Inc. ("United") submits the following response to Plaintiffs' letter dated June 9, 2026 (ECF 62, the "Letter").

## I. The Court has already considered Plaintiffs' claims of prejudice regarding the date by which United anticipates substantially completing its document production.

On May 27, 2026, the parties filed a joint stipulated request to extend the September 3 fact discovery deadline by 30 days. ECF 57. As support, Plaintiffs submitted a declaration explaining that "United has been producing responsive documents and data on a rolling basis, but has advised Plaintiffs that it will not be able to substantially complete productions . . . until July 15, 2026." ECF 57-2 ¶ 7. Plaintiffs declared that they needed to serve "additional" discovery requests on United, *id.* ¶¶ 6, 8, and claimed that a 30-day extension of the discovery deadline was "require[d]" to enable the parties "to substantially complete document discovery before proceeding to depositions," *id.* ¶ 10. The joint stipulation further stated that the parties "anticipate collectively conducting 15 or more depositions," and noted that "the current case schedule would provide only approximately six weeks"—more specifically, 50 days—"following United's substantial completion target date to review all document productions, identify deponents, and schedule and conduct all fact depositions." ECF 57 at 2.

The Court denied the parties' requested extension on June 5, 2026. ECF 60. United thus understood the Court to have determined that the parties should be able to complete discovery within the current schedule notwithstanding Plaintiffs' concerns with the July 15th date by which United expects to substantially complete its production of documents responsive to Plaintiffs' first requests for documents, and United has been working diligently toward that goal.

Plaintiffs, in contrast, decided to repackage the *exact same concerns* into a motion asking the Court to order United to complete its production three weeks earlier. Just as before, Plaintiffs contend that the July 15th date will leave them just "50 days" to (i) review United's document productions, (ii) identify deponents, (iii) conduct and defend at least 15 depositions and (iv) serve additional discovery requests on United. Letter at 1. Nothing has changed.

The Court has already considered these concerns and declined to modify the discovery schedule as an accommodation. Plaintiffs' concerns likewise do not justify forcing United to

expedite an already aggressive production timeline—particularly where, as explained below, Plaintiffs played a substantial role in creating the very timeline about which they now complain.

## II. Plaintiffs' Letter omits their own role in delaying United's email production.

Plaintiffs correctly note that United served its responses to Plaintiffs' first set of document requests on Feb. 9, 2026. But Plaintiffs' "factual background" omits what happened next to make it appear as though United simply sat on its hands over the past four months. In fact, at Plaintiffs' request, United prioritized searching for and producing categories of documents *other than* emails. The parties did not even reach agreement as to search terms for emails until last month—and only then because *United pressed Plaintiffs* to finally address them so that it could begin the process of collecting, reviewing, and producing emails. A more accurate "factual background" is below:

- Following meet and confer discussions in February, Plaintiffs asked United in early March to prioritize searching for and producing categories of documents *other than* emails, stating: "[W]e can continue to negotiate search terms search terms [*sic*], and productions of such requests, while prioritizing the above [non-email searches]."

- United did what Plaintiffs requested, focusing on searching for, collecting, and producing a massive amount of data. Among other things, United produced every historical version of its Contract of Carriage dating back to 2018; the precise location of exterior row seats with obstructed windows across all of United's aircraft; seat maps for every aircraft in United's fleet that has such seats, both in image and data formats; non-privileged internal audit documents, including photographs relating to exterior row seats with obstructed windows across United's fleet; extensive documents and data regarding Plaintiffs' individual travel with United; and comprehensive data for each passenger who allegedly paid additional consideration for such a seat from 2019-2025.

- United also continued to meet and confer with Plaintiffs about both custodians and search terms, but Plaintiffs kept requesting additional information before they would agree to search terms, as evidenced by Plaintiffs' email from April 14: "To assist us in the exchange of search terms and custodians, can you please produce . . ."

- On April 22, Plaintiffs were still delaying discussion of search terms, suggesting that the parties "identify custodians first" before exchanging search terms.

- On April 23, United proactively proposed both the search terms and the custodians.

- On May 1, within roughly a week of United's proposal, the parties had reached substantial agreement as to the search terms and custodians, thereby allowing United to begin collecting, reviewing, and producing emails and related documents.

- Since that time, United has produced, on a rolling basis, nearly 1,900 documents from its custodial searches of emails and related documents (more than 17,000 pages).

- On May 22, United informed Plaintiffs it could "commit to a substantial completion deadline of July 15" for its production responsive to Plaintiffs' first document requests.

These facts distinguish this case from the two cases cited by Plaintiffs. In *Patagonia, Inc. v. Anheuser Busch, LLC*, for example, the defendant refused to give the plaintiff "a date or 'reasonable time' for [its] production" and asked the court not to order any date for substantial completion. Order at 3, Case No. 2:19-cv-02702-VAP-JEM (C.D. Cal. Feb. 19, 2020) (ECF 65). Here, in contrast, United has provided and is working toward a defined date for the substantial completion of its document production. Likewise, whereas the defendant in *Wren v. Transamerica Life Insurance Co.* only began producing documents once the plaintiff filed a motion to compel and the Court found "no reason" why the defendant could not have started producing emails sooner, No. 5:21-CV-00178-JGB-SPX, 2024 WL 5317297, at *5 (C.D. Cal. Nov. 13, 2024), United started its production here on March 16, 2026, more than *two months* before the present motion was filed, *see, e.g.*, ECF 57-2 ¶¶ 7–8, and the discussion above demonstrates that any delay in United's production of emails is largely attributable to Plaintiffs. Plaintiffs' motion to compel should be denied for this reason alone. *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D. Cal. 1996) (denying plaintiff's motion to compel expedited discovery because "any time pressures [plaintiff] faces were brought about by [plaintiff's] own delays").

## III. United is diligently proceeding with discovery in an effort to comply with the July 15 substantial competition date.

Although Plaintiffs claim United "has had more than seven months to collect, process, review, and produce responsive materials," Letter at 3, in fact just *five weeks* elapsed between the parties' agreement on search terms and custodians (May 1) and Plaintiffs' motion (June 9).

Since May 1, United has collected more than 60,000 documents hitting on the agreed search terms, with still more documents to be returned in response to additional search terms as to which the parties presently are conferring. United is working with a team of contract attorneys, in addition to attorneys at the undersigned counsel's firm, to review and assess the collected documents for responsiveness and privilege.

The production timeline is further complicated by United's obligation to protect its customers' personal identifiable information ("PII"). Class certification has not been granted in this case, nor has any class certification motion been filed. Thus, Plaintiffs are not entitled to information regarding the identity of United's customers. United accordingly is redacting PII from responsive documents before they are produced, which necessarily adds time to the review process.

United is making every reasonable effort to substantially complete its production of documents responsive to Plaintiffs' first set of requests for production by July 15 so that the parties can complete fact discovery by September 3.

For all these reasons, United respectfully requests that Plaintiffs' motion be denied.

Sincerely,

Sondra A.

Sondra A. Hemeryck
*Attorney for Defendant United Airlines, Inc.*