GREENBAUM OLBRANTZ LLP

**Casey Olbrantz**
244 Fifth Avenue, Suite C221
New York, NY 10001
casey@greenbaumolbrantz.com
(646) 818-0913 (Direct)

August 21, 2026

Via ECF

Honorable James Donato
United States District Court, Northern District of California
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: *Brenman et al. v. United Airlines, Inc.*, Case No. 3:25-cv-06995 (N.D. Cal.)**

Dear Judge Donato,

I write on behalf of Plaintiffs in the above-captioned matter pursuant to Section 18 of the Court's Standing Order for Discovery in Civil Cases to raise discovery disputes that the parties have been unable to resolve after telephonic conferrals. The underlying requests are excerpted as Exhibit 1.

## I. United Should be Required to Produce Data for Putative Class Members Who Obtained Seat Selection Rights by Purchasing United's "Standard Economy" Bundled Upgrade

Plaintiffs are forced to seek relief because, despite this Court's prior order compelling United to produce responsive discovery concerning "bundled seat upgrades" (ECF 55), United is refusing to produce data concerning passengers who paid for a bundled upgrade from Basic Economy to Standard Economy when *initially* purchasing a flight. Such passengers comprise a significant proportion of the putative nationwide class, and include one named Plaintiff. United apparently interpreted the Court's prior order as requiring the production of data concerning only passengers who purchased the bundled upgrade to Standard Economy *after* the initial time of booking; however, there is no legitimate basis for that distinction in Plaintiffs' discovery request, the Complaint, or in the Court's previous order.

Plaintiffs' Request for Production 3 seeks transaction-level data concerning all putative class members' experiences with windowless seats. Ex. 1. United initially agreed to produce some categories of responsive data, but refused to produce other categories. On April 9, 2026, Plaintiffs moved the Court for relief on several grounds. ECF 49. In relevant part, Plaintiffs moved to compel the production of discovery, across its RFPs, "related to the seat fees it charges for passengers who purchased Windowless Window Seats, to the extent that those fees were bundled with other upgrades (*i.e.*, an upgrade from Basic Economy to Economy…)." ECF 49 at 1-2. Plaintiffs explained that "the bundled upgrade from Basic Economy to Economy" is relevant because the upgrade includes the ability "to select a window seat." ECF 49 at 2. For example, United's own website explicitly states that "Basic Economy" passengers get "more benefits" if they "upgrade to [Standard] Economy," including the option to "Choose your own seat." In response, United argued that it need not produce information concerning Standard Economy because people who upgrade from Basic Economy to Standard Economy were "not paying a 'seat fee,'" but "paying for a different class of fare" that entailed bundled benefits. ECF 51 at 2. On May 18, 2026, the Court rejected United's arguments concerning "seat fees" and Standard Economy, and ordered, in relevant part, that "United is directed to produce the documents plaintiff Brenman requested regarding … bundled seat selection fees." ECF 55.

United produced extensive data after the Court's order, and explained in a June 26 interrogatory response that it produced transactional data for each relevant passenger who paid "**to upgrade from Basic Economy to Standard Economy**." Consequently, Plaintiffs reasonably concluded that United produced data for all putative class members who bought the bundled upgrade from Basic Economy to Standard Economy, which was consistent with the Court's order. The data United produced is highly voluminous, and Plaintiffs have been evaluating it with expert assistance in advance of expert disclosures in October. On August 13, Plaintiffs sought guidance from United and reported that they were struggling to identify passengers who upgraded to Standard Economy. United responded that the produced data included passengers who upgraded to Standard Economy *after* initially booking Basic Economy. On August 16, United confirmed that it did not produce data concerning passengers who, like Plaintiff Pawlowski, upgraded from Basic Economy to Standard Economy *at the time of booking*.

The parties met and conferred on August 17. United claimed that it understood that Plaintiffs were exclusively seeking data concerning passengers who upgraded to Standard Economy *after* initially buying a Basic Economy flight. But Plaintiffs never limited their requests in such a way. United also claimed that Plaintiffs had supposedly known about "this issue" since April (*i.e.*, before the Court's order on the letter motion to compel), but United *never* previously clarified that it was drawing this distinction. Instead, United apparently assumed, unilaterally, that Plaintiffs were not seeking data concerning a larger group of putative class members who purchased the Standard Economy upgrade during the initial booking.

There is no basis for that distinction. United's justification for withholding data is that United supposedly draws an internal distinction between the value of pre-booking and post-booking upgrades from Basic Economy to Standard Economy. That is a distinction without a difference. At the time of booking, passengers are presented with the option to choose Basic Economy, which does not allow seat selection without paying an additional standalone fee, or Standard Economy, which includes seat selection and other bundled benefits. Passengers who initially purchase a Basic Economy fare can purchase the very same upgrade to Standard Economy after booking. Whether a passenger upgraded *during* the initial booking or *after* does not alter the substance of the transactions. Both sets of passengers paid an upgrade fee before their flights to obtain the same benefits. And United's implicit position that data concerning post-booking upgrades is responsive to RFP 3, but that data concerning initial-booking upgrades is not, is both arbitrary and specious.

Yet, United refuses to supplement its production. It has not asserted that the withheld data is irrelevant or that production is unduly burdensome. Instead, United asserts merely that it is "too late" for Plaintiffs to raise this issue. That is wrong. Under Civil L.R. 37-3, the deadline to file "motions related to fact discovery" is "7 days after the fact discovery cut-off," which is September 10. *Davis v. Pinterest, Inc.*, 2021 U.S. Dist. LEXIS 218515, at *3-4 (N.D. Cal. Nov. 8, 2021) (motion to compel was timely merely because it was served before the close of fact discovery). And even if the fact discovery period were closed, there would be ample cause to excuse untimeliness. *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, 2008 U.S. Dist. LEXIS 54182, at *6 (N.D. Cal. July 16, 2008) (good cause to hear discovery motion even if it were untimely). United has identified no prejudice from producing the omitted data, which concerns the same request and kinds of transactions it has been producing. Any delay in raising this dispute has no apparent impact on the proceedings, and Plaintiffs raised the issue promptly upon discovering it, well before the fact-discovery cutoff. The justification for any delay is also compelling: United's interrogatory response expressly represented that its production included passengers who paid "to upgrade from Basic Economy to Standard Economy," without disclosing United's private hair-splitting exclusion of passengers who purchased Standard Economy as part of their initial booking. Plaintiffs reasonably relied on that representation, which

comported with the Court's prior discovery order, and discovered the omission only through their expert-assisted analysis of United's voluminous production, after which they promptly sought clarification and raised the issue. These circumstances demonstrate Plaintiffs' good faith and diligence.

## II. United Should Be Compelled to Provide Testimony and Narrowly Tailored Documents Concerning How Its Agents Were Supposed to Address Requests for Window Seats

Plaintiffs separately request that United be compelled to provide testimony concerning Topic 5 of Plaintiffs' Rule 30(b)(6) deposition notice, which concerns "United policies, procedures, guidance, marketing materials, and employee/agent training materials concerning the sale and description of window seats" across various customer-facing components of its organization. Ex. 1. Relatedly, Plaintiffs request that, in response to RFP 15, United be compelled to produce any scripts, standardized training materials, or standardized policy documents provided to United gate agents, ticket counter agents, call center agents, and/or online customer care representatives concerning how to address customer requests to be seated in, or moved to, window seats. Ex. 1. United objects that Topic 5 is both overbroad and irrelevant, and it refuses to provide testimony except concerning customer complaints and requests for refunds or compensation. *Id.* United also objects that RFP 15 is irrelevant, and previously objected that it is overbroad, although Plaintiffs narrow it through this letter motion.

The subject matter of the testimony and documents sought is both simple and relevant. The crux of United's core defense is that it does not sell window seats. Plaintiffs seek to understand how United instructed its agents—including call center employees, gate and ticket counter agents, and online booking agents—to describe window seats and respond to customers who sought to be assigned one. Such evidence bears directly on how United itself understood and used the terms "window" and "window seat," what United manifested to passengers during the sales process, and how its conduct fostered class members' reasonable understandings of those terms. For example, in *Cox v. Spirit Airlines*, the court determined that it was ambiguous whether the price of an airplane ticket included the right to have free carry-on baggage, and the court thus analyzed classwide extrinsic evidence to evaluate class members' reasonable expectations, including by analyzing Spirit Airlines' usage of the term "baggage" in various contexts. 341 F.R.D. 349, 357-71 (E.D.N.Y. 2022). Indeed, the Court has already overruled United's substantially similar relevance objections to providing discovery concerning marketing, sales, and promotional materials related to "window seats." ECF 55. Moreover, the testimony sought and the documents requested by RFP 15 (as narrowed) are targeted and should impose little burden. Standardized scripts, policies, and training materials provided to discrete categories of customer-facing employees should be readily identifiable and centrally maintained. And producing a designee to speak about such documents—and about the basic underlying concept of how an airline makes window seats available to its passengers—ought to be straightforward and simple.

For these reasons, Plaintiffs respectfully request that the Court order United to: (1) produce the withheld transactional data responsive to RFP 3 concerning Standard Economy passengers, (2) designate a Rule 30(b)(6) witness prepared to testify on the objected-to portions of Topic 5, and (3) produce, in response to RFP 15, any scripts, standardized training materials, and standardized policy documents provided to United gate agents, ticket counter agents, call center agents, and/or online customer care representatives concerning how to address customer requests for window seats.

Respectfully Submitted,

*/s/ Casey J. Olbrantz*
Casey J. Olbrantz (*Admitted PHV*)
*Counsel for Plaintiffs*

**EXHIBIT 1: Excerpted Discovery Requests**

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 3**:

Your transaction-level ESI and data, by passenger and day (in machine-readable format such as *.csv, *.txt, or other native flat file format) during the period January 1, 2017 through the present for all flights to, from, or within the United States to passengers who sat in Windowless Window Seats. Such data shall include: (a) customer identification information, including but not limited to name, address, email address, customer number, or frequent flyer account number; (b) dates of transaction and travel; (c) itinerary number; (d) Ticket numbers; (e) base travel fare; (f) the kind and amount of each and every Seat Fee; (g) the total monetary sum of the transaction, as well as the form of payment (including, for example, the redemption of rewards, utilization of status, or benefits); (h) refunds paid or credits issued by You; (i) any discounts associated with the transaction; (j) Coupon number; (k) for conjunction tickets, a method to identify the ticket as a conjunction ticket and link with ticket numbers; (l) passenger seat number(s); (m) the relevant aircraft model and unique registration number; and (n) identification of the Passenger Booking Interface through which the passenger purchased the Ticket.

**DEFENDANT'S RESPONSE**:

In addition to the foregoing Objections to Definitions and Instructions, United objects to this Request on the ground that the request for 14 categories of information for each potential nationwide class member spanning more than eight years is overbroad, unduly burdensome and not proportional to the needs of the case. United further objects that the Request is overbroad, unduly burdensome and seeks discovery that is not relevant to any party's claim or defense or proportional to the needs of the case in that it requests information relating to Exterior Row Seats having a window that is partially obstructed, and information about "Seat Fees," which Plaintiffs have improperly defined to include not just consideration paid in the form of cash or MileagePlus miles, but also "credit card benefits, status, or the like." Responding further, United objects to this Request on the ground that it is overbroad and not proportional to the needs of this case to the extent it requests the "unique registration number" of each aircraft and to the extent it seeks data and information from as early as January 1, 2017. United further objects to Plaintiffs' request for "the total monetary sum" of each transaction, "as well as the form of payment (including, for example, the redemption of rewards, utilization of status, or benefits)," on the ground that the "redemption of rewards" and "benefits" are vague and ambiguous, and "utilization of status" is not "consideration" paid by a passenger to select a seat. United further objects that the request for "base travel fare" is unduly burdensome and seeks discovery that is not relevant to any party's claim or defense or proportional to the needs of the case because fares generally are not broken out by travel segments (meaning that, for example, a passenger could have an Exterior Row Seat without an exterior view only on one leg of a two-leg flight, but with a single "base fare" for that itinerary), and because Plaintiffs' claims concern additional fees paid beyond the base fare to select a seat. United further objects that the phrase "discounts associated with the transaction" is vague and ambiguous, and (assuming Plaintiffs intend to refer to discounted base fares that a passenger may receive), the request for such information is irrelevant for the same reason that Plaintiffs' request for "base travel fare" is irrelevant. United further objects to this Request on the ground that it requests numerous categories of customer-identifying information, which is both premature, and would invade the privacy of rights of such individuals, who are not and have not agreed to be parties to the action, until and unless a class is certified. United further objects that

this Request seeks confidential and proprietary information of United, which United objects to producing absent the entry of an appropriate confidentiality protective order that allows United to designate such information as Attorneys' Eyes Only.

Without waiving these objections, United is willing to meet and confer with Plaintiffs regarding the scope of this Request.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 15:**

All Documents and Communications concerning Your policies, procedures, practices, and training materials for customer service representatives, booking agents, or other employees or agents regarding how to describe, sell, address issues and complaints, and/or issue refunds or compensation in relation to aircraft windows and/or Windowless Window Seats.

**DEFENDANT'S RESPONSE:**

In addition to the foregoing Objections to Definitions and Instructions, United objects to this Request on the ground that the request for "all Documents and Communications" related to numerous policies, procedures, practices, and training materials related to "aircraft windows" (which could include myriad issues having nothing to do with Plaintiffs' claims) is facially overbroad and seeks discovery that is not relevant to any party's claim or defense or proportional to the needs of this case. United further objects that this Request is overbroad and seeks discovery that is not relevant to any party's claim or defense or proportional to the needs of this case because it seeks discovery relating to Exterior Row Seats having a window that is partially obstructed. United further objects to this Request because any materials concerning how to "describe" or "sell" bear no relevance to Plaintiffs' claims, which focus squarely on United's alleged digital representations online or through the United mobile app, not alleged promises made by live employees, and which are in any event governed entirely by the CoC. United further objects that this Request seeks confidential and proprietary information of United, which United objects to producing absent the entry of an appropriate confidentiality protective order that allows United to designate such information as Attorneys' Eyes Only. In addition, United objects to this Request to the extent it purports to call for the production of documents protected by the attorney-client privilege and/or the work product doctrine. Without waiving these objections, and subject to the entry of an appropriate confidentiality protective order, United will produce nonprivileged documents describing or constituting any United "policies, procedures, practices, and training materials for customer service representatives" with respect to how to address issues, complaints, or refunds related to Exterior Row Seats that lack an exterior window, for passengers who paid Seat Fees in the form of cash or MileagePlus miles during the period from January 1, 2019 through September 5, 2025, to the extent such documents exist and can be located by means of a reasonable search. United will not search for or produce other documents sought by this Request.

**PLAINTIFFS' NOTICE OF 30(b)(6) DEPOSITION TOPIC NO. 5:**

United policies, procedures, guidance, marketing materials, and employee/agent training materials concerning the sale and description of window seats during the Relevant Period. This Topic includes materials provided to employees, agents, and third-parties involved in: (a) revenue management; (b) reservations (including through third-party booking channels); (c) digital commerce; (d) customer experience; (e) airport operations; (f) in-flight service; (g) customer care; (h) refunds and compensation; and (i) MileagePlus or co-branded credit-card benefits.

**DEFENDANT'S RESPONSE**:

In addition to the foregoing Objections to Definitions, which are expressly incorporated herein, United objects to this Topic as overbroad in that it encompasses nine separate functional areas—(a) revenue management; (b) reservations (including through third-party booking channels); (c) digital commerce; (d) customer experience; (e) airport operations; (f) in-flight service; (g) customer care; (h) refunds and compensation; and (i) MileagePlus or co-branded credit-card benefits—and seeks "policies, procedures, guidance, marketing materials, and employee/agent training materials" across all such areas. The breadth of this Topic renders it essentially a request for testimony regarding every aspect of United's business operations that may tangentially relate to the sale of seats, and makes compliant designation not feasible.

United further objects that this Topic seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. Plaintiffs claim United breached an alleged contractual promise that their seats would have an exterior window view. Information regarding any "policies, procedures, guidance, marketing materials, and employee/agent training materials concerning the sale and description of window seats" that United may or may not have provided to "employees, agents, and third-parties involved in" the various functional areas listed in this Topic has no bearing on whether United communicated to Plaintiffs a contractually enforceable promise that any particular seat would have an exterior window view, or whether United breached any such alleged contractual obligation. The contract that is made when a passenger purchases a ticket for transportation on a United flight is the Contract of Carriage, which does not incorporate any terms outside the Contract of Carriage other than those printed on or in the passenger's ticket, eticket receipt, or (prior to February of 2026) the ticket jacket. United further objects to subpart (i) to the extent it seeks testimony regarding materials related to "MileagePlus or co-branded creditcard benefits," as such benefits are not relevant to any party's claim or defense.

Without waiving these objections, United will present, at a mutually convenient time and place, one or more corporate representatives to testify about non-privileged information known or reasonably available to United regarding policies, procedures, and training materials, to the extent any existed during the time period from January 1, 2019 to November 5, 2025, concerning how to respond to customer complaints and/or requests for refunds or compensation relating to seats next to the fuselage of an aircraft having either no exterior window view or a partially obstructed window.