RILEY SAFER
HOLMES & CANCILA LLP

Sondra A. Hemeryck
312-471-8700
shemeryck@rshc-law.com

August 31, 2026

**Via ECF and Hand Delivery**
Hon. James Donato
United States District Court for the Northern District of California
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: *Brenman, et al. v. United Airlines, Inc.*, No. 3:25-cv-06995 (N.D. Cal.)**

Dear Judge Donato:

I write on behalf of Defendant United Airlines, Inc. ("United") in response to Plaintiffs' amended letter motion to compel discovery (Dkt. 83).

## I. Plaintiffs' Request for Standard Economy Data Is Untimely, Irrelevant, and Burdensome.

This case purports to be about passengers who paid additional consideration, on top of their airfare, to pick a seat. More than four months ago, United told Plaintiffs that it would not produce data about passengers who (i) purchased a Standard Economy ticket at the time of booking and (ii) never paid any upgrade or seat fee. United never wavered from this position, nor did Plaintiffs push back, as the data is not relevant. Yet now, on the eve of the close of discovery, Plaintiffs belatedly seek to compel production of this irrelevant data. The Court should deny their motion.

On April 9, 2026, Plaintiffs moved to compel discovery related to "seat fees … bundled with other upgrades," such as upgrades from Basic Economy to Standard Economy. Dkt. 49 at 2. In its response, United distinguished between three categories of passengers: (1) those who buy a Basic Economy ticket and then pay a seat fee, separate from their airfare, to choose a seat (for whom United had already agreed to produce data); (2) those who buy a Basic Economy ticket and then, in a later transaction, upgrade to Standard Economy, which includes the ability to pick a seat, among other benefits of Standard Economy (United understood Plaintiffs to refer to those upgrade fees as "bundled" seat fees); and (3) those who simply purchase a Standard Economy seat at the time of booking and do not engage in *any* additional transactions with United, or pay *any* additional amount over their airfare, to pick a seat. *See* Dkt. 51 (noting that "Passengers who purchase Standard Economy fares … select their seats in the Economy cabin without paying any seat fee.").

On May 18, 2026, the Court ordered United to produce the documents Plaintiffs requested "regarding … *bundled seat selection fees*." Dkt. 55 (emphasis added). In accordance with that Order, United thereafter produced data regarding passengers who purchased a Basic Economy ticket and paid, in a separate transaction, to upgrade to Standard Economy. In other words, data for the second category of passengers above, but not the third. On June 26, 2026, United supplemented its interrogatory responses, explaining that it had produced data relating to passengers who "paid consideration" "to select an Economy Plus or Preferred Economy seat, to *upgrade* from Basic Economy to Standard Economy, to *purchase or upgrade* to a premium cabin

seat or, if the passenger had a Basic Economy ticket, to select a seat." United's responses communicated that, consistent with its understanding of Plaintiffs' April 9th discovery letter brief and the Court's Order, it was *not* producing data for passengers who simply purchased a Standard Economy ticket. That is also apparent from the data itself, which Plaintiffs have had since June 15.

Under Local Rule 37-3, "[d]iscovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown." The good cause standard "primarily considers the diligence of the party seeking the amendment." *Our Children's Earth v. Leland Stanford Junior Univ.*, No. 13-CV-00402-EDL, 2015 WL 12964638, at *1 (N.D. Cal. Oct. 29, 2015). The commentary to the Rule further instructs that "[c]ounsel should initiate discovery requests … sufficiently in advance of the cut-off date." That is because "[p]arties may not unduly delay in filing motions to compel no matter their merit." *In re NFL's "Sunday Ticket" Antitrust Litig.*, No. ML 15-02668 PSG (SKX), 2024 WL 2075063, at *2 (C.D. Cal. Apr. 25, 2024) (citation omitted).

Plaintiffs now ask for substantial, additional, burdensome data. They failed to raise this issue "sufficiently in advance" of the close of fact discovery under the local rules and, given the burdensome nature of their request, any response would necessarily be outside the discovery cut-off. Nor have Plaintiffs shown good cause to excuse their untimeliness. United informed Plaintiffs of its position in April and reiterated it in June, yet Plaintiffs waited months to raise this issue. Thus, their motion should be denied as untimely. *See Sunday Ticket Litig.*, 2024 WL 2075063, at *2 (denying motion to compel as untimely where "Plaintiffs … could have raised their concerns far earlier if they had diligently reviewed Defendants' discovery responses.").[1]

Further, the data Plaintiffs seek is not relevant. Generally, "[u]ntil the class is certified, the operative definition of the putative class is in the complaint." *Trevino v. ACB Am., Inc.,* 232 F.R.D. 612, 615 (N.D. Cal. 2006). Plaintiffs' First Amended Complaint, Dkt. 24 ("FAC"), describes the class of affected passengers as those who "*purchased airfare* from United and remitted *additional consideration* to obtain a window seat." FAC ¶ 70 (emphasis added). The putative class is those who Plaintiffs claim paid additional consideration, over and above their airfare, to pick a seat. That description does not encompass the passengers whose data Plaintiffs seek now, namely, customers whose sole transaction was the purchase of Standard Economy airfare. Because Plaintiffs seek documents relating to passengers outside the class as they defined it, their motion should be denied. *See Trevino*, 232 F.R.D at 615 (limiting discovery to class members within the defined class).

This is not "hair-splitting." Dkt. 83. There is a meaningful distinction between passengers who purchased a class of airfare from the outset and those who paid "additional" consideration to change something about their original booking. The definition of "upgrade" is "to get something of better quality than the original." Upgrade, Merriam-Webster, https://www.merriam-webster.com/dictionary/upgrade (last visited Aug. 30, 2026). Standard Economy passengers' "original" booking is a Standard Economy ticket. There is no upgrade.

[1] According to Local Rule 37-3, motions to compel must be filed seven days following the close of fact discovery. A motion filed before that deadline can nevertheless be denied as untimely where the response would be outside the discovery cut-off. *See, e.g.*, *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, No. 16CV01702BLFSVK, 2018 WL 3399574, at *1 (N.D. Cal. May 14, 2018).

Finally, gathering such data would impose an undue burden on United. United has already produced substantial data spanning multiple fare types and multiple years. It should not be asked to assemble even more data at this late date, particularly when that data is wholly irrelevant.

## II. Plaintiffs' Demand for Internal Training Materials is Irrelevant and Burdensome.

Plaintiffs' second demand is equally misguided. As with the first demand, this one is also untimely. Plaintiffs seek documents responsive to Request for Production No. 15, which United objected to in ***February***. Plaintiffs never moved to compel. Plaintiffs cannot use a 30(b)(6) notice as an end run to obtain documents that United objected to producing six months ago.

Further, Plaintiffs seek information that has no connection to any claim or defense in this case. The crux of their claim concerns passengers who book their ticket online or through the United mobile app. There is no allegation in the complaint that any of the named plaintiffs bought their ticket by using a call center. *See* FAC ¶¶ 4 (referring to United's "website and passenger interfaces"); 43–44 (discussing booking through the mobile app); 46–47 (same, website); 57 (referring to terms that appear on "United's *electronic* booking interfaces."). And when United asked Plaintiffs in Interrogatory 7 to identify relevant oral communications with United, Plaintiffs responded: "no such oral representations occurred with respect to their alleged itineraries."

The materials Plaintiffs seek now are distinguishable from the marketing materials they previously sought and United produced. *See* Dkts. 49, 55. Although United does not believe marketing materials are relevant to this breach of contract action, they are at least customer-facing. Internal documents are not. Further, even if any internal training materials such as those Plaintiffs now belatedly seek exist, that would not mean that any United employee said any particular thing at any particular time. And any such conversations would be highly individualized, not universal across class members. For these reasons, too, the case cited by Plaintiffs is inapposite. The extrinsic evidence the Court considered to interpret an ambiguous contract in *Cox v. Spirit Airlines* was industry custom—customer-facing communications, not internal records. 341 F.R.D. 349, 356–57 (E.D.N.Y. 2022). Nor has there been any finding that United's Contract of Carriage is ambiguous. Indeed, the Contract of Carriage does not even include the word "window," so Plaintiffs' argument that the internal training materials they now seek will show "how United itself understood and used the terms 'window' and 'window seat,'" Dkt. 83 at 3, is a non sequitur.

Finally, Plaintiffs have already completed five depositions and noticed five more, each of which will count as one deposition. *See* Court's Standing Order on Civil Discovery ¶ 16(b). Plaintiffs have not shown good cause to exceed the Court's limit on depositions.

Plaintiffs' Motion should be denied in full.

Sincerely,

Sondra A.

Sondra A. Hemeryck
*Attorney for Defendant United Airlines, Inc.*