# EXHIBIT A

**RILEY SAFER HOLMES & CANCILA LLP**
SONDRA A. HEMERYCK (*pro hac vice*)
shemeryck@rshc-law.com
ELI LITOFF (*pro hac vice*)
elitoff@rshc-law.com
JACOB L. KAHN (*pro hac vice*)
jkahn@rshc-law.com
ROBERT P. FOLEY (*pro hac vice*)
rfoley@rshc-law.com
STEVEN E. VOGEL (*pro hac vice*)
svogel@rshc-law.com
1 S. Dearborn Street, Suite 2200
Chicago, IL 60603
Telephone: (312) 471-8700
Facsimile: (312) 471-8701

STEPHEN M. HANKINS (CSB No. 154886)
shankins@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 275-8550
Facsimile: (415) 275-8551

*Attorneys for Defendant*
UNITED AIRLINES, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARC BRENMAN, ROBERT MONROE, and CINDY PAWLOWSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Case No. 3:25-cv-06995-JD<br><br>**DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF DOCUMENT SUBPOENA TO JAKE EMEN** |

PLEASE TAKE NOTICE that Defendant United Airlines, Inc., by and through its undersigned counsel, intends to serve on Jake Emen a subpoena to produce documents.

A copy of the subpoena is attached hereto as Exhibit A. The documents identified in the subpoena must be produced no later than Tuesday, September 1, 2026, at 9:00 a.m. MT, to Hinshaw & Culbertson LLP, Attn: Sondra Hemeryck, 2375 E. Camelback Road, Suite 410, Phoenix, Arizona 85016.

Dated: August 18, 2026

RILEY SAFER HOLMES & CANCILA LLP

By: */s/ Sondra A. Hemeryck*

Sondra A. Hemeryck *(pro hac vice)*
Eli Litoff *(pro hac vice)*
Jacob L. Kahn *(pro hac vice)*
Robert P. Foley *(pro hac vice)*
Steven E. Vogel *(pro hac vice)*
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn Street, Suite 2200
Chicago, IL 60603
Telephone: (312) 471-8700
Facsimile: (312) 471-8701
shemeryck@rshc-law.com
elitoff@rshc-law.com
jkahn@rshc-law.com
svogel@rshc-law.com
rfoley@rshc-law.com

Stephen M. Hankins (CSB No. 154886)
RILEY SAFER HOLMES & CANCILA LLP
shankins@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 275-8550
Facsimile: (415) 275-8551

*Attorneys for Defendant*
UNITED AIRLINES, INC.

# EXHIBIT A

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Marc Brenman et al.<br>*Plaintiff*<br>v.<br>United Airlines, Inc.<br>*Defendant* | ) ) ) ) ) ) | Civil Action No. 3:25-cv-06995-JD |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Jake Emen

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment 1

| Place: Hinshaw & Culbertson LLP, Attn: Sondra Hemeryck<br>2375 E Camelback Rd #410<br>Phoenix, AZ 85016 | Date and Time:<br>09/01/2026 9:00 a.m. MT |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/18/2026

*CLERK OF COURT*

OR

/s/ Sondra Hemeryck

*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* United Airlines, Inc. , who issues or requests this subpoena, are:

Sondra Hemeryck, Riley Safer Holmes & Cancila LLP, 1 S. Dearborn Street, Suite 2200, Chicago, IL 60603

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:25-cv-06995-JD

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❐ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________________________________
______________________________________ on *(date)* ____________ ; or

❐ I returned the subpoena unexecuted because: ______________________
______________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT 1**

**Subpoena to Produce Documents**
**JAKE EMEN**

***Marc Brenman et al.* v. *United Airlines, Inc.***
**U.S. District Court, Northern District of California**
**Case No. 3:25-cv-06995-JD**

## INSTRUCTIONS

1. In providing the documents described in this Attachment, you are requested to furnish all documents available to you, regardless of whether these documents are possessed directly by you, or by your attorneys, employees, agents, investigators, or other representatives.

2. If any of these documents cannot be produced in full, produce to the extent possible, and specify the reasons for your inability to produce the remainder, stating whatever information, knowledge, or belief you have concerning the substance of the contents of such unproduced documents.

3. If any document or thing requested was at one time in existence, but is no longer in existence, you shall state, specifying for each document or thing: (a) the type of documents or thing, (b) the types of information contained therein, (c) the date upon which the document or thing ceased to exist, (d) the circumstances under which the document or thing ceased to exist, and (e) the identity of each person having knowledge or who had knowledge of the contents thereof.

4. To the extent that any request is objected to, you are instructed to set forth all reasons for such objection. If any objection is made only to part of a particular request, that part shall be so specified and documents responsive to all other parts of the request shall be produced. With respect to any document which you claim to be privileged or otherwise immune from production, you are to describe each document in your response as follows: (a) the document's date, (b) its title, (c) the identity of each person who prepared or wrote the document, (d) the identity of each person who received the document, (e) the type of document (for example, memorandum, letter, etc.), (f) the subject matter of the document and the request to which the document is responsive, (g) the type of privilege claimed, and (h) all factual and legal bases for the claimed privilege.

5. The singular form of any word shall include the plural, the masculine form of any word shall include the feminine, and the words "and" and "or" shall be construed both conjunctively and disjunctively.

6. This request is intended to be continuing, requiring you to produce whatever documents responsive to this request that you may subsequently become aware of or obtain.

## DEFINITIONS

1. The word "all" includes "any" and "each," and vice versa, as necessary to bring within the scope of the Request all Documents that might otherwise be construed to be outside the scope of the Request.

2. The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed to be outside the scope of that Request.

3. "Communication" is used in the broadest sense and means any verbal, written, electronic, or other transmission, disclosure, or exchange of words, thoughts, ideas, or images between or among Persons or groups of Persons, whether in person, electronically, by letter, by telephone or by any other means.

4. "Document(s)" means all written, recorded or graphic materials whatsoever, including but not limited to all ESI, all written Communications, and all non-identical copies thereof, construed as broadly as the Federal Rules of Civil Procedure allow, that are in Your possession, custody or control.

5. "Electronically Stored Information" or "ESI" means information or data that are stored, maintained, or accessible in electronic, magnetic, or computer readable format. "ESI" also includes all versions, drafts, and copies of all such information or data whenever any version, draft, or copy is not an identical copy of the original or contains any commentary, notes, markings, metadata, or differences of any kind that are not a part of the original.

6. The word "including" means "without limitation."

7. The phrase "relating to" means constituting, concerning, in connection with, consisting of, embodying, mentioning, describing, memorializing, stating, setting forth, discussing, analyzing, used in considering or evaluating, having any logical or factual connection with or regarding.

8. "Named Plaintiffs" means Marc Brenman, Aviva Copaken, Sean Minyard, Robert Monroe, and Cindy Pawlowski.

9. "Plaintiffs' Counsel" means Greenbaum Olbrantz LLP, Hart McLaughlin & Eldridge, and any other attorneys or law firms representing or who have represented the Named Plaintiffs or any putative class member in connection with this litigation.

10. "Litigation Funder" means Signal Peak Partners, LLC, and any other person or entity that provides funding for or has a financial interest in the outcome of this litigation.

11. "United" means United Airlines, Inc. and its employees.

12. "Exterior Row Seat(s)" means any seat on an aircraft that is adjacent to the fuselage.

13. “You” or “Your” means Jake Emen.

14. “Published Content” means any article, blog post, newsletter, social media post, Instagram Story, Instagram post, TikTok video, tweet or X post, YouTube video, podcast, podcast appearance, or other content published, posted, shared, or distributed by You through any medium, whether online or in print.

## DOCUMENTS TO BE PRODUCED

1. All Communications and Documents relating to Your role, engagement, consulting arrangement, testimony, involvement, or participation in this litigation or the Named Plaintiffs' claims or complaints relating to Exterior Row Seats that lack an exterior window view, including all Communications between You and Plaintiffs' Counsel, any Named Plaintiff, or any Litigation Funder, and any Documents reflecting compensation, payments, fees, or other consideration provided, promised, or expected in connection with this litigation or any work performed relating thereto.

2. All Published Content authored, co-authored, or contributed to by You from January 1, 2022 to the present relating to Exterior Row Seats that lack an exterior window view, airplane seats without windows, obstructed or misaligned airplane windows, or airline seat selection practices, together with all drafts, notes, research materials, source materials, outlines, interview notes, editorial guidance, feedback, and Communications with sources created or collected in connection with such Published Content, including any content created, drafted, or published at the direction of, in consultation with, or at the request of Plaintiffs' Counsel or any Named Plaintiff.

3. All social media posts, including but not limited to Instagram Stories, Instagram posts, tweets or X posts, TikTok videos, and any re-posts, shares, or reposts of third-party content, created, posted, or shared by You from January 1, 2022 to the present relating to Exterior Row Seats that lack an exterior window view, airplane seats without windows, or airplane window-related complaints or experiences, including any posts in which You repost or share content from third parties who tag You or reference Your work.

4. All Communications and Documents from January 1, 2022 to the present relating to Your interactions with any airline, including United, concerning Exterior Row Seats that lack an exterior window view, airplane seats without windows, obstructed or misaligned airplane windows, complaints about seat assignments, or requests for refunds, credits, or compensation, and Your personal experiences with Exterior Row Seats on any airline that lack an exterior window view, including but not limited to booking confirmations, boarding passes, seat assignments, photographs, and videos.

5. All Communications and Documents from January 1, 2022 to the present between You and any journalist, freelance writer, blogger, media professional, or other third party relating to Exterior Row Seats that lack an exterior window view, airplane seats without windows, this litigation, or Your role, engagement, consulting arrangement, or other involvement in this litigation, including but not limited to any group chats, text message threads, or direct messages in which You discussed, referenced, or described Your relationship with Plaintiffs' Counsel or Your work on behalf of any party to this litigation.

6. All Communications and Documents from January 1, 2022 to the present relating to any opinion, analysis, or conclusion You have formed or expressed regarding whether airline passengers reasonably expect a window when they purchase or are assigned a "window seat," including any notes or drafts reflecting such opinions.

7. All Documents sufficient to identify every article, blog post, social media post, podcast, podcast appearance, video, or other Published Content authored or created by You that references or relates to United Airlines in any way from January 1, 2022 to the present.

* * *

**RILEY SAFER HOLMES & CANCILA LLP**
SONDRA A. HEMERYCK (*pro hac vice*)
shemeryck@rshc-law.com
ELI LITOFF (*pro hac vice*)
elitoff@rshc-law.com
STEVEN E. VOGEL (*pro hac vice*)
svogel@rshc-law.com
1 S. Dearborn Street, Suite 2200
Chicago, IL 60603
Telephone: (312) 471-8700
Facsimile: (312) 471-8701
JEFFREY R. WILLIAMS (CSB No. 084156)
jwilliams@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 275-8550
Facsimile: (415) 275-8551

*Attorneys for Defendant*
UNITED AIRLINES, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARC BRENMAN, AVIVA COPAKEN, SEAN MINYARD, ROBERT MONROE, and CINDY PAWLOWSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | **Case No. 3:25-cv-06995-JD**<br><br>~~**[PROPOSED]**~~ **STIPULATED ORDER FOR PRODUCING DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**<br><br>Honorable James Donato |

## 1. PURPOSE AND SCOPE

**1.1 Purpose**. This Stipulated Order for Producing Documents and Electronically Stored Information ("Order") shall govern the production of documents and electronically stored information ("ESI") by the parties and their counsel of record (collectively, the "Parties") in the above captioned litigation and shall be a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable

orders and rules. This Order shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third party. Accordingly, this Order shall be attached to any subpoena issued in this action.

**1.2 Cooperation.** The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**1.3 Liaisons.** The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**1.4 General.** The procedures and protocols outlined herein govern the Production of Documents and ESI by all Parties. The Parties will take reasonable steps to comply with this Order. All Productions made pursuant to this Order are subject to any confidentiality order, protective orders, or privilege orders entered in these Proceedings. Nothing in this Order is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI ("Producing Party") or a Party requesting Documents or ESI ("Requesting Party" or the "Receiving Party").

**1.5 Proportionality of Preservation**. The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a) Only ESI created or received after January 1, 2016 will be preserved;

(b) The parties have exchanged a list of custodians or general job titles or descriptions of custodians, for whom they believe ESI should be preserved. The parties shall add or remove custodians as reasonably necessary;

(c) The parties will agree on the number of custodians per party for whom ESI will be preserved.

**1.6 Limitations and Non-Waiver**. The Parties and their attorneys do not intend by this Order to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine. All Parties preserve their attorney-client privileges, work product protection, and other privileges. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Order shall be construed to affect the admissibility of Documents and ESI. All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at an appropriate time as determined by applicable law and procedures.

**1.8 Modification by Agreement**. Any practice or procedure set forth herein may be varied by agreement of affected Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI. Any Party that seeks to deviate from the protocol set forth herein must obtain leave of the Court to do so unless all Parties otherwise consent in writing. Before seeking the intervention of the Court, the Parties shall meet and confer in good faith regarding any modification.

**1.9 Modification by Order**. Nothing in this Order waives the right of any Party to petition the Court for an order modifying its terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with the counsel for the opposing Party and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Order prior to seeking relief from the Court.

**2. Limitations on Preservation and Discovery**

**2.1 Reasonable Discovery Limits**. The Parties agree to cooperate in identifying appropriate limits on discovery, including limits on the number of custodians, on discoverable data sources, on the relevant period, and on the permissible scope of requests for production, specifically including the permissible scope of requests for emails. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate.

**2.2 United's ESI**. United has informed Plaintiffs that the following data sources are not reasonably capable of being preserved, and/or reasonably accessible, because of undue burden or cost. ESI from these sources will not be preserved, searched, reviewed, or produced without good cause demonstrated by the requesting party:

(a) Deleted, slack, fragmented, unallocated, or other data only accessible by forensics;

(b) Temporary data stored in a computer's random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(c) Online access data such as temporary Internet files, history, cache, and cookies;

(d) Data in metadata fields that are frequently updated automatically, such as last-opened dates;

(e) Data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

(f) Data remaining from systems no longer in use that is unintelligible on systems in use;

(g) Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business;

(h) ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect;

Nothing in this Order shall be construed as a waiver by Plaintiffs of their right to seek discovery from any of the sources identified above, including sources described as not reasonably accessible or not subject to search or production. Plaintiffs expressly reserve the right to request production of such data upon a showing of relevance and proportionality, and to seek further relief from the Court as appropriate.

United has further informed Plaintiffs that the following data sources are not reasonably accessible because of undue burden or cost and ESI from these sources will be preserved but will not be searched, reviewed, or produced without good cause demonstrated by the requesting party:

(a) Back-up data that are substantially duplicative of data that are more accessible elsewhere;

(b) Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium;

(c) Recorded voice messages, including audio, video, or audio-visual information, including telephonic recordings or voicemail (e.g., .wav, .mp3, .avi, .swf, etc.);

(d) Electronic data (e.g., call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), insofar as a copy of such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage) that is accessible;

(e) Logs of calls made from mobile devices;

(f) Server, system, or network logs.

Nothing herein is to suggest that any sources of information or data not specifically excluded here are otherwise discoverable or required to be searched. Unless otherwise agreed to or ordered by the Court, the Parties are not required to obtain a forensic image of the preserved data as long as the native files and associated metadata are preserved. Nothing in this Order shall be construed as a waiver by Plaintiffs of their right to seek discovery from any of the sources identified above, including sources described as not reasonably accessible or not subject to search or production. Plaintiffs expressly reserve the right to request production of such data upon a showing of relevance and proportionality, and to seek further relief from the Court as appropriate.

**2.3 Preservation**. The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. With respect to preservation of ESI, the Parties agree that absent a showing of good cause by the Requesting Party, the Producing Party shall not be required to modify the procedures used by them in the ordinary course of business to backup and archive data; provided, however, that the Producing Party takes reasonable and proportional steps to preserve discoverable ESI in their possession, custody, or control, and that no discoverable ESI currently in a Party's possession, custody or control will be made inaccessible by reason of the continuation of the Party's routine procedures for backing up and archiving data.

**2.4 Search Methodology**. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject

to discovery, including as set forth in section 2.5.

**2.5 Technology-Assisted Review.** The Parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms and protocols, and any technology assisted review ("TAR") or predictive coding prior to using any such technology to narrow the pool of collected documents to a set to undergo review for possible production. The Parties agree to meet and confer as early as possible in the discovery process, to discuss, *inter alia*:

- Search methodology(ies) to be utilized (including but not limited to Boolean searches and technology assisted review/predictive coding);
- Disclosure and selection of all search terms, including foreign language and search terms based upon actual terminology used in the producing party's documents;
- Search protocol;
- The use of TAR or predictive coding and the methodology or data set under which TAR or the predictive coding will be configured; and
- Post-search error sampling and sampling/testing reports for TAR/predictive coding.

The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate. Nothing in this protocol, or the subsequent designation of any search terms, shall operate to limit or expand a Party's production obligations under applicable law, or limit the ability to agree to meet and confer to modify the search terms, criteria, or methodologies as information is obtained and utilized in the course of the litigation.

## 3. FORM OF PRODUCTION

**3.1 Standard Format.** The Parties agree to make rolling productions. Electronically stored information will be produced in single-page TIFF format for black-and-white documents and

in JPEG format for color documents, as described in Appendix A. Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall also be imaged so that this information is captured in the produced image file.

**3.2 Native Files.** Responsive, non-privileged, and unredacted spreadsheets (e.g., Microsoft Excel files) will be produced in native format by default, while responsive, non-privileged, redacted Excel files may be produced either as image files with redacted text or as native files with native redactions. ESI maintained in presentation formats (e.g., Microsoft PowerPoint) will be produced natively if relevant information cannot be displayed in an image, such as animations or embedded audio, and other ESI that is difficult or impracticable to render in image format, including video or audio files, may be produced in native form with a placeholder .TIFF image indicating, "Document Produced Natively."

**3.3 Color.** Documents containing color need not be produced in color. The Producing Party will honor reasonable requests for a color image of a document, if the original document contains color necessary to understand the meaning or content of the document.

**3.4 Redactions.** The Parties agree that, where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated. For redacted documents, the Producing Party will provide only: (1) Production Number Begin; (2) Production Number End; (3) Attachment Begin; (4) Attachment End and (5) Confidentiality.

**3.5 Structured Data.** In the event that information from a structured databases or any documents or data prepared, organized, or managed using any proprietary software are subject to production in this action, that information will be produced in a reasonably usable form or forms, including, but not limited to, comma-separated value files (.csv). To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.

**3.6 Paper Documents.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e.,

paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality over process speed. Settings such as “auto-skewing” and “auto-rotation” should be turned on during the OCR process.

**3.7 Alternative Production Formats.** A Producing Party may, in its discretion, produce ESI in an alternative format, which may include searchable PDF, native format, or a combination of formats, if producing a particular file in TIFF image format is impractical or less efficient. In such cases, the parties will cooperate to arrange for the mutually acceptable production of such documents.

**3.8 Inclusive Email Production.** The Parties shall produce e-mail attachments sequentially after the parent e-mail. With respect to an e-mail chain, the parties are permitted to produce the longest unique or inclusive chain and the parties do not need to separately produce the lesser-included e-mails unless those lesser-included e-mails include unique attachments not included in the longest chain or contain a BCC recipient not shown in the longest unique chain. If a lesser-included e-mail includes a unique attachment, then the lesser-included e-mail must be separately produced with the attachment.

**3.9 De-duplication.** A Party is only required to produce a single copy of a responsive document. To the extent identical copies of documents appear in the files of a Custodian, the Producing Party shall attempt to produce only one such identical copy across all Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails (except for Paper Discovery). Custodian metadata for a given document shall reflect any Custodian of any document removed as a duplicate of that document. De-duplication shall be performed prior to application of the methodologies described in Appendix A.

**3.10 DeNIST.** Each Party shall use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

**3.11 Production Delivery.** Unless otherwise agreed, documents and ESI will be produced via secure FTP site or similar electronic transmission format. If the data volume is such that electronic transmission of the production is impracticable the production will be delivered on an encrypted external hard drive to a location designated by the Receiving Party. Production media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

**4. <u>PRIVILEGE</u>**

**4.1 Privilege Log.** The parties will exchange of privilege logs within 14 days of substantially completing document production, and in no event later than 30 days before the close of fact discovery. A Producing Party may log a single privilege entry for multiple email messages within the same thread, provided the messages are subject to the same claim of privilege, with the logged email being the most inclusive version of the thread. To the extent a Producing Party logs only the most inclusive version of a thread and withholds the entire thread, the log must include the names of all addressees and recipients, including copyees, appearing anywhere in the thread, as well as a description and privilege designation sufficient to support the claim of privilege for any thread members. Redacted documents need not be included on the privilege log, provided the basis for the redaction is apparent on the face of the document, and redactions are marked with text boxes identifying the privilege claim (e.g., 'A/C' for attorney-client privilege or 'WP' for work-product doctrine).

Communications  involving outside trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

Communications with in-house litigation counsel (meaning, directly to or from in-house litigation counsel), without the inclusion of trial counsel, that post-date the filing of the complaint need not be placed on a privilege log, provided, however, that if any portion of the email thread includes a withheld communication in which counsel is not a sender or recipient the Producing Party will provide a privilege log entry that includes the names of all addressees and recipients, including copyees, appearing anywhere in the thread, as well as a description and privilege designation sufficient to support the claim of privilege for the thread any thread members.

For good cause, either Party may seek more detailed privilege logs, or an agreement to provide less detailed privilege logs on the grounds of undue burden, first by raising their dispute with the other Party, and if the Parties cannot resolve their dispute, by bringing the dispute to the Court's attention.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: June 2, 2026

/s/ *Carter E. Greenbaum*
Carter E. Greenbaum (SBN 344692)
**GREENBAUM OLBRANTZ LLP**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
Tel: (332) 222-9119
carter@greenbaumolbrantz.com

Casey Olbrantz (*pro hac vice)*
**GREENBAUM OLBRANTZ LLP**
244 Fifth Avenue, Suite C221
New York, NY 10001
Tel: (332) 222-9119
casey@greenbaumolbrantz.com

Stewart Weltman (*pro hac vice*)
Hart McLaughlin & Eldridge
1 S. Dearborn Street, Suite 1400
Chicago, IL 60603
Tel: (312) 955-0545

sweltman@hmelegal.com

*Attorneys for Plaintiffs*

Dated: June 2, 2026

/s/ *Eli Litoff*
Sondra A. Hemeryck (*pro hac vice*)
Eli Litoff (*pro hac vice*)
Steven E. Vogel (*pro hac vice*)
**RILEY SAFER HOLMES & CANCILA LLP**
1 S. Dearborn Street, Suite 2200
Chicago, IL 60603
Tel: (312) 471-8700
shemeryck@rshc-law.com
elitoff@rshc-law.com
svogel@rshc-law.com
Jeffrey R. Williams (CSB No. 084156)
**RILEY SAFER HOLMES & CANCILA LLP**
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Tel: (415) 275-8550
jwilliams@rshc-law.com

*Attorneys for Defendant*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: June 4, 2026

Honorable James Donato
United States District Judge

## APPENDIX A

## TECHNICAL SPECIFICATIONS

**1. IMAGES:**

- Produce documents as single page, black and white, Group IV, TIFF files.
- Image Resolution 300 DPI
- File Naming Convention: Match Bates Number of the page.
- Insert placeholder image for files produced in Native Format
- Original document orientation shall be retained
- Images shall reveal comments, notes, track changes, speaker notes, and the like.

**2. SPECIAL FILE TYPE INSTRUCTIONS**:

- Responsive, unredacted Microsoft Excel and other spreadsheet files, video and audio files, animation files shall be produced in Native Format.

**3. FULL TEXT EXTRACTION/OCR:**

- Produce full extracted text for all file types (Redacted text will not be produced)
- Produce OCR text for any paper document
- Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced)
- Produce OCR text for any redacted document
- Production format: Single text file for each document, not one text file per page
- File Naming Convention: Match BegBates Number

**4. LOAD FILES**

(a) Data Load File

- The data load file should use standard Concordance delimiters:
- Comma - ¶ (ASCII 20)
- Quote - þ (ASCII 254)
- Newline-® (ASCII174)
- The first record should contain the field names in the order of the data;
- All date fields should be produced in mm/dd/yyyy format;

- Use carriage-return line-feed to indicate the start of the next record;
- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;
- The name of the data load file should mirror the name of the delivery volume, and should have a DAT extension (i.e., ABC00l.DAT);
- The volume names should be consecutive (i.e., ABC00l, ABC002, et. seq.)

(b) Image Load File

- The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.0PT)
- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)
- There should be one row in the Load File per TIFF image.
- Every image in the delivery volume should be contained in the image load file.
- The image key should be named the same as Bates Number of the page.
- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.
- The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount.

Case 3:25-cv-06995-JD Document 60-2 Filed 08/13/26 Page 14 of 15

## METADATA FIELDS[1]

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| Production Number Begin | Beginning page production number | x | x | x |
| Production Number End | Ending page production number | x | x | x |
| Attachment Begin | Beginning page of attachment range | x | x | x |
| Attachment End | Ending page of attachment range | x | x | x |
| Attachment Count | Number of attachments. | x | x | |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x | x |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited | x | x | x |
| File Name | File name of document | x | x | |
| File Extension | File extension of document | x | x | |
| Email Outlook Type | Type of Outlook item, e.g. email, calendar item, note, task | x | | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Document Title | Title field extracted from the Metadata of a non-Email document | | x | |
| Author | Document author of a non-Email document. | | x | |
| Email Subject | Subject of email | x | x | |
| From | Email author | x | x | |

[1] No Party has an obligation to create or manually code metadata fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the electronic document.

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| To | Email recipients | x | x | |
| CC | Email copyees | x | x | |
| BCC | Email blind copyees | x | x | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Date-Time Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Hash Value | Unique electronic signature of email or electronic file used for deduplication. | x | x | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |
| Time Zone | The time zone when the document or email was created or sent. | x | x | |
| Native Link | Path to produced native file used for linking. | x | x | x |
| Extracted Text Link | Path to produced extracted text file used for database linking. | x | x | x |